**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | |
|---|---|
| _____ ) | |
| STATE OF TEXAS, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Civil Action No. 2:22-cv-00094-Z |
| ) | |
| ALEJANDRO MAYORKAS, ) | |
| in his official capacity as ) | |
| Secretary of Homeland Security, *et al.*, ) | |
| ) | |
| *Defendants.* ) | |
| _____ ) | |

**<u>DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO STAY</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

    A.   *Texas v. Biden* Did Not Address Sections 1252(a)(2)(A)(iv) and (e). ............................ 2

    B.   Sections 1252(a)(2)(A)(iv) and (e) Are Not Limited to Individual Claims. ................... 4

CONCLUSION ............................................................................................................. 10

## **TABLE OF AUTHORITIES**

### **Cases**

*Abdelwahab v. Frazier,*
  578 F.3d 817 (8th Cir. 2009) ........................................................................ 6

*Am. Immigration Lawyers Ass'n v. Reno,*
  199 F.3d 1352 (D.C. Cir. 2000) ........................................................... 7, 9, 10

*Arbaugh v. Y&H Corp.,*
  546 U.S. 500 (2006) ...................................................................................... 4

*Biden v. Texas,*
  No. 21-954, 2022 WL 1299971 (May 2, 2022) ........................................... 7

*Bonakchi v. Lynch,*
  No. CV 15-2974, 2016 WL 927179 (E.D. La. Mar. 10, 2016) .................... 7

*Brumme v. I.N.S.,*
  275 F.3d 443 (5th Cir. 2001) ..................................................................... 8, 9

*Castro v. DHS,*
  835 F.3d 422 (3d Cir. 2016) ......................................................................... 6

*CDI Info. Servs. v. Reno,*
  278 F.3d 616 (6th Cir 2002) ......................................................................... 6

*Colautti v. Franklin,*
  439 U.S. 379 (1979) ...................................................................................... 6

*Danos v. Jones,*
  652 F.3d 577 (5th Cir. 2011) ........................................................................ 9

*DHS v. Thuraissigiam,*
  140 S. Ct. 1959, (2020) ................................................................................ 7

*Dickerson ex rel. Dickerson v. United States,*
  280 F.3d 470 (5th Cir. 2002) ...................................................................... 10

*El–Khader v. Monica,*
  366 F.3d 562 (7th Cir. 2004) ........................................................................ 6

*Ghanem v. Upchurch,*
  481 F.3d 222 (5th Cir. 2007) ........................................................................ 7

*Humphries v. Various Fed. USINS Emps.*,
    164 F.3d 936 (5th Cir. 1999) ............................................................. 9

*Jilin Pharm. USA, Inc. v. Chertoff*,
    447 F.3d 196 n.11 (3d Cir. 2006)........................................................ 6

*Lane v. Pena*,
    518 U.S. 187 (1996)............................................................................. 9

*Las Americas Immigrant Advoc. Ctr. v. Wolf*,
    507 F. Supp. 3d 1 (D.D.C. 2020) ........................................................ 8

*Make the Road v. Wolf*,
    962 F.3d 612 (D.C. Cir. 2020) ................................................... passim

*O.A. v. Trump*,
    404 F. Supp. 3d 109 (D.D.C. 2019)..................................................... 5

*Pa. Dept. of Corr. v. Yeskey*,
    524 U.S. 206 (1998)............................................................................. 5

*Patchak v. Zinke*,
    138 S. Ct. 897 (2018)........................................................................... 9

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
    566 U.S. 639 (2012)............................................................................. 5

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999)............................................................................. 7

*Reyes v. Nielsen*,
    No. CV H-18-3971, 2020 WL 1442349 (S.D. Tex. Feb. 6, 2020) ......... 10

*Rodrigues v. McAleenan*,
    435 F. Supp. 3d 731 (N.D. Tex. 2020) ................................................. 9

*Rodriguez v. CBP*, No.
    No. 6:14-cv-2716, 2014 WL 4675182 (W.D. La. Sept. 18, 2014) ......... 6

*Rothe Dev., Inc. v. U.S. Dep't of Def.*,
    666 F.3d 336 (5th Cir. 2011) ............................................................. 9

*Royal Siam Corp. v. Chertoff*,
    484 F.3d 139 (1st Cir. 2007)............................................................... 6

*Texas v. Biden,*
   20 F.4th 928 (5th Cir. 2021) ......................................................................... 1. 2, 3, 7

*Trainmen v. Baltimore & Ohio R.R.,*
   331 U.S. 519 (1947) ............................................................................................ 5

*United States v. Hoang,*
   636 F.3d 677 (5th Cir. 2011) ............................................................................. 5

*Van Dinh v. Reno,*
   197 F.3d 427 (10th Cir. 1999) ............................................................................ 6

## Statutes

5 U.S.C. § 702 ................................................................................................... 9

8 U.S.C. § 1225(b)(1) ........................................................................................ 1

8 U.S.C. § 1252(b)(9) ........................................................................................ 6

8 U.S.C. § 1252(f) ............................................................................................. 7

8 U.S.C. §§ 1221-32 .......................................................................................... 6

28 U.S.C. § 1631 ........................................................................................... 2, 10

## INTRODUCTION

The Court should transfer this case to the District of Columbia if it does not dismiss it for lack of subject-matter jurisdiction. Challenges to policies and procedures implementing the expedited removal statute, 8 U.S.C. § 1225(b)(1), may be brought only in the District of Columbia. 8 U.S.C. § 1252(a)(2)(A)(iv), (e)(3). Here, Texas challenges an interim final rule (IFR) that, by its plain terms, implements section 1225(b)(1), and was issued under the authority of the Attorney General and the Secretary of Homeland Security to implement that section. *See* Mot. at 1-2, 4-5, 10-11. The IFR applies exclusively to individuals who are placed in expedited removal proceedings under section 1225(b)(1), and provides additional procedures to implement the terms of section 1225(b)(1)(B)(ii). In response to Defendants' Motion to Transfer, Texas does not dispute that the IFR implements section 1225(b)(1).

Instead, Texas raises two arguments, neither of which has merit. First, Texas argues that the Fifth Circuit in *Texas v. Biden,* 20 F.4th 928 (5th Cir. 2021), held section 1252(e) applies to denials of relief to individual noncitizens. Op. 3. But, as Texas acknowledges, section 1252(e)(3) was not raised or addressed in *Texas*, *see* Op. 3, nor did the Fifth Circuit address the other provisions of section 1252 that expressly apply outside of individual removal proceedings. Section 1252(e)(3) specifically provides that "[j]udicial review" of the validity of "a regulation … issued by or under the authority of the Attorney General [or Secretary] to implement" section 1225(b)(1) "is available in an action instituted in the United States District Court for the District of Columbia." And section 1252(a)(2)(A)(iv) forecloses review in any other court, providing that, "[n]otwithstanding any other provision of law (statutory or nonstatutory) … no court shall have jurisdiction to review" any "procedures and policies adopted … to implement the provisions of section 1225(b)(1)" "*except* as provided in subsection (e)." (emphasis added). Texas fails to address the unambiguous and specific text of sections 1252(a)(2)(A) and (e).

Texas's second argument is that, because the cases Defendants cite in the Motion to Transfer were brought by individual noncitizens, section 1252 must cover individual noncitizens. This is incorrect. The D.C. Circuit in *Make the Road New York v. Wolf*, 962 F.3d 612, 627 (D.C. Cir. 2020), rejected the precise argument Texas advances here in a case brought by organizations rather than individuals. The broad language of sections 1252(a)(2)(A)(ii) and (iv) mean that the "review under Subsection 1252(e)(3)" is "not textually confined to claims arising from individual removal actions." *Id.* at 627. Texas cites no cases permitting a challenge to a rule or policy implementing section 1225(b)(1) to go forward in any district outside the District of Columbia.

Accordingly, because challenges to implementation of section 1225(b)(1) through a regulation may only be brought in the District of Columbia, 8 U.S.C. § 1252(a)(2)(A)(iv), (e)(3), the Court must dismiss or transfer this case. 28 U.S.C. § 1631.

## ARGUMENT

### A. *Texas v. Biden* Did Not Address Sections 1252(a)(2)(A)(iv) and (e).

Texas first argues that *Texas v. Biden,* 20 F. 4th 928 (5th Cir. 2021), held that section 1252 operates only on denials of relief to individual noncitizens "after analyzing several of that section's subsections." Op. 3. But Texas acknowledges "that 1252(e), which the Defendants are citing here, was not one of those subsections." *Id.* Texas nonetheless argues "nothing relevant distinguishes" that case "from this one." Op. 3. But *Texas*, as this Court is aware, involved a challenge to the termination of the Migrant Protection Protocols (MPP). MPP implemented the contiguous-territory return provision in section 1225(b)(2)(C), *not* section 1225(b)(1)—a relevant distinction because section 1252(a)(2)(A) addresses the latter provision and limits "[r]eview relating to section 1225(b)(1)." *See also id.* § 1252(a)(2)(A)(iv) (foreclosing review "except as provided in subsection (e)," of "procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1)"). As a result, the Government did not raise an argument under

2

section 1252(e) in that case, and neither this Court nor the Fifth Circuit addressed it. *See* Op. 7 (acknowledging the Government "did not cite § 1252(e) in that case").

In *Texas*, the Government instead argued that the challenge was barred by section 1252(a)(2)(B)(ii). That provision provides, in a section titled "Denials of discretionary relief," that "[n]otwithstanding any other provision of law … no court shall have jurisdiction to review [any] *decision or action* of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in [their] discretion." 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added). The Government argued that section 1252(a)(2)(B)(ii) precluded jurisdiction over claims challenging the termination of MPP because the relevant statute, section 1225(b)(2)(C), specified that the government "*may* return" certain noncitizens to "contiguous territory" during their removal proceedings. (emphasis added). The Fifth Circuit disagreed, concluding that section 1225(b)(2)(C) was not, in fact, discretionary, and section 1252(a)(2)(B)(ii) did not apply. The Fifth Circuit also stated that, even if it did apply, it would at most insulate from review "the Government's discretionary decision to return one specific person to Mexico," and not provide "unreviewable discretion to terminate MPP and release undocumented immigrants into the United States *en masse*." *Texas*, 20 F.4th at 977-78. As Texas acknowledges, Op. 3, nowhere does *Texas* discuss challenges to the expedited removal statute or its implementation generally, or the judicial review provisions relevant to programmatic challenges to policies and procedures implementing section 1225(b)(1) specifically.[1]

---

[1] In a footnote, the Court suggested in *dicta* that section 1252(a)(2)(B)(ii) was also limited to individual decisions, because that provision followed two references to "individuals" in section 1225(a)(2)(A)(i) and (iii). *Texas*, 20 F.4th at 978 n.11. But the court did not purport to construe section 1252(a)(2)(A) as applying only to review of individual orders. Nor did it discuss sections 1252(a)(2)(A)(ii) and (iv), which, as explained, are "two categories of claims that, by their terms, are not confined to individual expedited-removal proceedings," and instead cover "challenges to

**B.  Sections 1252(a)(2)(A)(iv) and (e) Are Not Limited to Individual Claims.**

Texas next argues that a full reading of section 1252 demonstrates that it should apply only to challenges raised by individual noncitizens. Op. 4-5. But Texas omits reference to sections 1252(a)(2)(A)(ii) and (iv), which, "except as provided in subsection (e)," foreclose review more broadly and provide that "no court shall have jurisdiction to review" a decision to "invoke the provisions of such section" and "procedures and policies adopted … to implement the provisions of section 1225(b)(1)." In *Make the Road*, a case where "several organizations" rather than individuals brought a pre-enforcement programmatic challenge, the D.C. Circuit rejected the argument that section 1252 only applies to individual claims by noncitizens, holding sections 1252(a)(2)(A)(ii) and (iv) mean that the "review under Subsection 1252(e)(3)" is "not textually confined to claims arising from individual removal actions." 962 F.3d at 621, 627. "Congress included within Subsection 1252(e)(3) two categories of claims that, by their terms, are not confined to individual expedited-removal proceedings," including challenges to procedures and policies adopted to implement the statute "divorced from any individual determination." *Id*. Section 1252(e)(3)'s exception to the otherwise universal bar to review in section 1252(a)(2)(A) channels to D.C. "[j]udicial review of determinations under section 1225(b) of this title *and its implementation*." *Id.* (emphasis added). The Court held that "[t]he natural meaning of the singular 'its' points directly to litigation over Section 1225(b)'s implementation," and "'[S]ection 1225(b) of this title' is also the last antecedent to which the word 'its' refers." *Make the Road*, 962 F.3d at 625; *see also O.A. v. Trump*, 404 F. Supp. 3d 109, 141 (D.D.C. 2019) ("[Section] 1252(e)(3)

---

'procedures and policies adopted by the [Secretary] to implement [the statute]' divorced from any individual determination." *Make the Road*, 962 F.3d at 627. To the extent Texas suggests otherwise, the Supreme Court and Fifth Circuit have repeatedly emphasized that "'drive-by jurisdictional rulings' … should be accorded 'no precedential effect' on the question whether the federal court had authority to adjudicate the claim in suit." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006); *see also Abraugh v. Altimus*, 26 F.4th 298, 305 (5th Cir. 2022).

sweeps, if anything, more broadly than § 1252(a)(5) and § 1252(b)(9)—it does not apply merely to removal proceedings and actions taken to remove an alien, but to the implementation of the expedited removal provisions of IIRIRA").

Texas next attempts to support its argument by reference to the section title, Op. 4, but this title cannot override the clear, unambiguous, and specific text of sections 1252(a)(2)(A) and (e)(3). Texas argues that section 1252 only applies in cases challenging an individual removal order because section 1252 is titled "[j]udicial review of orders of removal." Op. 4. But it is well-settled that "[w]here the text [of a statute] is complicated and prolific, headings and titles can do no more than indicate the provisions in a most general manner." *Trainmen v. Baltimore & Ohio R.R.*, 331 U.S. 519, 528-29 (1947) "For interpretative purposes, they are of use only when they shed light on some *ambiguous* word or phrase" and "are but tools available for the resolution of a doubt"; "they cannot undo or limit that which the text makes plain." *Id.* (emphasis added); *see Pa. Dept. of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) ("[T]he title of a statute ... cannot limit the plain meaning of the text."). Instead, the more specific text controls. *See, e.g.*, *United States v. Hoang*, 636 F.3d 677, 681 (5th Cir. 2011) ("We find reference to the subtitle unnecessary and inappropriate because … we find no ambiguity in subsection (d)."); *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("[I]t is a commonplace of statutory construction that the specific governs the general"). Indeed, courts have consistently held section 1252(a)(2)(A) is clear and unambiguous that "[n]otwithstanding any other provision of law … no court shall have jurisdiction to review," "except as provided in subsection (e)," "procedures and policies adopted … to implement … section 1225(b)(1)." 8 U.S.C. § 1252(a)(2)(A)(iv); *see, e.g.*, *Make the Road*, 962 F.3d at 626 (discussing "Subsection 1252(e)(3)'s plain textual coverage of the types of legal claims advanced here); *M.M.V. v. Garland*, 1 F.4th 1100, 1107 (D.C. Cir. 2021) (finding sections

5

1252(a)(2)(A) and (e)(3) "unambiguous"); *Castro v. DHS*, 835 F.3d 422, 430, 432 (3d Cir. 2016) (similar); *Rodriguez v. CBP*, No. 6:14-cv-2716, 2014 WL 4675182, at *2 (W.D. La. Sept. 18, 2014) (similar). And, to the extent section titles are relevant, section 1252(e)(3) is titled "Challenges on validity of the *system*." 8 U.S.C. § 1252(e)(3) (emphasis added).

Texas's reading also violates the rule against superfluity. *Colautti v. Franklin*, 439 U.S. 379, 392 (1979) ("a statute should be interpreted so as not to render one part inoperative"). Section 1252 is a comprehensive statutory scheme containing many provisions that specifically apply outside of removal proceedings to bar judicial review of claims that do not involve individual removal orders. *See, e.g.*, 8 U.S.C. § 1252(b)(9) ("no court shall have jurisdiction … to review … questions of law or fact" "arising from any *action taken* or proceeding brought to remove an alien") (emphasis added).[2] Indeed, every Court of Appeals to address the claim that section 1252 is limited to when an individual seeks "judicial review of an order of removal" has rejected it. *See Royal Siam Corp. v. Chertoff*, 484 F.3d 139, 143 (1st Cir. 2007) ("the jurisdiction-stripping provisions of section 1252 apply outside the removal context"); *El–Khader v. Monica*, 366 F.3d 562, at 567 (7th Cir. 2004); *Van Dinh v. Reno*, 197 F.3d 427, 432 (10th Cir. 1999); *iTech U.S., Inc. v. Renaud*, 5 F.4th 59, 64 (D.C. Cir. 2021); *Abdelwahab v. Frazier*, 578 F.3d 817, 820 (8th Cir. 2009); *Jilin Pharm. USA, Inc. v. Chertoff*, 447 F.3d 196, 199 n.5, 205 n.11 (3d Cir. 2006); *CDI Info. Servs. v. Reno*, 278 F.3d 616, 620 (6th Cir 2002).[3] Were it otherwise, the many provisions of section 1252

---

[2] Section 1252(f) also provides that "no court … shall have jurisdiction or authority to enjoin or restrain the operation of [8 U.S.C. §§ 1221-32], other than with respect to the application of such provisions to an individual alien," broadly foreclosing jurisdiction over such claims for anyone *other than* an "individual alien." And section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the *decision or action* by the [Secretary] *to commence proceedings*." (emphasis added).

[3] Although the Fifth Circuit has not explicitly addressed the issue, it has, in a precedential decision, applied section 1252 to a challenge to a visa revocation arising *outside* removal proceedings, thus

that apply outside removal proceedings would be nullities. These provisions are broadly "aimed at protecting the Executive's discretion from the courts." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 486 (1999). Reading them out of the statute would violate the rule against interpretations that render any portion of a statute meaningless and would undermine the intended scope of section 1252. *See DHS v. Thuraissigiam*, 140 S. Ct. 1959, 1966, (2020) (explaining sections 1252(a)(2)(A)(i)-(iv), among other provisions, "protect the Executive's discretion from undue interference by the courts").[4]

Texas next argues that many of the cases Defendants cite "involved an alien challenging [ ] a removal order," and thus they are consistent with Texas's reading of the statute. Op. 7-8. But this is not true in all cases. As noted, the D.C. Circuit held in *Make the Road* that the provisions of section 1252(e) applied in a case involving organizations, and applied more broadly than just to "claims arising from individual removal actions." 962 F.3d at 627. In *Am. Immigration Lawyers Ass'n v. Reno* ("*AILA*"), 199 F.3d 1352, 1355, 1358 (D.C. Cir. 2000), the D.C. Circuit similarly addressed organizations' challenges to regulations, explaining that "[t]he statute permits judicial

---

reading section 1252 as not limited to individual removal decisions. *Ghanem v. Upchurch*, 481 F.3d 222, 224 (5th Cir. 2007); *see Bonakchi v. Lynch*, No. CV 15-2974, 2016 WL 927179, at \*2 (E.D. La. Mar. 10, 2016) ("such a finding is implicit in the Fifth Circuit's decision in *Ghanem*").

[4] As the Court is aware, the Supreme Court also recently called for supplemental briefing in *Texas v. Biden* on whether 8 U.S.C. § 1252(f) bars relief in a case brought by Texas that does not involve claims by any individual noncitizens or any individual removal proceedings. *See Biden v. Texas*, No. 21-954, 2022 WL 1299971 (May 2, 2022). In response, Texas did not argue that section 1252 is limited to challenges by individual noncitizens or cases involving individual removal orders or proceedings. *See generally* Supplemental Brief For Respondents, No. 21-954 (May 9, 2022). Rather, Texas acknowledged that "where Congress wanted to make '[m]atters not subject to judicial review' in section 1252, it did so expressly—in a different paragraph. *Id.* § 1252(a)(2)," and that, through that provision, "Congress limited the federal courts' jurisdiction unambiguously." Supplemental Brief for Respondents, at 10. That section, which Texas argued is an express and unambiguous bar to federal courts' jurisdiction, includes within its list of "[m]atters not subject to judicial review," "[r]eview related to section 1225(b)(1)," and forecloses review of "procedures and policies adopted … to implement the provisions of section 1225(b)(1)" in any court outside the District of Columbia.

review of the 'implementation' of 8 U.S.C. § 1225," that "such lawsuits may be brought only in the District of Columbia," and that "the lawsuits are limited to determining whether the statutes or regulations" are lawful. *See also id.* (ultimately concluding suit should be dismissed because court saw "nothing in these provisions allowing litigants—whether individuals or organizations" to bring the type of challenge to section 1225(b)(1) the organizations raised there); *Las Americas Immigrant Advoc. Ctr. v. Wolf*, 507 F. Supp. 3d 1, 14, 20 (D.D.C. 2020) (finding challenge to "written policy directives of DHS" that "provide instructions for the implementation of the credible fear process" fell under section 1252(e)(3) in case brought in part by an "organizational plaintiff").

Texas's final argument is that many of these cases "were filed in the District of Columbia" so "the geographic jurisdictional arguments were irrelevant." Op. 8. This merely reinforces the point that the District of Columbia is the only proper district for claims that challenge implementation of section 1225(b)(1). Notably, Texas cites no cases permitting such a challenge to go forward in this district, this circuit, or anywhere else outside of the District of Columbia. All relevant authority supports the conclusion that jurisdiction exists only in the District of Columbia. The expedited removal "system has been challenged in that court on various grounds," because "IIRIRA recognizes limited judicial review, in the United States District Court for the District of Columbia, of certain challenges to the expedited removal 'system.'" *Brumme v. I.N.S.*, 275 F.3d 443, 447 (5th Cir. 2001); *see also* Mot. 8-15.

Texas counters that section 1252(e) cannot be read "as stripping all but a single federal court of jurisdiction to hear an APA challenge." Op. 5. But that is precisely what section 1252(e) coupled with section 1252(a)(2)(A) does. Section 1252(a)(2)(A) begins with a "notwithstanding" provision, providing that "*Notwithstanding any other provision of law* (statutory or nonstatutory) … *no court shall have jurisdiction* to review," among other things, "procedures and policies

8

adopted by the Attorney General to implement the provisions of section 1225(b)(1)." 8 U.S.C. § 1252(a)(2)(A)(iv) (emphasis added). That "notwithstanding" provision eliminates any other basis for jurisdiction in the federal courts, "other than as provided by subsection (e)." *Id.*; *see Patchak v. Zinke*, 138 S. Ct. 897, 905 (2018) (phrase "notwithstanding any other provision of law" in jurisdictional provision encompasses 28 U.S.C. § 1331); *Rodrigues v. McAleenan*, 435 F. Supp. 3d 731, 736 (N.D. Tex. 2020). That Texas might separately have a cause of action under the APA if in fact the Court has jurisdiction is irrelevant. The Court must first conclude it has jurisdiction before addressing the merits of Texas's APA claims. *See M.M.V.*, 1 F.4th at 1108 ("[T]he [jurisdictional] bar is keyed to the nature of the challenged agency action, not the basis for the challenge. The plaintiffs invoke … the APA to contend that the challenged policies are unlawful, which still amounts to a challenge to 'policies adopted' to implement section 1225(b)(1). … Likewise, while the plaintiffs characterize their APA challenge as procedural rather than substantive, the bar plainly covers both kinds of challenges.").[5]

---

[5] Even were the statutory text not dispositive, textbook administrative law bars an APA suit here. "A federal court has no subject matter jurisdiction over claims against the United States unless the government waives its sovereign immunity and consents to suit." *Danos v. Jones,* 652 F.3d 577, 582 (5th Cir. 2011). The APA waives sovereign immunity to the extent a party "adversely affected ... by agency action" seeks "relief other than money damages." 5 U.S.C. § 702. But the APA's waiver is limited only to situations where no "other statute that grants consent to suit expressly or impliedly forbids the relief that is sought." *Id.* Section 1252(a)(2)(A) and (e) together are just such an "other statute." *Id*. Given sections 1252(a)(2)(A) and (e)'s clear text, there is no basis to avoid the controlling rule that a waiver of sovereign immunity must be enacted by statute, be construed in the government's favor, and unambiguously extend to the type of relief sought. *Lane v. Pena*, 518 U.S. 187, 192 (1996); *see* 5 U.S.C. § 702 ("Nothing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."). Section 1252(e) is thus no different than other "exclusive jurisdiction" statutes that waive sovereign immunity contingent on claims being brought in a single forum. *See, e.g.*, *Rothe Dev., Inc. v. U.S. Dep't of Def.*, 666 F.3d 336, 338 (5th Cir. 2011) (discussing Tucker Act's provision providing exclusive jurisdiction in the court for federal claims); *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 941 (5th Cir. 1999) (similar); *AILA*, 199 F.3d at 1359 (noting it "has been common for Congress to designate the District of Columbia as the exclusive venue for

Finally, although the statutory text is clear, the legislative history further supports the view that Congress in sections 1252(a)(2)(A) and (e)(3) channeled any claims related to section 1225(b)(1) to the District of Columbia, and that consolidating and streamlining review of systemic challenges related to the expedited removal process in D.C. was precisely what Congress intended in IIRIRA. Mot. 8-9. In fact, early versions of the expedited removal legislation completely "denie[d] all courts jurisdiction to review the procedures established to implement" expedited removal, *see* Hearing on S. 667, at 50, 111 (May 28, 1993), further supporting the conclusion that the review authorized in section 1252(e)(3) was intended to be the exclusive mechanism for any challenge to procedures related to section 1225(b)(1). "The purpose is obvious"—"[b]y confining judicial review to one venue, Congress avoids conflicting decisions about the validity of particular regulations or statutes." *AILA*, 199 F.3d at 1359. Reading section 1252 to nonetheless permit Texas to assert a challenge related to section 1225(b)(1) outside of the District of Columbia would be contrary to the text, structure, and history of section 1252, as well as contrary to the decision of every court that has addressed claims challenging implementation of section 1225(b)(1). "Systemic challenges to the legality and constitutionality of the expedited removal regime may be brought only in the United States District Court for the District of Columbia" "[r]egardless of how Plaintiff characterizes" the claims, including claims "under the APA." *Reyes v. Nielsen*, No. CV H-18-3971, 2020 WL 1442349, at *3 (S.D. Tex. Feb. 6, 2020); *see also* Mot. 13-15.

## CONCLUSION

For these reasons, the Court must either dismiss this case or transfer it to the District of Columbia, *see* 28 U.S.C. § 1631, and should stay this case pending resolution of this motion.

---

judicial review of agency action" and collecting statutes). And because "[w]aiver of sovereign immunity, therefore, is a jurisdictional prerequisite to being sued," *Dickerson ex rel. Dickerson v. United States*, 280 F.3d 470, 478 (5th Cir. 2002), section 1252(e) bars any APA suit in this Court.

Dated: May 16, 2022                  Respectfully submitted,

                                     BRIAN M. BOYNTON
                                     *Principal Deputy Assistant Attorney General*

                                     WILLIAM C. PEACHEY
                                     *Director*
                                     Office of Immigration Litigation
                                     District Court Section

                                     EREZ REUVENI
                                     *Assistant Director*

                                     /s/ *Brian C. Ward*
                                     BRIAN C. WARD
                                     *Senior Litigation Counsel*
                                     U.S. Department of Justice
                                     Civil Division
                                     Office of Immigration Litigation
                                     District Court Section
                                     P.O. Box 868, Ben Franklin Station
                                     Washington, DC 20044
                                     Tel.: (202) 616-9121
                                     brian.c.ward@usdoj.gov


                                     *Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May16, 2022, I electronically filed this brief with the Clerk of the Court for the United States District Court for the Northern District of Texas by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ *Brian C. Ward*
BRIAN C. WARD
U.S. Department of Justice
