United States District Court
Northern District of Texas
Amarillo Division

STATE OF TEXAS,
    *Plaintiff,*

v.

ALEJANDRO MAYORKAS, in his official capacity as Secretary of Homeland Security, *et al.*,
    *Defendants.*

Case 2:22-cv-00094

## Texas's Brief on 8 U.S.C. § 1252(f)(1)

Section 1252(f)(1) does not prevent the Court from hearing this case. That section forbids lower courts "to enjoin or restrain the operation" of certain provisions of the Immigration and Naturalization Act, but it does not affect a district court's authority to vacate an unlawful action or to enter declaratory relief. And whether that section limits the remedies a district court may order (such as under the APA or its inherent equitable powers) or rescinds an otherwise-applicable waiver of sovereign immunity (such as under 5 U.S.C. § 702), those protections may be forfeited.

### Argument

**A. Section 1252(f)(1) does not deprive the Court of jurisdiction.**

Section 1252(f)(1) does not affect the Court's power to hear this APA challenge. That section prevents an order that "enjoin[s] or restrain[s]" the operation of part IV; it does not prevent an order holding the Defendants to the terms of part IV. To the extent that section affects this case at all, it limits the available remedies, not the Court's jurisdiction. Because section 1252(f)(1)'s text limits only injunctive relief, it does not affect district courts' authority to

1

vacate unlawful administrative action under the APA or to issue declaratory relief.

### 1. The district court's injunction falls outside section 1252(f)(1)'s scope.

Section 1252(f)(1) prohibits injunctive relief only where such relief "enjoin[s] or restrain[s] the operation" of covered sections of the INA. Read in context, section 1252(f)(1) prevents the Court from *prohibiting* the enforcement of those sections, but it does not prevent it from *requiring* such enforcement. The word "enjoin" is a "term[] of art in equity" that "refer[s] to" an "equitable remed[y] that restrict[s] or stop[s] official action." *Direct Mktg. Assn. v. Brohl*, 575 U.S. 1, 13 (2015). Under section 1252(f)(1), the official action to be enjoined or restrained is the "operation"—"the state of being active or functioning"—of the specified sections *See* Oxford English Reference Dictionary 1018; *see also* Webster's Third New International Dictionary of the English Language 1581 (2002). Taken together, these terms mean that the Court cannot prohibit or prevent the functioning of part IV of the INA.

But section 1252(f)(1) does not prohibit injunctions requiring the Executive to *continue* the functioning of the INA. An injunction against a violation of a statute does not "forbid" or "prevent" that statute's "functioning." It instead aids its operation. Thus, section 1252(f)(1) permits injunctions requiring continued enforcement of covered sections while forbidding lower courts from prohibiting executive enforcement of those provisions.[1]

The relief Texas seeks here would not enjoin or restrain the operation of covered sections of the INA. Rather, it seeks to prevent the Defendants from

---

[1] Section 1252(f)(2) reinforces this conclusion: it prohibits enjoining executive action—namely, "the removal of any alien pursuant to a final order"—but does not restrict injunctions against the Executive's refusal to act.

2

implementing illegal administrative action of the sort that the Court has earlier found would lead to "systemic violation of" the INA's requirements. *Texas v. Biden*, 554 F. Supp. 3d 818, 852, 857 (N.D. Tex. 2021). If the Defendants' Interim Final Rule is, in fact, in conflict with the requirements of the INA and the Constitution, an order setting that rule aside and preventing the Defendants from implementing it will neither enjoin nor restrain their exercise of statutory authority; it will instead confine them to their statutory authority. Such an injunction falls outside section 1252(f)(1)'s limitation.

The relief Texas seeks here is different in kind from injunctions the Supreme Court has previously considered in the section 1252(f)(1) context. For example, the lower courts in *Nielsen v. Preap* had enjoined section 1226's detention mandate, "holding that criminal aliens are exempt from mandatory detention under [8 U.S.C.] § 1226(c) (and are thus entitled to a bond hearing) unless they are arrested when [they are] released, and no later." 139 S. Ct. 954, 961 (2019) (internal quotation marks omitted). Though the Court did not reach the issue, that injunction prevented the enforcement of Congress's detention requirements pending resolution of the merits—and thus violated section 1252(f)(1). *Id.* at 962. Setting aside the Interim Final Rule, however, would do nothing of the sort.

Nor does this case resemble the injunction in *Gonzalez v. Garland*. 142 S. Ct. 919 (2021) (granting certiorari to *Aleman Gonzalez v. Barr*, 955 F.3d 762 (9th Cir. 2020)). There, the Ninth Circuit determined that the plaintiffs were "likely to succeed on the merits of their claim that § 1231(a)(6) requires the Government to provide class members individualized bond hearings." *Aleman Gonzalez*, 955 F.3d at 765. Where the injunction in *Gonzalez* would restrain the Executive's ability to remove aliens that Congress has deemed removable

3

by requiring bond hearings, *id.*, setting aside the Interim Final Rule would do no such thing.

Finally, reading section 1252(f)(1) to divest the Court of jurisdiction would take it out of context and read it ahistorically. The Illegal Immigration Reform and Immigration Responsibility Act, which enacted section 1252(f)(1) in its current form, was passed in response to persistent executive refusal to enforce Congress's immigration mandates. The legislative history confirms that Congress did not intend for section 1252(f)(1) to prevent courts from enjoining administrative policies seeking to nullify detention mandates. As a report of the House Judiciary Committee noted, section 1252(f)(1) was designed to ensure that "the new removal procedures established in this legislation . . . will remain in force while . . . lawsuits are pending." H.R. Rep. No. 104-469, at 161 (1996). This history confirms that section 1252(f)(1) lacks the "clearest command" this Court requires to extinguish equitable authority. *Califano v. Yamasaki*, 442 U.S. 682, 705 (1979).

**2. Section 1252(f)(1) is a remedial limitation only.**

**a. Section 1252(f)(1) limits the lower courts' equitable remedies, not their jurisdiction.**

Even if section 1252(f)(1) applied, it would not limit the Court's jurisdiction, only the available remedies for those claims. Though the distinction can be blurry, *cf. Fort Bend County v. Davis*, 139 S. Ct. 1843, 1848–49 (2019), section 1252(f)(1) is best understood as limiting lower courts' remedial powers.

First and foremost, the Supreme Court has described section 1252(f)(1) as a remedial limitation. "By its plain terms, and even by its title, [section 1252(f)(1)] is nothing more or less than a limit on injunctive relief." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999) ("*AADC*").

4

When responding to a meritless argument that section 1252(f)(1) conferred lower-court jurisdiction, this Court held that it "plainly serves as a limit on injunctive relief rather than as a jurisdictional grant" *Id.* at 487. If section 1252(f)(1) unambiguously restricted the lower courts' jurisdiction, this Court would have said so.

Only section 1252(f)(1)'s imprecise use of the term "jurisdiction" suggests otherwise. "Jurisdictional requirements mark the bounds of a 'court's adjudicatory authority.'" *Boechler, P.C. v. Commissioner*, 142 S. Ct. 1493, 1497 (2022) (citation omitted). Statutes are truly jurisdictional only if Congress clearly indicates they restrict a court's power to hear a case. *Id.* A court's subject-matter jurisdiction is affected only if a statute delineates "the classes of cases a court may entertain." *Davis*, 139 S. Ct. at 1848. As neither Congress nor the Supreme Court has used the term "jurisdiction" consistently, *see Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 714 & n.3 (2019), a non-jurisdictional requirement does not become one merely because the term appears in close proximity. *Cf. Sebelius v. Auburn Regl. Med. Ctr.*, 568 U.S. 145, 155 (2013).

Section 1252(f)(1) does not unambiguously speak in jurisdictional terms. "[I]t is a cardinal rule of statutory construction that when Congress employs a term of art it presumably knows and adopts the cluster of ideas that were attached" to that term. *Air Wisc. Airlines Corp. v. Hoeper*, 571 U.S. 237, 248 (2014) (cleaned up). Congress's use of the term "jurisdiction" here tracks twentieth-century usages of the term as concerning when a court may grant relief—not when it has the power to adjudicate a case. *E.g.*, *Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83, 90-93 (1998); *Glidden Co. v. Zdanok*, 370 U.S. 530, 557 (1962).

Consistent with this traditional understanding, "jurisdiction" as used in section 1152(f)(1) means "nothing more or less than a limit on injunctive relief." *AADC*, 525 U.S. at 481. Congress used "jurisdiction" and "authority" in that section as synonyms in defining what courts may "enjoin and restrain." *See generally Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1141 (2018) (discussing distribution of antecedents). And the Supreme Court has characterized that section as "'prohibit[ing] federal courts from granting classwide injunctive relief.'" *Jennings v. Rodriguez*, 138 S. Ct. 830, 851 (2018) (quoting *AADC*, 525 U.S. at 481); *Nken v. Holder*, 556 U.S. 418, 431 (2009).

This conclusion is bolstered by section 1252's structure. *See, e.g., Minerva Surgical, Inc. v. Hologic, Inc.*, 141 S. Ct. 2298, 2307 (2021); *Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019). The subsection title places a "[l]imit on injunctive relief." 8 U.S.C. § 1252(f). Moreover, where Congress wanted to make "[m]atters not subject to judicial review" in section 1252, it did so expressly—in a different paragraph. *Id.* § 1252(a)(2). That Congress limited the federal courts' jurisdiction unambiguously elsewhere in section 1252 strongly suggests that it did not do so through section 1252(f)(1).

Finally, other well-established principles support the interpretation of section 1252(f)(1) as a remedial limitation. There is a "strong presumption favoring judicial review of administrative action," and "Congress is presumed to legislate with it in mind." *Salinas v. U.S. R.R. Retirement Bd.*, 141 S. Ct. 691, 698 (2021). If section 1252(f)(1) were a jurisdictional rule, it would require litigants to raise certain challenges in the Supreme Court in the first instance. But such claims *must* be brought against the United States or one of its officers—falling within the Supreme Court's *appellate* jurisdiction and generally not within its original jurisdiction. U.S. Const. art. III, § 2, cl. 2. Such an expansion of the Court's original jurisdiction would violate Article III. *Ortiz*

6

*v. United States*, 138 S. Ct. 2165, 2173 (2018). Because interpreting section 1252(f)(1) as a remedial limitation both preserves judicial review and "avoids placing its constitutionality in doubt," that is the interpretation required by well-established canons of construction. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 247 (2012).

### b. Section 1252(f)(1) permits vacatur of unlawful administrative action and declaratory relief.

Section 1252(f)(1) does not affect the Court's authority under the APA to "vacate and remand," 5 U.S.C. § 706, the Interim Final Rule. That remedy is distinct from injunctive relief. A district court's authority to set aside or vacate administrative action under the APA differs from its power to enjoin unlawful action. Vacatur is a "less drastic remedy" than an injunction. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010). An order vacating administrative action does not "enjoin or restrain" the INA's operation because vacatur alone does not enjoin anything.

Like vacatur, declaratory relief is distinct from injunctive relief. Though a declaratory judgment binds the parties, "Congress plainly intended declaratory relief to act as an alternative" to injunctive relief, *Steffel v. Thompson*, 415 U.S. 452, 466 (1974), because declaratory relief does not directly coerce any party or enjoin any action. Section 1252(f)(1)'s silence regarding declaratory relief stands in contrast to the preceding subsection, which explicitly enumerates "declaratory, injunctive, or other equitable relief." 8 U.S.C. § 1252(e)(1)(A). The APA similarly distinguishes between "declaratory judgments" and "writs of prohibitory or mandatory injunction." 5 U.S.C. § 703. Section 1252(f)(1), in contrast, refers to injunctive relief alone. "[W]hen 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts

intentionally and purposely in the disparate inclusion or exclusion.'" *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002) (citation omitted).

Consistent with section 1252's text, the Supreme Court has suggested that section 1252(f)(1) does not bar declaratory relief. *Jennings*, 138 S. Ct. at 851 ("[I]f the Court of Appeals concludes that it may issue only declaratory relief [under § 1252(f)(1)], then the Court of Appeals should decide whether that remedy can sustain the class on its own."). The *Jennings* dissent explicitly embraced that view. *Id.* at 875. And the *Preap* plurality similarly indicated that section 1252(f)(1) did not deprive courts of jurisdiction to entertain a "request for declaratory relief." 139 S. Ct. at 962. Even where section 1252(f)(1) prohibits a given injunction, it does not limit district courts' power to issue declaratory relief.

### B. Section 1252(f)(1)'s Limitation is Subject to Forfeiture.

Whether understood as a limitation on remedies or jurisdiction, however, section 1252(f)(1) is subject to forfeiture. Remedial limitations may be forfeited. Even if section 1252(f)(1) were jurisdictional, it would be a limit on the federal government's waiver of sovereign immunity—which sounds in *personal* jurisdiction, and thus likewise may be forfeited. In either event, petitioners have forfeited section 1252(f)(1)'s limitation.

### 1. Because section 1252(f)(1) is non-jurisdictional, it may be forfeited.

It is well established that non-jurisdictional objections are forfeitable if a party does not properly invoke them. *E.g.*, Fed. R. Civ. P. 12(b) & 12(h). This principle extends to countless non-jurisdictional requirements. Even a "mandatory claim-processing rule [is] subject to forfeiture if not properly raised." *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 16 (2017).

This Court, for example, has construed Rule 23(f)'s time limit for taking an immediate appeal as waivable. *Nutraceutical Corp.*, 139 S. Ct. at 714 & n.3. Likewise, parties may forfeit objections to personal jurisdiction and venue. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999); *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). If understood as a non-jurisdictional remedial limitation, section 1252(f)(1) is thus subject to forfeiture.

### 2. Even if section 1252(f)(1) were jurisdictional, it would still be subject to forfeiture.

Even if section 1252(f)(1) were jurisdictional, it would still be subject to forfeiture because it is best understood as a limitation on the federal government's waiver of sovereign immunity. That immunity sounds in personal jurisdiction and is thus subject to forfeiture.

The claims and remedies contemplated in section 1252(f)(1) run against the federal government alone, and thus they require a waiver of sovereign immunity—as relevant here, the waiver under by the APA. 5 U.S.C. § 702; *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012). Absent some other statutory limitation, section 702 of the APA waives sovereign immunity in the federal courts "for relief other than money damages." 5 U.S.C. § 702. Section 1252(f)(1), which applies "[r]egardless of the nature of the action," limits the waiver the APA provides.

Sovereign immunity sounds in personal jurisdiction. *Franchise Tax Bd. v. Hyatt*, 139 S. Ct. 1485, 1493-94 (2019); *see also PennEast Pipeline Co., LLC v. New Jersey*, 141 S. Ct. 2244, 2264 (2021) (Gorsuch, J., dissenting) ("Structural immunity sounds in personal jurisdiction, so the sovereign can waive that immunity."). Accordingly, sovereign-immunity defenses can be waived, *Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 43 (2012), just as analogous

personal-jurisdiction defenses can, *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982).

## Conclusion

Section 1252(f)(1) does not limit the Court's jurisdiction. If that section applies at all, it acts merely as a limitation on the types of relief that are available. And, at any rate, the protections offered by that section are subject to forfeit. Section 1252(f)(1) furnishes no basis for dismissing the case, the merits of which the Court should decide both preliminarily and on final judgment. Texas respectfully requests that it do so.

Dated May 20, 2022.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1700

Respectfully submitted,

AARON F. REITZ
*Lead Counsel*
Deputy Attorney General for Legal Strategy
Texas Bar No. 24105704
aaron.reitz@oag.texas.gov

*/s/ Leif A. Olson*
LEIF A. OLSON
Special Counsel
Texas Bar No. 24032801
leif.olson@oag.texas.gov

GENE P. HAMILTON
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

*Counsel for the State of Texas*

10

## Certificate of Service

I certify that on May 20, 2022, I filed this document through the Court's EM/ECF system, which serves it upon all counsel of record.

*/s/ Leif A. Olson*
