**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| STATE OF TEXAS, | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:22-cv-94 |
| | ) | |
| ALEJANDRO MAYORKAS, | ) | |
| in his official capacity as Secretary | ) | |
| of Homeland Security, et al. | ) | |
| *Defendants.* | ) | |
| | ) | |

**DEFENDANTS' NOTICE OF DEPOSITION
UNDER FEDERAL RULE OF CIVIL PROCEDURE
30(b)(6) OF PLAINTIFF THE STATE OF TEXAS**

PLEASE TAKE NOTICE that, in accordance with the Federal Rules of Civil Procedure and any other applicable rules or Court orders, Defendants will take the deposition by oral examination of **Plaintiff State of Texas**, on _____ commencing at 10:00 AM (CST), at _____. The deposition shall be taken before a notary public or some other person authorized by law to administer oaths.  The testimony will be recorded by stenographic means by a court reporter and may be recorded by audio/visual means.  The deposition is being taken for the purpose of limited discovery as to standing, but may be used for any other purpose permitted under the Federal Rules of Civil Procedure and any applicable local rules and Court orders.  The deposition will continue from day to day until completed, Saturdays, Sundays, and holidays excluded.

PLEASE TAKE FURTHER NOTICE that Plaintiff Texas is requested to designate the person or persons most knowledgeable and prepared to testify on their behalf on the matters set forth in Attachment A below pursuant to Federal Rule of Civil Procedure 30(b)(6).

PLEASE TAKE FURTHER NOTICE that Plaintiff Texas is requested to make available at the deposition(s) the documents, electronically stored information, or objects reviewed and/or relied upon by the deponent in preparing for their testimony.

2

Date:  June 7, 2022   Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Assistant Director*

JOSEPH DARROW
ELISSA FUDIM
ERIN RYAN
*Trial Attorneys*

/s/ *Brian C. Ward*
BRIAN C. WARD
*Senior Litigation Counsel*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 616-9121
Email: brian.c.ward@usdoj.gov

SARAH STEVENS WILSON
*Assistant Director*
Office of Immigration Litigation
Appellate Section

3

## ATTACHMENT A

### I.   DEFINITIONS

1.      "You" and "your" shall mean and refer to the State of Texas, its agencies and divisions, employees, volunteers, interns, attorneys, representatives, and investigators.

2.      "Person," "persons," or "people" shall mean and refer to any individual or individuals, including without limitation, any public or private entity, including any agency, division, subdivision or section therein.

3.      "Communication(s)" shall mean and refer to the exchange of information by or through any mode or medium, including but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings, or conveying of information through third person(s) to some other intended recipient.

4.      "Relating to" as used herein shall mean constituting, comprising, pertaining to, in connection with, reflecting, respecting, regarding, referring to, based upon, stating, showing, evidencing, establishing, supporting, negating, contradicting, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying, setting forth, identifying, or in any manner logically, factually, indirectly or directly, or in any other way, connecting to the matter addressed in the request, in whole or in part.

5.      "Document" as used herein shall have the broadest meaning permitted by the Federal Rules of Civil Procedure and shall include any record of information, including writings, data, correspondence, photographs, video and audio recordings, and images. It specifically includes all communications and electronically stored information, including text messages and emails.

4

6.      "Applicant for Admission" means a noncitizen who is either an "arriving alien," as defined in 8 C.F.R. § 1.2, or has entered the United States, whether or not through a designated port of entry, and was placed in removal proceedings and claimed a fear of return to their country of origin. 8 U.S.C. § 1225(a)(1).

7.      "Undocumented Immigrant" means a noncitizen who is not an Applicant for Admission and is present in the United States without lawful status.

8.      "Asylum IFR" refers to the Interim Final Rule, the federal government published on March 29, 2022, at 87 Fed. Reg. 18,163 (Mar. 29, 2022).

9.      "Southwest border" means the international border between the United States and Mexico.

10.      "Noncitizen" means any person who is not a citizen of the United States.

11.      "Asylee" means any person who has been granted asylum in the United States.

## II.   INSTRUCTIONS

1.      The terms defined above are to be construed broadly and to the fullest extent of their meaning in a good faith effort to comply with the Federal Rules of Civil Procedure.

2.      As used in these subjects, the singular is to be treated as plural and vice versa; and masculine, feminine, or neutral pronouns shall not exclude other genders.

3.      The words "and/or," "or," and "and" are used inclusively, not exclusively.

4.      The term "any" means any and all.

## III.   RELEVANT TIME PERIOD

Unless stated otherwise, the time period to which these Topics refer is January 1, 2019, through and including the date of the deposition.

## IV.    TOPICS FOR EXAMINATION

1.      The number of Aslyees who have established residence in the State.

2.      The number of Applicants for Admission paroled by the federal government at the Southwest border pending their applications for asylum or their removal proceedings who have established residence in the State.

3.      The number of Undocumented Immigrants who have established residence in the State.

4.      The number of individuals incarcerated or otherwise detained in prisons and jails operated or overseen by the State or its agencies.

5.      The number of Applicants for Admission paroled by the federal government at the Southwest border pending their applications for asylum or their removal proceedings incarcerated or otherwise detained in prisons and jails operated or overseen by the State or its agencies.

6.      The number of Undocumented Immigrants incarcerated or otherwise detained in prisons and jails operated or overseen by the State or its agencies.

7.      The number of Asylees incarcerated or otherwise detained in prisons and jails operated or overseen by the State or its agencies.

8.      The cost of providing services to individuals incarcerated or otherwise detained in prisons and jails in the State, broken down by inmate and/or service.

9.      The amount and type of funding or financial assistance the federal government or local governments contribute to the State for the purposes of assisting in or supporting prisons and jails in the State.

10.      Any other "law enforcement" costs—as that term is used in paragraph 57 of the Complaint, ECF No. 1—you attribute to Asylees, Applicants for Admission, and Undocumented

6

Immigrants in the State, the nature of those "law enforcement," and your means and methods of calculating such costs, broken down by group (Asylees, Applicants for Admission, and Undocumented Immigrants).

11.     The number of Applicants for Admission paroled by the federal government at the Southwest border pending their applications for asylum or their removal proceedings who seek, receive, and/or require emergency health care services or "Emergency Medicaid" services (as used in paragraph 53 of the Complaint, ECF No. 1), that are funded by the State.

12.     The number of Undocumented Immigrants who seek, receive, and/or require emergency health care services or "Emergency Medicaid" services (as used in paragraph 53 of the Complaint, ECF No. 1), that are funded by the State.

13.     The number of Asylees who seek, receive, and/or require emergency health care services, or "Emergency Medicaid" services (as used in paragraph 53 of the Complaint, ECF No. 1), that are funded by the State, and the costs to the State for such services, and the means by which Texas has calculated such costs.

14.     The amount and type of funding or financial assistance the federal government, or local governments contribute to the State for the purposes of providing health care services to noncitizens.

15.     Evidentiary support for your statement in the Complaint, ECF No. 1, ¶ 54 that "Texas spends more than a million dollars per year on the Texas Family Violence Program for services to illegal aliens," and the methods and means by which you calculate this data.

16.     Evidentiary support for your statement in the Complaint, ECF No. 1, ¶ 55, that "Texas spends tens of millions of dollars each year on CHIP expenditures for illegal aliens," and the methods and means by which you calculate this data.

17.     Evidentiary support for your statement in the Complaint, ECF No. 1, ¶ 56, that "Texas spends hundreds of millions of dollars each year for uncompensated care provided by state public hospital districts to illegal aliens," and the methods and means by which you calculate this data.

18.     Evidentiary support for your statement in the Complaint, ECF No. 1, ¶ 57, that "Texas spends tens of millions of dollars each year for increased law enforcement, and its citizens suffer increased crime, unemployment, environmental harm, and social disorder, due to illegal immigration," and the methods and means by which you calculate such data as to each category of alleged harm set forth in paragraph 57 of the Complaint.

19.     The nature and type of "environmental harm" that Texas alleges illegal immigration causes in the State, as alleged in the Complaint, ECF No. 1, ¶ 57.

20.     The nature and type of "social disorder" that you allege illegal immigration causes in the State, as alleged in the Complaint, ECF No. 1, ¶ 57.

21.     The cost to Texas in providing drivers licenses to Applicants for Admission and Undocumented Immigrants.

22.     Evidentiary support for your statement in your motion for a preliminary injunction, ECF No. 21 at pg. 35, that "Should the Interim Final Rule go into effect, the number of illegal aliens in Texas, and thus Texas's spending related to illegal aliens, will continue to climb."

23.     The number of Applicants for Admission paroled by the federal government at the Southwest border pending their applications for asylum or their removal proceedings who have been convicted of crimes in the State.

24.     The number of Undocumented Immigrants who have been convicted of crimes in the State.

8

25.     The number of Asylees who have been convicted of crimes in the State.

26.     The number of children Asylees enrolled in public school in your State.

27.     The number of Applicants for Admission paroled by the federal government at the Southwest border pending their applications for asylum or their removal proceedings who are enrolled in public school in the State.

28.     The number of Undocumented Immigrant children enrolled in public schools in the State.

29.     The average cost per child per year of providing a public education.

30.     The amount and type of funding or financial assistance you receive from the federal government, local governments, and/or other sources of funding for the purposes of assisting in or supporting public education.

31.     The yearly income, sales, and property tax revenue collected by the State from Applicants for Admission paroled by the federal government at the Southwest border pending their applications for asylum or their removal proceedings.

32.     The yearly income, sales, and property tax revenue collected by the State from Asylees.

33.     The economic impact to the State and businesses within the State of labor shortages.

34.     The number of Applicants for Admission applying for asylum while living in Los Angeles, Miami, Newark, Boston, New York, and San Francisco who have moved to Texas, and your method and means for calculating these figures.

35.     The number of Applicants for Admission applying for asylum in Los Angeles, Miami, Newark, Boston, New York, and San Francisco who are likely to move to Texas in the next year, and your method and means for calculating these figures.

36.    The number of Applicants for Admission, noncitizens, and Undocumented Immigrants who resided in Texas, and have moved out of the State.

37.    The method and means of calculating the data requested in any of these topics.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 7, 2022, I served **DEFENDANTS' NOTICE OF DEPOSITION UNDER FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) OF PLAINTIFF STATE OF TEXAS** via email on counsel for Plaintiffs in this action.

/s/ *Brian C. Ward*
BRIAN C. WARD
U.S. Department of Justice