# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

|  |  |  |
|---|---|---|
| STATE OF TEXAS, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:22-cv-00094-Z |
| | ) | |
| ALEJANDRO MAYORKAS, | ) | |
| in his official capacity as | ) | |
| Secretary of Homeland Security, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## DEFENDANTS' OPPOSED MOTION TO RECONSIDER RULING ON DEFENDANTS' MOTION TO TRANSFER

## INTRODUCTION

On July 8, 2022, the Court denied Defendants' Motion to Transfer this case to the District of Columbia. Opinion and Order, ECF No. 68 (July 8, 2022) (the "Order"). The Court's ruling depends on a statutory interpretation that was discussed in dicta by the Fifth Circuit in *Texas v. Biden*, 20 F.4th 928 (5th Cir. 2021), but that was subsequently foreclosed by the Supreme Court's decision in that case, *see* Order at 6 (citing *Texas* at 20 F.4th at 977, *reversed and remanded by Biden v. Texas*, 142 S. Ct. 2528 (2022)). Because this Court's ruling is inconsistent with the Supreme Court's recent ruling in *Texas*, Defendants respectfully request that the Court reconsider that Order and reverse the ruling denying transfer.[1]

## STANDARD OF REVIEW

The Court's ruling was interlocutory in nature because it did not result in entry of final judgment ending this litigation. Where the order at issue is interlocutory, Rule 54(b) governs whether the Court should reconsider a prior ruling. *See Dos Santos v. Bell Helicopter Textron, Inc. Dist.*, 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009); *see also Central States, Se. & Sw. Areas Health & Welfare Fund v. Health Special Risk, Inc.*, No. 3:11-CV-2910-D, 2013 WL 2656159, at *2 n.2 (N.D. Tex. June 13, 2013) (citing *Dos Santos*, 651 F. Supp. 2d at 553). Under Rule 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." The precise standard under Rule 54(b) is "unclear," but "considerations similar to those under Rules 59 and 60 inform the Court's analysis." *Dos Santos*, 651 F. Supp. 2d at 553. Under Rule 59(e), the Court may alter

---

[1] Counsel for Defendants conferred with Plaintiffs' counsel on August 5, 2022. Plaintiffs oppose the motion.

its prior ruling "to (1) accommodate an intervening change in controlling law, (2) account for newly discovered evidence, or (3) correct a manifest error of law or fact." *Trevino v. City of Fort Worth*, 944 F.3d 567, 570 (5th Cir. 2019); *see also* Fed. R. Civ. P. 60 (allowing for "relief from a judgment or order" for a range of reasons, including new information or "any other reason that justifies relief"). Here, reconsideration is warranted based on the Supreme Court's interpretation of 8 U.S.C. § 1252 following the Fifth Circuit's decision in *Texas*.[2]

## ARGUMENT

Defendants argued in their motion that the Interim Final Rule (IFR) Texas challenges in this case implements Section 1225(b)(1)(B)(ii), and that Congress has limited review of regulations implementing Section 1225(b)(1) to a single forum, the District of Columbia. *See generally* Transfer Motion, ECF No. 7. Under 8 U.S.C. § 1252(a)(2)(A)(iv), "Review relating to section 1225(b)(1)" is strictly limited in this way: "Notwithstanding any other provision of law (statutory or nonstatutory) … no court shall have jurisdiction to review," among other things, any "procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title," "*except* as provided in subsection [1252](e)." 8 U.S.C. § 1252(a)(2)(A)(iv) (emphasis added). And Section 1252(e)(3) permits review *only* in the District of Columbia. Under 8 U.S.C. § 1252(e)(3), "[j]udicial review of determinations under [8 U.S.C. § 1225(b)] and its implementation is available in an action instituted in the United States District Court for the District of Columbia." This includes review of whether "any regulation issued to

---

[2] The Supreme Court's decision was issued on June 30, 2022, which Defendants acknowledge was before this Court issued its ruling on the transfer motion. However, the parties' principal briefing on the motion had already been completed prior to the Supreme Court's decision, and other than a short notice of supplemental authority filed by Defendants on July 7, 2022 (the day before this Court's transfer ruling was issued), the parties' briefing was prepared and presented to this Court without the benefit of the Supreme Court's exposition of the proper function of Section 1252 and related issues as announced in the *Texas* case.

implement" § 1225(b) "is constitutional," and "whether such a regulation … issued by or under the Authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law." 8 U.S.C. § 1252(e)(3)(A)(i)-(ii).

In ruling on the transfer motion, the Court correctly held, as Defendants had argued, that "[t]he IFR implements Section 1225(b)(1)(B)(ii)." Order at 4; *see also id*. at 2 ("The IFR relates to Section 235 of the Immigration and Nationality Act …codified at 8 U.S.C. § 1225"). The Court also acknowledged that "Section 1252(a)(2)(A) largely precludes matters relating to Section 1225(b)(1) from judicial review." *Id*. at 4. There is thus no disagreement that if Section 1252 applies to the Plaintiff in this case, the State of Texas, this case *must* be transferred to the District of Columbia or be dismissed. The Court concluded, however, that Section 1252(a)(2)(A) and (e)(3) do not apply in this case because "Section 1252 is titled 'Judicial review of orders of removal,'" and that this title "indicates the section applies to individual aliens (who are subject to orders of removal) rather than programmatic decisions." Order at 5 (quoting *Texas*, 20 F.4th at 977 n.11.); *see also* Order at 6 n.4 (citing Fifth Circuit's statement in *Texas*, 20 F.4th at 97, that the "entirety of the text and structure of Section 1252 indicates that it operates only on denials of relief for individual aliens").

The Supreme Court's decision in *Texas* forecloses this reading of Section 1252. In *Texas* the Supreme Court held that "section 1252(f)(1) 'generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions.'" 142 S. Ct. at 2538 (quoting *Garland v. Aleman Gonzalez*, 596 U.S. --- (2022)). The Supreme Court also held that this Court's injunction in that case "violated that provision" in a case where plaintiffs were States, including the State of Texas. 142 S. Ct. at 2538. Section 1252(f) falls under the same section title as Sections

3

1252(a)(2)(A) and (e)(3). Accordingly, if the title of Section 1252 indicated that "the section applies to individual aliens (who are subject to orders of removal) rather than programmatic decisions," as this Court held, *see* Order at 5, then Section 1252(f) could not apply to a challenge by Texas to a programmatic decision. Yet the Supreme Court held that Section 1252 *did* apply in that case, precluding any argument that Section 1252 or its various sub-provisions must be read based on the title or structure of that section only to apply in individual cases challenging removal orders. *See* 142 S. Ct. at 2538. This Court's ruling on the transfer motion thus cannot be squared with the Supreme Court's holding.

The Court acknowledged the Supreme Court's decision in the Order but stated that the "Supreme Court did not question the Fifth Circuit's contention that '[t]he entirety of the text and structure of Section 1252 indicates that it operates only on denials of relief for individual aliens.'" Order at 6 n.4. This is incorrect. The Supreme Court specifically applied a provision of Section 1252 in a case that did not involve any "denials of relief" or any "individual aliens." The Fifth Circuit's dicta generally addressing the scope of Section 1252, *Texas*, *see* 20 F.4th at 978 n.11, cannot be good law after the Supreme Court took a completely contrary approach to the scope of that section. *See, e.g.*, *United States v. Kirk*, 528 F.2d 1057, 1063-64 (5th Cir. 1976) (noting Fifth Circuit decisions are no longer good law once the "decision is overruled" which can be done either "expressly or implicitly"); *Cent. Pines Land Co. v. United States*, 274 F.3d 881, 893 (5th Cir. 2001) (same); *see also Whitehouse Hotel Ltd. P'ship v. Comm'r*, 615 F.3d 321, 343 (5th Cir. 2010) (Garza, J., concurring in part) (parts of majority opinion that "describe and characterize issues that we ultimately do not decide, are unnecessary to resolve this case and have no bearing on the judgment" are "dicta" that "amounts to an improper advisory opinion"). "Fifth Circuit precedent is implicitly overruled if a subsequent Supreme Court opinion 'establishes a rule of law

4

inconsistent with' that precedent." *Gahagan v. United States Citizenship & Immigr. Servs.*, 911 F.3d 298, 302 (5th Cir. 2018) (citing *Gonzalez v. Thaler*, 623 F.3d 222, 226 (5th Cir. 2010)). That is precisely what has happened here. And, as this Court further acknowledged, "the Fifth Circuit did not consider Section 1252(e)(3) in *Texas*" anyway. Order at 6 n.4.

The Court also noted that some specific provisions of Section 1252(a)(2)(A) "appear to apply to individual-removal decisions." Order at 6. However, as Defendants argued in the Transfer Motion, Section 1252(a)(2)(A)(iv) says nothing about individual removal decisions, but rather applies broadly to bar, "except as provided in subsection [1252](e)," jurisdiction to review "procedures and policies adopted … to implement the provisions of section 1225(b)(1)." *See also* Transfer Mot. at 10. And, as the Court correctly acknowledged, Section 1252(e)(3), titled "Challenges on the validity of the system," "does not use individual determination-focused language." Order at 7; *see also* Transfer Motion at 9-10. Thus, as Defendants previously argued, the title of Section 1252 cannot override the more specific text of Section 1252(a)(2)(A) and (e)(3). *See* ECF No. 15 at 5-6. A title, almost by definition, abridges "the detailed provisions of the text"—to restate every detail of the text in the title would be "ungainly as well as useless." *Railroad Trainmen v. Baltimore & Ohio R.R.*, 331 U.S. 519, 528 (1947). It is well-settled that "[w]here the text [of a statute] is complicated and prolific, headings and titles can do no more than indicate the provisions in a most general manner" and "cannot undo or limit that which the text makes plain." *Id.* at 528-29. "For interpretative purposes, they are of use only when they shed light on some ambiguous word or phrase." *Id.* Accordingly, "'[a] title or heading should never be allowed to override the plain words of a text.'" *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1879 (2021)

(quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 222 (2012)).[3] The Order thus contravenes clear Supreme Court precedent that a section title cannot be used to narrow "text" that "sweeps more broadly." *Fulton*, 141 S. Ct. at 1879.

As many courts have acknowledged, the phrase "review under Subsection 1252(e)(3)" is "not textually confined to claims arising from individual removal actions." *Make the Road New York v. Wolf*, 962 F.3d 612, 627 (D.C. Cir. 2020) (explaining that "Congress included within Subsection 1252(e)(3) … claims that, by their terms, are not confined to individual expedited-removal proceedings," including "challenges to 'procedures and policies adopted by the [Secretary] to implement [the statute]' divorced from any individual determination."); *see also M.M.V. v. Garland*, 1 F.4th 1100, 1108 (D.C. Cir. 2021) (holding § 1252(e)(3) restricts jurisdiction outside the District of Columbia for APA challenges to rules implementing the expedited removal process because "[t]he bar is keyed to the nature of the challenged agency action, not the basis for the challenge"); *S.L.V. v. Rosen*, No. 21-cv-0017, 2021 WL 243442, at *4-5 (W.D. Tex. Jan. 25, 2021) (dismissing for lack of jurisdiction and explaining that § 1252(e) "lists what relief is unavailable '[w]ithout regard to the nature of the action or claim and without regard to the identity of the party or parties bringing the action'" and provides "clear and convincing evidence that Congress intended to preclude judicial review" by district courts in this circuit); *Reyes v. Nielsen*, No. CV H-18-3971, 2020 WL 1442349, at *3 (S.D. Tex. Feb. 6, 2020), *report and*

---

[3] *See also Pa. Dept. of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) ("[T]he title of a statute ... cannot limit the plain meaning of the text."); *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008); *United States v. Hoang*, 636 F.3d 677, 681 (5th Cir. 2011) ("We find reference to the subtitle unnecessary and inappropriate because … we find no ambiguity in [the] subsection."); *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("[I]t is a commonplace of statutory construction that the specific governs the general"); *United States v. Richardson*, 948 F.3d 733, 748 (6th Cir.) ("we need not refer to titles, which do not carry the force of law, when the statutory text is clear"), *cert. denied*, 141 S. Ct. 344 (2020).

*recommendation adopted sub nom. Sequeria Reyes v. Nielsen*, No. 4:18-CV-3971, 2020 WL 1444920 (S.D. Tex. Mar. 24, 2020) (limitation on systemic challenges related "to the legality and constitutionality of the expedited removal regime" apply "[r]egardless of how Plaintiff characterizes [the] claims").

The Court nevertheless concluded the ruling denying the transfer motion by noting that the Court was reading "Section 1252(e)(3) to 'apply only to persons or things of the same general kind or class specifically mentioned (*ejusdem generis*).'" Order at 9 (quoting Scalia & Garner, *supra*,, at 199). But Section 1252(e)(3) cannot be read in isolation from 1252(a)(2)(A). Section 1252(a)(2)(A) specifically mentions programmatic challenges that are not tied to any individual removal proceedings, and the Supreme Court has now held that provisions of Section 1252 apply to programmatic claims and claims brought by States. Applying Sections 1252(a)(2)(A) and (e) to things of the same general kind or class as addressed in other provisions of Section 1252 thus *must* include programmatic challenges raised by Texas.

Indeed, the "ejusdem generis canon" has relevance only "when a drafter has tacked on a catchall phrase at the end of an enumeration of specifics . . . ." Scalia & Garner, *supra*, at 199. It accordingly "instructs courts to interpret a general or collective term at the end of a list of specific items in light of any common attributes shared by the specific items." *Sw. Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1789 (2022); *see United States v. Koutsostamatis*, 956 F.3d 301, 308 (5th Cir. 2020) ("Where it applies, *ejusdem generis* limits general terms which follow specific ones to matters similar to those specified.").

Section 1252(a)(2)(A) presents no such list of specific items with a catchall phrase at the end. Instead, it provides four classes of claims concerning expedited removal that "no court shall have jurisdiction to review." 8 U.S.C. § 1252(a)(2)(A). Two of those categories refer to

7

"individual" claims, specifically challenges to "individual determination[s]" or the "application of [section 1225(b)(1)] to individual aliens." 8 U.S.C. § 1252(a)(2)(A)(i), (iii). However, two other categories refer to general and programmatic challenges not tied to any "individual" action. *Id.* at § 1252(a)(2)(A)(ii) ("a decision by the [Secretary] to invoke the provisions of such section"), (iv) ("procedures and policies adopted by the [Attorney General or Secretary] to implement the provisions of section 1225(b)(1) of this title."). Given Congress's decision to refer to "individual" proceedings only in sections 1252(a)(2)(A)(i) and (iii), the *ejusdem generis* canon does not apply here at all. Instead, the presumption "that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another" governs. *City of Chicago v. Envtl. Def. Fund*, 511 U.S. 328, 338 (1994). Congress included the "individual" limitation only on claims covered by sections 1252(a)(2)(A)(i) and (iii), *not* sections 1252(a)(2)(A)(ii) and (iv), and so, as the D.C. Circuit has held, claims arising under sections 1252(a)(2)(A)(ii) and (iv) are not limited to individual noncitizens challenging their expedited removal orders. *Make the Road*, 962 F.3d at 627 (holding that section 1252(a)(2)(A)(ii) and (iv) are "two categories of claims that, by their terms, are not confined to individual expedited-removal proceedings," and instead cover "challenges to 'procedures and policies adopted by the [Secretary] to implement [the statute]' divorced from any individual determination.").[4] Section 1252(e)(3),

---

[4] The Court relied on the dissent in *Make the Road*, suggesting that Judge Rao "interpret[ed] Section 1252(e) to apply to limited review only of individual determinations." Order at 7. But that misreads the dissent. Judge Rao would have held that under sections 1252(a)(2)(A) and 1252(e)(3) *no* court had jurisdiction over a claim challenging certain expedited removal procedures, *regardless* of the identity of the party. *Make the Road*, 962 F.3d at 641 (Rao, J., dissenting) ("The structure and context of the INA's jurisdictional provisions also confirm that the Secretary's Expansion Designation is barred from judicial review"). Judge Rao further would have held that *some* expedited removal procedures can be challenged, but *only* by individual noncitizens subject to orders of expedited removal. *See id.* at 643-46. But under Judge Rao's reading, *no court*, not even the D.C. Circuit, has jurisdiction over an APA challenge to expedited removal procedures

8

then, in providing for "Judicial review of determinations under section 1225(b) of this title and its implementation," including review of the legality of "regulation[s]," restores what section 1252(a)(2)(A) strips district courts of, but only in the District of Columbia.

Finally, even assuming *ejusdem generis* had any application here, "[n]o canon of interpretation is absolute . . . . Each may be overcome by the strength of differing principles that point in other directions." Scalia and Gardner, *supra*, at 59. Here, two additional principles point in the opposite direction. First, even if section 1252's title and subheadings could be read to limit clear statutory text, a reading of the statute that allowed States to avoid the venue limitations, 60-day limit for bringing suits, and other limitations in Section 1252(e)(3) would undermine Congress's clear intent to streamline and consolidate all review related to Section 1225(b)(1) in the District of Columbia. *See* ECF No. 15 at 10; *accord Am. Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352, 1359 (D.C. Cir. 2000) ("The purpose is obvious"—"[b]y confining judicial review to one venue, Congress avoids conflicting decisions about the validity of particular regulations or statutes.").

Second, construing section 1252 as limited to "individual aliens" challenging their orders of removal, Order at 5, 8, would render other provisions of section 1252 nullities, notwithstanding those provisions' plain text covering claims arising outside of challenges to orders of removal by individual noncitizens. For example, under this Court's reading of section 1252, section 1252(a)(2)(B)—which bars, among other things, judicial review of any claim concerning "any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255

---

brought by anyone other than a noncitizen. The majority in *Make the Road* of course disagreed, concluding that section 1252(a)(2)(A) and (e)(3) provided jurisdiction in the District of Columbia over programmatic APA challenges to expedited removal procedures brought by parties other than individual noncitizens. *Make the Road*, 962 F.3d at 627. But regardless, under either the majority or dissent's view, *this* Court lacks any jurisdiction to review expedited removal procedures.

9

of this title" and "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in [their] discretion"—would not preclude a district court challenge by *anyone*, noncitizen, organization, or governmental entity, challenging such judgments or decisions or actions because they do not involve individual noncitizens with final removal orders. But the Supreme Court recently rejected that view as to section 1252(a)(2)(B)(i), concluding that provision stripped district courts of jurisdiction over all challenges to factual findings made as part of discretionary judgment, even if those claims cannot be challenged in any court by any party. *Patel v. Garland*, 142 S. Ct. 1614, 1626 (2022). Further, contrary to this Court's reading of section 1252, multiple courts of appeal have rejected the view that section 1252(a)(2)(B)(ii) is limited to challenges brought by individual noncitizens in their removal proceedings. Transfer Reply, ECF No. 15 at 6-7 & n. 3 (collecting casers from the First, Third, Fifth, Sixth, Seventh, Eighth, Tenth, and D.C. Circuits). Moreover, this Court's reading of section 1252 would render section 1252(g)—which strips district courts of jurisdiction "to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders"—a nullity, permitting any party to challenge an individual noncitizen's removal because those individuals are not subject to final orders of removal. Likewise, the Court's construction of section 1252 renders section 1252(b)(9)—which states that "no court shall have jurisdiction … to review … questions of law or fact" "arising from any *action taken* or proceeding brought to remove an alien," (emphasis added)—a nullity, by permitting anyone to challenge any "action taken" in district court because such actions precede any removal proceeding or removal order.[5] Where, as

---

[5] The Court's reading would render numerous other provisions meaningless, as they would not apply to parties raising claims covered by section 1252 if they were not individuals subject to final

10

here, reliance on *ejusdem generis* would undermine clear Congressional intent and nullify specific statutory provisions, the canon must give way.

## CONCLUSION

For these reasons, and those listed in Defendants' briefing on the motion to transfer, Defendants respectfully request that the Court reconsider its prior ruling and grant the motion to transfer this matter to the District of Columbia.

Dated: August 5, 2022

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

/s/ *Erez Reuveni*
EREZ REUVENI
*Assistant Director*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 307-4293
Email: erez.r.reuveni@usdoj.gov

BRIAN C. WARD
*Senior Litigation Counsel*

*Counsel for Defendants*

---

removal orders. *See, e.g.*, 8 U.S.C. § 1252(b) (requirements for petitions for review), (d) (exhaustion requirement).

## CERTIFICATE OF CONFERENCE

I hereby certify that on August 5, 2022, I conferred with counsel for Plaintiff about the relief requested in this motion. Plaintiff opposes this request.

/s/ *Erez Reuveni*
EREZ REUVENI
U.S. Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2022, I electronically filed this motion with the Clerk of the Court for the United States District Court for the Northern District of Texas by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ *Erez Reuveni*
EREZ REUVENI
U.S. Department of Justice