IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| STATE OF TEXAS,<br><br>    Plaintiff,<br><br>v.<br><br>ALEJANDRO MAYORKAS, *et al.*,<br><br>    Defendants. | 2:22-CV-094-Z |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion to Dismiss ("Motion") (ECF No. 102), filed October 2, 2023. Plaintiff's Response to Defendants' Motion to Dismiss (ECF No. 105) was filed October 23, 2023. Having reviewed the briefing and the relevant law, the Court **DENIES** the Motion.

### BACKGROUND

This case concerns an Interim Final Rule ("Rule") promulgated by the Department of Homeland Security ("DHS"). That Rule, per Plaintiff, "transfers significant authority from immigration judges to asylum officers," grants those officers "significant *additional* authority," limits "immigration-judge review to denials of applications," and "upends the entire adjudicatory system to the benefit of aliens." ECF No. 1 at 15–16. Defendants respond with this Motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In their view, Plaintiff has failed (1) to prove standing; (2) to waive Defendants' immunity; and (3) to state a claim that the Rule violates the Appointments Clause. ECF No. 102 at 2.

### LEGAL STANDARDS

"When a Rule 12(b)(1) motion is filed with other Rule 12 motions, the court first considers its jurisdiction." *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 415 (5th Cir. 2023). The party asserting jurisdiction bears "the burden of proof." *Id.* Hence, Texas must show (1) "an injury in fact that is

concrete, particularized, and actual or imminent;" (2) that Defendants "likely caused" the injury; and (3) "that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference" that the defendant is liable. *Iqbal*, 556 U.S. at 678. While a complaint "does not need detailed factual allegations," the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. At this stage, the Court "accepts well-pled facts as true and views them in the light most favorable to the plaintiff." *Vardeman v. City of Houston*, 55 F.4th 1045, 1050 (5th Cir. 2022) (internal marks omitted).

**ANALYSIS**

**I.  Plaintiff establishes Article III standing.**

**A. Plaintiff plausibly demonstrates a cognizable injury in fact.**

Defendants accuse Plaintiff of relying on "truism[s]" and "layer[ing] speculation on speculation" to establish injury. ECF No. 102 at 19–20. "In short, Texas's theory of standing is . . . that the [Rule] was likely to increase the number of noncitizens obtaining asylum . . . which would increase the number of noncitizens in the State" and "increase the State's costs." *Id.* at 17. And that theory, per Defendants, is unsupported by data collected after the Rule's enactment. *Id.*

2

But "the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008); *Pluet v. Frasier*, 355 F.3d 381, 386 (5th Cir. 2004) ("A party must have standing at the time the complaint is filed."); *Roman Cath. Diocese of Dallas v. Sebelius*, 927 F. Supp. 2d 406, 416 (N.D. Tex. 2013). And Plaintiff filed its complaint in April of 2022. ECF No. 1. That means that any data subsequent to the Rule's enactment purporting to show a stasis or decrease in illegal immigration is irrelevant to the standing inquiry. *See Gen. Land Off. v. Biden*, 71 F.4th 264, 272 n.12 (5th Cir. 2023) ("As this action was filed in October 2021, developments since then . . . will not be considered" for the purposes of defeating standing.).

What *is* relevant to the standing inquiry is whether Plaintiff pled a sufficient prospective injury. *Davis*, 554 U.S. at 734. To do that, Plaintiff need not "demonstrate that it is literally certain that the harms [it] identif[ies] will come about." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013). Nor must it prove that such harms are "clearly impending." *Id.* at n.6. On the contrary, "[a] party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct." *Davis*, 554 U.S. at 734; *Roman Cath. Diocese of Dallas,* 927 F. Supp. 2d at 416.

Defendants' own expert report recognized that "changes to asylum procedure or processing can be a necessary element of a larger bundle of policies that, together, *are sufficient to cause substantial changes in migration behavior*." ECF No. 102-3 at 6 (emphasis added). And it is eminently reasonable to believe that Defendants' changes — namely, "transfer[ring] significant authority [away] from immigration judges," "limit[ing] immigration-judge review of denials of applications," and ultimately "lower[ing] [the] procedural bar to entry" — would do exactly that. ECF Nos. 1 at 15–16; 105 at 24.

3

Moreover, Defendants neither deny "that the increase of unlawful immigration into Texas would constitute an injury," ECF No. 105 at 22, nor that several courts have ruled as much. *See, e.g.*, *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015), *as revised* (Nov. 25, 2015) ("DAPA" case); *Texas v. Biden*, 20 F.4th 928 (5th Cir. 2021), *as revised* (Dec. 21, 2021), *rev'd and remanded*, 142 S. Ct. 2528 (2022) ("MPP" case); and *Texas v. United States*, 50 F.4th 498 (5th Cir. 2022) ("DACA" case).

Worse still, Plaintiff's potential harm is amplified "because of the ongoing crisis at the border" — a crisis forcing Plaintiff to spend "more on border security than ever before." ECF No. 105 at 21. The July 2022 Legislative Budget Board reported that Plaintiff "appropriated $800 million for border security" in the 2018–19 legislative session, "$800.6 million" in 2020–21, and "$2.926 billion" in the most recent session. *Id.* And similar increases have been necessary to meet the requisite pressures on "criminal justice, public safety, state health services, the Military Department, court administration, and the Department of Motor Vehicles." *Id.*

Defendants' remaining argument — that *United States v. Texas* "calls into question whether indirect State costs" can establish standing — is misplaced. ECF No. 102 at 30; 599 U.S. 670 (2023). That case concerned "claims that the Executive Branch should make more arrests or bring more prosecutions." *Texas*, 599 U.S. at 680. And the Supreme Court cautioned that its "narrow" holding on standing is cabined to claims requesting such relief — the issue being redressability and its thorny implications for the separation of powers.[1] *Id.* at 685.

---

[1] Even still, *Texas* made clear that its holding "does not suggest that federal courts may never entertain cases involving the Executive Branch's alleged failure to make more arrests or bring more prosecutions." *Texas*, 599 U.S. at 671. Rather, "the standing analysis might differ" depending on the facts at hand. *See id.* ("[T]he standing analysis might differ if Congress elevates *de facto* injuries to the status of legally cognizable injuries redressable by a federal court," if the Executive Branch "wholly abandoned its statutory responsibilities to make arrests or bring prosecutions," if a challenge to an Executive Branch policy "involves both arrest or prosecution priorities and the provision of legal benefits or legal status," or if there are "policies governing the continued detention of noncitizens [already arrested].").

But here, Plaintiff "has not claimed that any particular aliens should be arrested." ECF No. 105 at 37. Nor has it "ask[ed] the Federal Judiciary . . . [to] order the Executive Branch to take enforcement actions against violators of federal law." *Texas*, 599 U.S. at 685. Rather, Plaintiff only takes issue with "the incentive structure the [Rule] creates." ECF No. 105 at 37. And in any event, *Texas* left untouched *Dep't of Commerce v. New York*, 139 S. Ct. 2551 (2019), which held that indirect injury against a State can be a basis for standing to challenge federal agency action. *See Dep't of Commerce*, 139 S. Ct. at 2556 (finding that "diminishment of political representation, loss of federal funds, degradation of census data, and diversion of resources" can constitute standing); *see also Cook Cnty., Ill. v. Wolf*, 962 F.3d 208, 218 (7th Cir. 2020) ("Municipalities generally have standing to challenge laws that result" or "threaten to result" in "substantial financial burdens . . . ."). Hence, Plaintiff plausibly demonstrates a cognizable injury in fact.

**B.  Plaintiff plausibly demonstrates that its injury is caused by Defendants.**

Defendants next argue that Plaintiff cannot show traceability because "total encounters at the border decreased after the [Rule] took effect, credible fear was being found in fewer cases, and the total amount of actual asylum grants" decreased. ECF No. 102 at 25. "Accordingly," Defendants conclude, "any increased costs Texas is claiming clearly are not the result of the [Rule]" and "any increase in asylees in Texas cannot be traced to the [Rule]." *Id.*

But the Court's analysis *supra* renders these arguments — all of which rely on what *subsequent* data purport to show — moot. It bears repeating: Plaintiff, at this stage, is under no obligation to prove its injury actualized or to define and eliminate all possible factors contributing to it. *See Davis*, 554 U.S. at 734 ("As noted above, the injury required for standing need not be actualized."). Nor is it even required "to produce specific evidence to counter . . . Defendants' merit arguments." *Gen. Land Off. v. Biden*, 71 F.4th at 273.

Rather, Plaintiff needs only "to have alleged facts showing the Federal Defendants' conduct is *a* cause-in-fact of the injury that the State asserts." *Id.* at 272 (emphasis added). And Plaintiff has "alleged facts" — in addition to those *supra* — that the Rule "will lead to an increase in unlawful and paroled immigrants in Texas, which . . . will cost Texas money on government programs." ECF No. 105 at 31. Its argument "does not rest on mere speculation" but instead on "the predictable effect of Government action on the decisions of third parties." *Dep't of Commerce*, 139 S. Ct. at 2556. And the alleged effect of the foregoing will be "[a]n increase in aliens' (1) applications for driver's licenses, (2) incarceration, (3) usage of public education, and (4) usage of social services." ECF No. 105 at 33. Those costs — all of which will be imposed on Texas — satisfy Plaintiff's burden here.[2]

### C. Plaintiff plausibly demonstrates that its injury is redressable.

Finally, Defendants argue that Plaintiff "has failed to demonstrate redressability" because "[e]ven without the [Rule], some federal officials . . . would retain the authority and discretion to grant asylum to noncitizens . . . ." ECF No. 102 at 28. But even if true, this objection falls short. Simply put, redressability is a matter of degree: "A court order need only alleviate some of the State's asserted harms." *Texas v. United States*, 40 F.4th 205, 219 (5th Cir. 2022); *Sanchez v. R.G.L.*, 761 F.3d 495, 506 (5th Cir. 2014) ("When establishing redressability, [a plaintiff] need only show that a favorable ruling could potentially lessen its injury; it need not definitively demonstrate that a victory would completely remedy the harm.") (internal marks omitted).

---

[2] This Court's interpretation of *Dep't of Commerce* is supported by Fifth Circuit precedent. In *Gen. Land Off.*, the Court of Appeals heard Texas's challenge to DHS's diversion of funds originally appropriated for the construction of a border wall along the United States–Mexico border. 71 F.4th at 273. "Federal Defendants . . . contend[ed] that Texas's alleged injuries [were] attributable to third parties — the illegal immigrants." But the Fifth Circuit disagreed, finding that Texas's argument that "increased miles of border wall will make the border harder to cross" and, in turn, "will disincentivize illegal immigration and reduce the number of illegal aliens who successfully cross into Texas" alleged a sufficiently causal connection. *Id.* The foregoing harm is highly comparable to that alleged here.

6

Plaintiff demonstrates that "Texas's costs would be eased if DHS" rescinded its Rule — making clear that Plaintiff's requested relief "would naturally redress Texas's harm to a meaningful degree." *Texas*, 40 F.4th at 219. And it also demonstrates an injury in fact caused by Defendants. Hence, Plaintiff has demonstrated standing, and neither party's arguments concerning special solicitude require analysis.

## II. Plaintiff's claims fall within the Immigration and Nationality Act's zone of interests.

Defendants argue that Plaintiff's claims "do not fall within the zone of interests of sections 1225(b)(1), 1229a, and 1158(d)(7)." ECF No. 102 at 41. In their view, "[if] a plaintiff is not the object of a challenged regulatory action . . . the plaintiff has no right of review . . . ." *Id.*

But the test here is not "especially demanding." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014). On the contrary, "[w]e apply the test in keeping with Congress's evident intent . . . to make agency action presumptively reviewable." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012) (internal marks omitted). The interests must be "arguably within the zone of interests to be protected or regulated," *Patchak*, 567 U.S. at 224, and review is only denied "if the plaintiff's interests are so marginally related to or inconsistent" with the statute that it cannot be assumed "Congress intended to permit the suit." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987). In sum, "the benefit of any doubt goes to the plaintiff." *Texas*, 40 F.4th at 219.

Plaintiff's interests easily satisfy the foregoing test. The Immigration and Nationality Act ("INA") was established to provide a "comprehensive federal statutory scheme for regulation of immigration and naturalization" and to set "the terms and conditions of admission to the country and the subsequent treatment of aliens lawfully in the country." *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 587 (2011). That text, on its face, covers Plaintiff's claims and pled injuries.

And the mere fact that the INA does not *explicitly* reference State financial interests does not foreclose those interests being covered; to hold otherwise would require applying the "zone of interests" test with greater scrutiny than it permits. *See Texas*, 40 F.4th at 223 (5th Cir. 2022), *overruled on other grounds, United States v. Texas*, 143 S. Ct. 1964 (2023) (quoting *DAPA*, 809 F.3d at 163) ("The interests the States seek to protect fall within the zone of interests of the INA, . . . . The States will have no trouble clearing this low bar . . . .").

### III.     Plaintiff states a claim that the Rule violates the Appointments Clause.

Lastly, Plaintiff argues that the Rule violates the Appointments Clause by giving the power of officers to employees. ECF No. 105 at 49. Defendants respond that Plaintiff fails to make the necessary showing, which — at least formally — requires Plaintiff to establish "that no set of circumstances exists under which the [Rule] would be valid." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008). But informally, courts alter the scrutiny implicit in this standard depending on the rule, statute, or provision before them. *See, e.g., City of L.A., Cal. v. Patel*, 576 U.S. 409, 418 (2015) ("[W]hen assessing whether a statute meets this standard, the Court has considered only applications of the statute in which it actually authorizes or prohibits conduct."); *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 n.6 (1992); *United States v. Rahimi*, 61 F.4th 443, 454 (5th Cir.), *cert. granted*, 143 S. Ct. 2688 (2023); *Patel*, 576 U.S. at 415.

"The Appointments Clause prescribes the exclusive means of appointing 'Officers.'" *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2051 (2018). "Only the President, a court of law, or a head of department can do so." *Id.* To be an officer, an individual must "occupy a continuing position established by law" and "exercis[e] significant authority pursuant to the laws of the United States." *Id.* at 2047.

8

Here, Plaintiff avers that the Rule "gives asylum officers even more authority" than they already had. ECF No. 105 at 49. That authority includes — when deciding whether to grant asylum — "administer[ing] oaths, verify[ing] the identity of asylum applicants, present[ing] and receiv[ing] evidence, . . . mak[ing] credibility determinations, issu[ing] written decisions, and determin[ing] whether applicants have met their burden of proof." *Id.* It also includes, per Plaintiff, "hold[ing] a *continuing* office established by law." *Id.* (emphasis added).

Moreover, asylum officers' actions "are not subject to oversight by a properly appointed officer." *Id.* at 50. Rather, they are merely "supervised by other asylum officers with 'substantial experience adjudicating asylum applications.'" *Id.* (quoting 8 U.S.C. Section 1225(b)(1)(E)). These "career government employees," per the Rule's own admission, are empowered to grant asylum "as an *exercise* of the Secretary's authority" — but their decision is "only reviewed by an actual officer of the United States upon certification by the USCIS Director." *Id.* (emphasis added).

The foregoing establishes a plausible claim that the Rule violates the Appointments Clause. Indeed, Defendants neither deny "that the [Rule] *gives* career civil servants the power of officers," nor "that asylum officers *would exercise* the function of officers under the [Rule]." ECF No. 105 at 49–50 (emphasis added). And no one disputes that asylum officers are neither principal nor inferior officers. Accordingly, Plaintiff's constitutional claim survives the motion to dismiss stage.

## CONCLUSION

Defendants' Motion is **DENIED**.

**SO ORDERED**.

February 6, 2024

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE