United States District Court
Northern District of Texas
Amarillo Division

STATE OF TEXAS,
    *Plaintiff,*

v.

ALEJANDRO MAYORKAS, *et al.;*
    *Defendants.*

Case 2:22-cv-00094-Z

## STATE OF TEXAS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO RECONSIDER

The State of Texas files this Response in Opposition to Defendants' Motion to Reconsider the Order on Defendants' Motion to Dismiss.

TABLE OF CONTENTS

Table of Contents ........................................................................................................... ii

Table of Authorities ...................................................................................................... iii

Introduction .................................................................................................................... 1

Standard ........................................................................................................................... 1

Argument .......................................................................................................................... 3

   I.     This Court correctly treated the facial allegations as true because Defendants raised an indirect attack on the merits. ..................................................................................... 3

     A.  Defendants' "Jurisdictional Facts" are actually "Factual Merits Defenses"; Therefore, the Court's Analysis was Correct ................................................... 3

     B.  Even if Defendants' factual attacks were considered jurisdictional, Texas proffered sufficient evident to rebut them. .......................................................... 5

   II.    Texas Has Standing. ..................................................................................... 9

     A.  Texas proffered evidence sufficient to establish injury-in-fact. ...................... 9

     B.  Texas has shown "substantial risk" of a "certainly impending" injury, and the factual attack does not change that standard. ............................................... 10

     C.  Priorities is not to the contrary. ............................................................. 11

   III.   The case is not moot because Texas's injury is ongoing. ................................. 12

     A.  Defendants may not raise an issue for the first time on reply. ....................... 12

     B.  This case presents a live controversy in which Texas has a considerable stake. ........... 12

   IV.   This Court has already rejected Defendants' Motion to Transfer Venue under Section 1252(e) and should not reopen that inquiry here. ....................................... 15

     A.  Texas has not waived any argument pertaining to 8 U.S.C. § 1252 ................ 15

     B.  Defendants' argument is essentially the same one this Court rejected in the Motion to Transfer Venue ........................................................................... 16

     C.  This Court has jurisdiction to hear the case. ............................................. 17

Conclusion ..................................................................................................................... 22

Certificate of Service .................................................................................................... 24

TABLE OF AUTHORITIES

**Cases**                                                                                    Pages(s)

*Arkansas v. Wilmington Tr. Nat'l Ass'n,*
    No. 3:18-CV-1481-L, 2020 WL 1249570, at *5 (N.D. Tex. Mar. 16, 2020) (Lindsay, J.)......15

*Benavides v. Housing Authority of City of San Antonio, Tex.,*
    238 F.3d 667, 670 (5th Cir.2001) ............................................................................14

*Biden v. Texas,*
    597 U.S. 785, 797 (2022) ........................................................................................14

*Black v. Panola Sch. Dist.,*
    461 F.3d 584, 588 n.1 (5th Cir. 2006) ...................................................................16

*Bradley v. Target Corp.,*
    No. 3:23-CV-00193, 2023 WL 6166475, at *2 (N.D. Tex. Sept. 21, 2023)............16

*Brown v. Bridges,*
    No. 3:12-CV-4947-P, 2014 WL 2777373, at *2 (N.D. Tex. June 19, 2014)............12

*Cavazos v. JP Morgan Chase Bank, N.A.,*
    388 F. App'x 398, 399 (5th Cir.2010) ....................................................................12

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398, 414 n.5 (2013) ..............................................................................2, 5

*Coliseum Square Ass'n, Inc. v. Jackson,*
    465 F.3d 215, 246 (5th Cir. 2006) .........................................................................14

*Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.,*
    704 F.3d 413, 425 (5th Cir. 2013) .........................................................................13

*Daniels v. Bowles,*
    No.Civ.A. 3:03-CV-1555, 2004 WL 1810658 (N.D. Tex. Aug. 9, 2004)................16

*Davis v. FEC,*
    554 U.S. 724, 734 92008 ................................................................................ passim

*Dep't of Com. v. New York,*
    139 S. Ct. 2251, 2566 (2019)...........................................................................11, 14

*Dep't of Commerce v. New York,*
    139 S. Ct. 2551 (2019) ...........................................................................................11

*GLO v. Biden,*
    71 F.4th 264, 273 (5th Cir. June 23, 2023) ..............................................2, 3, 5, 10

*La. Env't Action Network v. U.S. E.P.A.,*
    382 F.3d 575, 581 (5th Cir. 2004)..........................................................................13

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555, 571 n.4 (1992) ................................................................................................. 1

*Matter of Dallas Roadster, Ltd.*,
    846 F.3d 112, 126 (5th Cir. 2017) ....................................................................................... 16

*McLin v. Twenty-First Judicial District*,
    79 F.4th 411, 415 (5th Cir. 2023) .......................................................................................... 2

*Mid–Continent Cas. Co. v. Eland Energy, Inc., No. 3:06–cv–1576–D,* 2008 WL 80760, at *3 n.
    4 (N.D. Tex. Jan.8, 2008) ..................................................................................................... 12

*Murphy v. Hunt*,
    455 U.S. 478, 481 (1982) (per curiam) ................................................................................ 13

*Neaville v. Wells Fargo Bank, N.A.*,
    No. 3:11-CV-97-P, 2013 WL 12124590, at *1 (N.D. Tex. June 4, 2013) ............................. 16

*Opulent Life Church v. City of Holly Springs, Miss.*,
    697 F.3d 279, 286 (5th Cir. 2012) ....................................................................................... 14

*Paterson v. Weinberger*,
    644 F.2d 521, 523 (5th Cir. 1981) .......................................................................................... 2

*Pluet v. Frasier*,
    355 F.3d 381, 386 (5th Cir. 2004) .......................................................................................... 9

*Reyes v. Nielsen*,
    No. 4:18-cv-3971, 2020 WL 1442349, at *1 (S.D. Tex. Feb. 6, 2020) ................................. 17

*Rocky v. King*,
    900 F.2d 864, 866, 867 (5th Cir. 1990) ............................................................................... 13

*Rodrigues v. DHS*,
    No. 3:20-cv-0139, 2020 WL 777278, at *1 (N.D. Tex. Feb. 18, 2020) ................................ 17

*S.L.V. v. Rosen*,
    No. 5:21-cv-0017, 2021 WL 243442, at *1 (W.D. Tex. Jan. 25, 2021) ................................ 17

*Shah v. Director*,
    No. 3:19-cv-1164, 2019 WL 4254139, at *1 (W.D. La. Sep. 6, 2019) ................................. 17

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149, 158 (2014) ....................................................................................................... 2

*Templet v. Hydro-Chem, Inc.*,
    367 F.3d 473, 479 (5th Cir. 2004) .......................................................................................... 1

*Texas v. Biden*,
    20 F.4th 928, 971 (5th Cir. 2021) .......................................................................................... 8

*Tucker v. Gaddis,*
    40 F.4th 289, 292 (5th Cir. 2022) ............................................................................14

*U.S. v. Students Challenging Regulatory Agency Procedures (SCRAP),*
    412 U.S. 669, 689 n.14 (1973) .............................................................................. 2

*United States Telecom Ass'n v. FCC,*
    825 F.3d 674, 679 (D.C. Cir. 2016) ....................................................................... 11

*United States v. Texas,*
    599 U.S. 670 (2023) ............................................................................................... 11

*Williamson v. Tucker,*
    645 F.2d 404, 415-16 (5th Cir. 1981) ..............................................................3, 4, 5

**Constitutional Provisions & Statutes**

8 U.S.C. § 1252 ...........................................................................................................15, 17

8 U.S.C. § 1252(e) ...........................................................................................................15

8 U.S.C. § 1252, (2) ........................................................................................................15

**Rules & Regulations**

Fed. R. Evid. 201(b) .........................................................................................................15

Fed. R. Civ. P. 12(b)(6) ...............................................................................................1, 2, 3

## INTRODUCTION

On February 6, 2024, this Court rightfully denied Defendants' Motion to Dismiss, stating "Plaintiff's constitutional claim survives the motion to dismiss stage." ECF 121. It is worth noting that Defendants have not moved to reconsider either this Court's ruling that Texas's claims fall within the zone of interests contemplated by the Immigration and Nationality Act or that Texas's Appointments Clause survives a Rule 12(b)(6) motion to dismiss.  ECF 121 at 7-9; ECF 123 at 3-14. Thus, those aspects of the ruling should stand regardless of the Court's determination of Defendants' Motion to Reconsider.

Texas now opposes Defendants' Motion to Reconsider on the grounds that (1) the Court applied the correct standard to a factual attack that did not, in fact, attack facts critical to jurisdiction; (2) even under a factual attack, Texas proffered evidence sufficient to sustain the Court's decision; (3) Texas's claims are not moot; and (4) the Court should not revisit arguments it already decided in the Motion to Transfer Venue.

## STANDARD

A Rule 59(e) motion "serves the narrow function of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence" not as a "vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of the judgment." *Templet v. Hydro-Chem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

Here, the Defendants' 59(e) motion asks the Court to reconsider its decision that Texas has standing, and this Court has jurisdiction. Federal jurisdiction normally "depends on the facts *as they exist when the complaint is filed.*" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 571 n.4 (1992) (emphasis in original; citation omitted). At the time of a complaint, Plaintiffs do not need to show an already actualized injury—"A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct." *Davis v. FEC*, 554 U.S. 724, 734 92008). "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a "'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149,

158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)). Further, "[A]n identifiable trifle is enough for standing." *U.S. v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973) (citation and internal quotation marks omitted).

Where subject-matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff bears the burden of proof. *McLin v. Twenty-First Judicial District*, 79 F.4th 411, 415 (5th Cir. 2023). The burden of proof on standing varies with the stages of litigation. *See Lujan*, 504 U.S. at 562. A challenge to standing at this early stage of litigation should not require Texas to prove its entire case. Defendants claim to raise a factual attack on standing. ECF 102 at 2; ECF 123 at 1. A factual attack, which consists of a Rule 12(b)(1) motion accompanied by supporting evidence, challenges jurisdiction by challenging the jurisdictional facts alleged in the complaint. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). When ruling on a factual attack, the Court must require the plaintiff to prove "through some evidentiary method . . . by a preponderance of the evidence that the court does have subject matter jurisdiction." *Id.* If, however, defendants raise a "factual merits defense" rather than a factual jurisdictional attack, that defense is "not a response cognizable on a motion to dismiss where allegations in Texas's complaint must be taken as true." *GLO v. Biden*, 71 F.4th 264, 273 (5th Cir. June 23, 2023).

A factual attack on jurisdiction under Rule 12(b)(1) can be, in reality, a challenge to the merits of the plaintiff's case. Where that is true, the attack is more properly treated as a Rule 12(b)(6) motion or a Rule 56 motion, which would give more protection to the plaintiffs. As the Fifth Circuit has said:

> This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) . . . or Rule 56—both of which place greater restrictions on the district court's discretion. The court must take the plaintiff's allegations as true when a Rule 12(b)(6) motion is raised, and in addition must determine that no genuine issue of material fact exists when a Rule 56 motion is granted. As discussed above, however, a Rule 12(b)(1) motion can be based on the court's resolution of disputed facts as well as on the plaintiff's allegations and undisputed facts in the record.

*Williamson v. Tucker*, 645 F.2d 404, 415-16 (5th Cir. 1981). Thus, if the Court believes that the Defendants essentially raised a factual attack on the merits under the guise of a motion to dismiss, the Court is entitled to treat the facial allegations as true.

In determining whether the Defendants are attacking the merits in their Motion to Dismiss, then the Court may apply the standard enumerated by the Fifth Circuit in *GLO v. Biden*, which recognized a "factual merits defense" where the Government accused Texas of failing to demonstrate that the challenged federal policy actually would lead to a net increase in undocumented immigrants:

> The Federal Defendants respond that Texas failed to demonstrate DHS's 2021 spending plan "will cause a net increase in the number of undocumented immigrants who enter the United States." In other words, the Federal Defendants argue that DHS's 2021 plan is at least as effective in reducing the relative amount of illegal immigration as building additional border barriers. This argument fails on several levels.  First, it is inconsistent with the . . . record . . . . Second, the effectiveness of the Federal Defendants' 2021 border wall plan ***raises a factual merits defense, not a response cognizable on a motion to dismiss where allegations in Texas's complaint must be taken as true***.  *See Lujan*, 504 U.S. at 561.

*GLO v. Biden*, 71 F.4th 264, 272-73 (5th Cir. 2023) (emphasis added).

**ARGUMENT**

I.  **THIS COURT CORRECTLY TREATED THE FACIAL ALLEGATIONS AS TRUE BECAUSE DEFENDANTS RAISED AN INDIRECT ATTACK ON THE MERITS.**

Defendants incorrectly argue that this Court failed to consider their factual attack on jurisdiction. In fact, where, as here, the Defendants attack on jurisdiction essentially goes to the merits of the case, this Court may treat the Defendants' claim as a Rule 12(b)(6) or Rule 56 motion. *Williamson*, 645 F.2d at 415-16. Here, the merits are intertwined with Defendants' alleged attack on jurisdiction, and this Court was correct to apply the standard that recognized this fact.

A.  **DEFENDANTS' "JURISDICTIONAL FACTS" ARE ACTUALLY "FACTUAL MERITS DEFENSES"; THEREFORE, THE COURT'S ANALYSIS WAS CORRECT**

Defendants' jurisdictional facts implicate the merits, and as such, should be treated as "factual merits defenses." The so-called jurisdictional facts that Defendants cite in their Motion

to Reconsider include: (1) that the IFR was not being applied to asylum-seekers traveling to Texas destinations; (2) that the IFR did not increase immigration; (3) that the IFR did not increase the rate at which individuals are granted asylum; and (4) that the IFR did not cost Texas any money. ECF 123 at 6.  None of these facts implicate jurisdiction and should not be treated as jurisdictional facts.

*First*, whether the IFR was applied to asylum-seekers traveling to Texas destinations is not, in fact, probative of jurisdiction. Texas claims that it is injured by *any* rule that increases the presence of unlawful immigrants in the State of Texas. ECF 105 at 13-14. The fact that the IFR may not name Texas destinations as applicable points of entry does not disprove Texas's assertion that the IFR increases immigration to Texas. Immigrants move around once they enter the United States, and Texas is a top destination for the initial resettlement of refugees, second only to California.[1] The Migration Policy Institute ranked Texas as number one in 2023—10 percent of all refugees granted asylum chose Texas as their initial state of settlement, and more refugees arrived in the United States in the first 8 months of Fiscal Year 2023 than at any time since FY 2018.[2] Thus, Texas draws the reasonable inference that a rule that makes it easier to enter the United States will result in an increase in immigration to Texas. Defendants statement that the IFR does not name Texas does nothing to disprove Texas's claim. Thus, Texas had no obligation to rebut it with more specificity, and the Court correctly did not require it to do so.

*Second*, whether the IFR increased either immigration or the rate at which asylum was granted goes directly to the merits of Plaintiff's claim that the IFR is arbitrary and capricious.  ECF 1 at ¶70-77.  In the complaint, Plaintiff alleged that "[t]he Defendants' conclusion that the asylum-application rate will not increase is unreasoned and supported by no evidence." *Id.* at ¶70. The

---

[1] *See, e.g.*, United States Census Bureau, *State-to-State Migration Flows: 2022*, at State-to-State Migration Flows (census.gov); United States Department of State, *Report to Congress on Proposed Refugee Admissions for Fiscal Year 2023*, Sept. 8, 2022, at 42, Table VIII, *available at* Report to Congress on Proposed Refugee Admissions for Fiscal Year 2023 - United States Department of State; Appx 224-69, 311-12.

[2] Migration Policy Institute, *Refugees and Asylees in the United States*, June 15, 2023, at Article: Refugees and Asylees in the United States | migrationpolicy.org.; Appx 316, 321.

complaint also alleged that "[t]he Defendants' conclusion that the Interim Rule does not provide incentives to file meritless asylum applications is unreasoned." *Id.* at ¶73. Thus, these two facts— whether the IFR increases immigration or the rate at which individuals are granted asylum—go directly to the merits of whether the IFR is arbitrary and capricious and should not be considered jurisdictional. With regard to these two facts, the Court correctly refused to engage in a "factual attack" determination and instead applied the standard for a "factual merits defense" as laid out in *GLO.* 71 F.4th at 272-73.

*Third*, whether the IFR costs Texas money is not a jurisdictional fact. Defendants do not dispute that the increase of unlawful immigration into Texas would constitute an injury that multiple courts have recognized. ECF 102 at 9-10. What Defendants attempt to recast as a jurisdictional fact is in truth an argument that a rule that injures Texas can avoid challenge simply by careful drafting that avoids mentioning Texas. It cannot. Moreover, Texas does not need to show an actualized injury at the time of the complaint to establish standing. *Davis*, 554 U.S. at 734. Texas asserted that it faced "prospective injury . . . where the threatened injury [was] real, immediate, and direct." *Id.* Texas was not required to show that it was "literally certain" that it would be injured in the future. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013). Thus, the Court again correctly declined to engage in a "factual attack" analysis regarding whether the IFR cost Texas money.

### B. Even if Defendants' factual attacks were considered jurisdictional, Texas proffered sufficient evident to rebut them.

Defendants' evidence that allegedly puts jurisdictional facts in controversy falls under its own weight, as Texas pointed out in its response to the Motion to Dismiss. ECF 105 at 13-23. If Defendants have not made a credible factual attack, the Court was not required to force Texas to rebut that ineffective attack by a preponderance of its own independent evidence. Texas rebutted Defendants arguments by demonstrating the flaws in Defendants' evidence and reasoning through both facts and argument. Simply because Defendants believed Texas should have framed its

argument differently or found Texas's argument unpersuasive does not mean that its evidence was "largely uncontroverted." ECF 123 at 1. Nor does the fact that Defendants believe the Court should have given their evidence more weight render the Court's evidentiary standard incorrect. *See* ECF 123 at 4.

*First*, Defendants' evidence that allegedly proves that the IFR did not increase migration to Texas—a fact that goes to the merits of the case—is deeply flawed.  Defendants submitted an expert report as evidence that the IFR did not increase encounters at the Southwest Border. ECF 102 at Exh. C. The expert *admits* that "[t]he evidence is not inconsistent with the possibility that changes to asylum procedure or processing can be a necessary element of a larger bundle of policies that, together, are sufficient to cause substantial changes in migration behavior." ECF 102 at Exh. C, ¶10. The Court was well within its discretion to determine that based on *Defendant's own expert*, "it is eminently reasonable to believe that Defendants' changes . . . would do exactly that." ECF 121 at 3. Defendants cannot cry factual attack foul when their own evidence led to the Court's conclusion.

Defendants are also incorrect that Texas "pleaded no facts showing how the IFR could increase the number of noncitizens in Texas." ECF 123 at 8.  As explained above, Texas cited publicly available government documents that demonstrate how, in fact, this could occur. *See supra* nn. 1-2. Again, Defendants are not entitled to exactly the evidence or argument they believe Texas should make to refute their point. The Court was within its discretion to find Texas's argument persuasive.

*Second*, Defendants' own expert again makes Texas's point by showing that from March 29, 2022 until May 31, 2022, the number of border encounters increased. ECF 102 at Exh. C, ¶14 (chart). Defendants' own expert demonstrates that at the time of the complaint, Texas had evidence that the IFR had increased migration. This increase is confirmed by the data provided on

the U.S. Customs and Border Protection website.[3] The Court correctly held that this evidence gave Texas standing at the time of the complaint. ECF 121 at 2-3.

Even if migration decreased after the complaint, Texas still has standing because "the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis*, 554 U.S. at 734. But, in fact, migration increased. There was an overall uptick in CBP encounters once Texas's numbers were separated out from the other states in the public data on which Defendants' expert relied.[4] El Paso's border encounter total, for example, was up *50.4 percent year over year*![5] Although Defendants do not acknowledge it, Texas directly rebutted their expert's evidence by recalculating the same publicly available numbers that the expert relied on to reach a different conclusion. *See* ECF 105 at 18.

Defendants argue that this soundly rebutted evidence that total encounters decreased renders Texas's claims moot "because Texas failed to establish any ongoing harm from the IFR." ECF 123 at 11. Defendants claim—without basis—that "Texas submitted no contrary evidence" to refute their claim that the IFR did not increase border encounters.[6] Again, Texas used Defendants' own expert's numbers to show that border encounters increased.  *See* ECF 105 at 18.

*Third*, Defendants' own expert rebutted Defendants' argument that Texas has to trace increased migration to the IFR. Defendants' expert stated that the story behind the numbers is more complicated, and migration may fluctuate as a result of seasonal changes or the unemployment rate for Hispanic/Latino workers. ECF 102 at Exh. C, ¶¶8-10, 23, 25. The expert further admitted that "[i]t is hypothetically possible that an irrelevant downward trend in border

---

[3] U.S. Customs and Border Protection, "Fiscal Year Stats," *Southwest Land Border Patrol Encounters (by Component)*, at Southwest Land Border Encounters (By Component) | U.S. Customs and Border Protection (cbp.gov). This data is partially included at Appx 326ff.

[4] U.S. Customs and Border Protection, *Southwest Land Border Patrol Encounters (by Component)*, at Southwest Land Border Encounters (By Component) | U.S. Customs and Border Protection (cbp.gov); Appx 326ff; *see also* ECF 105 at 18 (chart).

[5] *Id.*

[6] Mootness was arguably not directly before the Court because Defendants only raised it in a footnote in their reply brief on the Motion to Dismiss.  ECF 114 at 3 n.2.  For this reason, the Court was not obligated to address mootness directly in its opinion.  Regardless, Texas rebutted Defendants' evidence sufficiently to defeat their mootness argument.

encounters could conceal any rise in encounters that might be caused by the rule." ECF 102-3 at ¶20.

*Fourth*, Texas does not have to trace specific asylum grants under the IFR to specific migrants paroled in Texas who then use Texas services to demonstrate standing. The Fifth Circuit has made this clear:

> The Government says that's not enough because Texas has not shown it has already issued any licenses to immigrants who became eligible because of MPP's termination. Tellingly, however, it offers no hint as to how Texas could make that showing—nor why we should require it to do so. Imagine Texas had produced copies of driver's license applications from paroled aliens. Would that have counted as evidence that Texas had, in the Government's words, "issued a single additional 'driver's license as a result" of 'MPP's termination? Of course not: There would always remain some possibility that *any given parolee* would have been paroled even under MPP. MPP is precisely the sort of large-scale policy that's amenable to challenge using large-scale statistics and figures, rather than highly specific individualized documents. And Texas's standing is robustly supported by just such big-picture evidence. There is nothing "conjectural" or "hypothetical" about that.

*Texas v. Biden*, 20 F.4th 928, 971 (5th Cir. 2021) ("*MPP*"); *see also Florida v. Mayorkas*, --- F.Supp.3d ---, 2023 WL 3398099, at *5 (N.D. Fla. May 11, 2023) ("[T]he evidence presented ... established that Florida suffers substantial harm—both to its sovereignty and its public fisc—when the federal government releases aliens into the country on 'parole' (or otherwise) rather than detaining them as required by the INA.").

As explained above, Texas proffered evidence that border encounters increased after the IFR and that Texas is a top destination for immigrants who enter the United States at any port of entry under any rule. *See supra,* Part I.A. Texas also proffered evidence of a study that found there were more grants of asylum in 2022 than in any other year—and the study attributed this increase to policies of the Biden Administration.[7]

Further, in the USCIS Director's FY 2022 report to Congress in July 2023, a chart showing the year-over-year numbers of asylum cases received based on affirmative grants, credible fear, or

---

[7] Suzanne Gamboa, *Biden Admin Changes Have Led to Historic Number of Court-Granted Asylum Cases*, NBC News, Dec. 14, 2022, at Biden changes led to historic number of court-granted asylum cases (nbcnews.com); Appx 375.

reasonable fear indicated that the overall number of cases in 2022 *increased 166 percent* from 124,939 in 2021 to 331,761 in 2022.[8] All types of cases increased from 2021 to 2022.[9] While the chart showed only 759 cases attributable to the IFR cohort, the IFR cohort numbers only include a few months of data. Texas's argument has never been limited to the IFR itself—Texas's complaint is that the IFR will increase the number of overall asylum seekers, which will, in turn, lead to more unlawful immigrants in Texas, many of whom will never be processed, detained, or removed. Texas rebutted Defendants' evidence that the IFR made immigration rates decrease.

Therefore, Texas proffered evidence rebutting Defendants' factual attack on jurisdiction, and the Court was entitled to find that Texas's evidence was more persuasive than Defendants' evidence.

## II.   TEXAS HAS STANDING.

Again, if the Court did not believe Defendants proffered evidence to attack facts that were actually critical to jurisdiction, the Court did not need to weigh Texas's evidence against Defendants' evidence at all because the factual attack was not properly raised. In that eventuality, the Court could have applied the traditional standard for a motion to dismiss. However, if the Court believes Defendants properly mounted a factual attack on jurisdiction, Texas's evidence is still enough to sustain the Court's ruling.

### A.   TEXAS PROFFERED EVIDENCE SUFFICIENT TO ESTABLISH INJURY-IN-FACT.

The Court's ruling found that Texas had injury-in-fact because "the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008); *Pluet v. Frasier*, 355 F.3d 381, 386 (5th Cir. 2004) ("A party must have standing at the time the complaint is filed.").

---

[8] Department of Homeland Security, *Asylum Application Processing: FY 2022 Report to Congress*, July 17, 2023, at 6, *available at* https://www.dhs.gov/sites/default/files/2023-08/23_0717_uscis_asylum_application_processing.pdf (last visited Oct. 13, 2023); Appx 389.
[9] *Id.*

The Court correctly found that "any data subsequent to the Rule's enactment purporting to show a stasis or decrease in illegal immigration is irrelevant to the standing inquiry. *See Gen. Land Off. v. Biden*, 71 F.4th 264, 272 n.12 (5th Cir. 2023) ("As this action was filed in October 2021, developments since then . . . will not be considered" for the purposes of defeating standing.)." ECF 121 at 3. The Court correctly stated that the standard for standing was whether Texas "pled a sufficient prospective injury." *Id.* (citing *Davis*, 554 U.S. at 734).

Defendants urge reconsideration based on the fact that the Court did not consider their factual attack on whether, after the rule passed, Texas proved any increase in migration in Texas leading to Texas's incurring costs. *See* ECF 123 at 6. But because the standard for standing is not concerned with subsequent facts, the Court correctly did not look to these subsequent facts.

## B. TEXAS HAS SHOWN "SUBSTANTIAL RISK" OF A "CERTAINLY IMPENDING" INJURY, AND THE FACTUAL ATTACK DOES NOT CHANGE THAT STANDARD.

Defendants next urge reconsideration because, in their view, Texas did not prove a prospective injury by a preponderance of the evidence. *See* ECF 123 at 7-10. Defendants claim that they have put forward a factual attack on jurisdiction even at the moment of the complaint, and Texas must put forth evidence demonstrating that it had a substantial risk of injury. *See id.* Texas did present evidence that it had a substantial risk of injury. As explained above, Texas is a top destination for immigrants. Further, Texas submitted evidence both that immigration had increased since the passage of the IFR and that illegal immigration costs Texas money. *See* ECF 106-106.4. Proving a substantial risk at the time of the complaint is not the same as proving standing in later stages of litigation. *See Lujan*, 504 U.S. at 562 (noting that the standing burden of proof varies with the stages of litigation). The burden should be at its nadir at the time of the complaint, and the Court correctly concluded that Texas met that burden.

Defendants' focus on whether Texas proved that the IFR was applied to migrants with destinations in Texas is misplaced. First, whether the IFR mentions Texas is not dispositive of

whether it leads to increased illegal immigration in Texas because migrants migrate. Second, as explained above, Defendants' own expert showed that from the time the IFR was announced on March 28, 2022 until its effective date of May 31, 2022, encounters at the Southwest Border marginally increased. ECF 102.3 at 4 (chart). Third, as explained above, Texas offered evidence that the asylum grant rate was increasing. The complaint was filed on April 28, 2022. ECF 1. Thus, at the time of the complaint, Texas saw border encounters and asylum grants increasing, and there was no data about the IFR's operation because the complaint was filed pre-enforcement. *See United States Telecom Ass'n v. FCC*, 825 F.3d 674, 679 (D.C. Cir. 2016) (agency rule, unlike a statute, is reviewable without waiting for enforcement). The Court correctly held that Texas met its burden to show substantial risk of prospective injury.

### C. *PRIORITIES* IS NOT TO THE CONTRARY.

Defendants claim that the *Priorities* case stands for the proposition that "indirect costs based on population changes affected by immigration policy are insufficient to satisfy Article III." ECF 123 at 10 (citing *United States v. Texas*, 599 U.S. 670 (2023) ("*Priorities*"). Not so. The Court correctly observed that *Priorities*

> concerned "claims that the Executive Branch should make more arrests or bring more prosecutions." *Texas*, 599 U.S. at 680. And the Supreme Court cautioned that its "narrow" holding on standing is cabined to claims requesting such relief—the issue being redressability and its thorny implications for the separation of powers. *Id.* at 685.

ECF 121 at 4. Moreover, this argument "does not rest on mere speculation about the decision of third parties" but "on the predictable effect of Government action on the decisions of third parties." *Dep't of Com. v. New York,* 139 S. Ct. 2251, 2566 (2019). This Court correctly noted that *Priorities* "left untouched *Dep't of Commerce v. New York*, 139 S. Ct. 2551 (2019), which held that indirect injury against a State can be a basis for standing to challenge federal agency action." ECF 121 at 5. Thus, *Priorities* is no barrier to Texas's claims in this case.

## III.   THE CASE IS NOT MOOT BECAUSE TEXAS'S INJURY IS ONGOING.

Defendants' arguments pertaining to mootness fail for two reasons: (1) Defendants mootness argument that was raised for the first time in their Reply in Support of Their Motion to Dismiss should not be considered, and (2) Texas has presented a live controversy, in which Texas holds a considerable stake.

### A.   DEFENDANTS MAY NOT RAISE AN ISSUE FOR THE FIRST TIME ON REPLY.

This Court should decline to consider an argument raised by Defendants for the first time in their Reply in Support of Their Motion to Dismiss. Defendants, in a footnote in the Reply, argue that the case "may be" moot, after Texas merely referenced mootness in passing. ECF No. 105 at 15; ECF No. 114 at 9 n.2. And the Court did not address the issue of mootness in its Memorandum Opinion and Order that denied the Motion to Dismiss. *See generally*, ECF No. 123.

Defendants' untimely attempt to raise a jurisdictional argument in a footnote on reply should foreclose any consideration of mootness at this time. When a plaintiff raises an issue for the first time on reply, it is "too little, too late," since a new argument may not be made on reply. *See Brown v. Bridges*, No. 3:12-CV-4947-P, 2014 WL 2777373, at *2 (N.D. Tex. June 19, 2014) (citing *Cavazos v. JP Morgan Chase Bank, N.A.,* 388 F. App'x 398, 399 (5th Cir.2010)) ("'[a]rguments raised for the first time in a reply brief, even by pro se litigants . . . are waived.'") (citations omitted); *see also Mid–Continent Cas. Co. v. Eland Energy, Inc.,* No. 3:06–cv–1576–D, 2008 WL 80760, at *3 n. 4 (N.D. Tex. 2008) (noting that "this court has repeatedly held that it will not consider arguments raised for the first time in reply.").

Just like this Court did not address the issue of mootness in its Order denying the Motion to Dismiss (*see generally*, ECF No. 123.), it should again decline to do so.

### B.   THIS CASE PRESENTS A LIVE CONTROVERSY IN WHICH TEXAS HAS A CONSIDERABLE STAKE.

To the extent that this Court considers Defendants' untimely attempt to raise mootness, Defendants' arguments fail. "An action is moot where (1) the controversy is no longer live or (2) the parties lack a personal stake in its outcome." *Rocky v. King*, 900 F.2d 864, 866, 867 (5th Cir.

1990). "In general, a claim becomes moot 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *La. Env't Action Network v. U.S. E.P.A.*, 382 F.3d 575, 581 (5th Cir. 2004) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). Therefore, "[m]ootness applies when intervening circumstances render the court no longer capable of providing meaningful relief to the plaintiff." *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013).

Defendants make four key arguments. *First*, Defendants argue that they "provided undisputed evidence that the IFR's asylum-merits interview procedure had not been applied to any noncitizens with destinations in Texas." ECF No. 102 at 10-11. However, grant rates are only part of the issue. Texas noted that any federal administrative rule that would make it easier for an illegal immigrant to enter the United States, in turn increases harm to Texas, that its social services and criminal justice system will have to take care of. *See* ECF No. 105 at 28.

*Second*, Defendants claim that their expert, "Professor Clemens, concluded that the IFR did not affect the number of migrants seeking to enter the United States at the southwest border." ECF No. 123 at 17. However, Defendants omit—in relevant part—their expert's own words: "changes to asylum procedure or processing can be a necessary element of a larger bundle of policies that, together, are sufficient to cause substantial changes in migration behavior." ECF No. 102-3 at 6. As duly noted by this Court, the act of "transfer[ring] significant authority [away] from immigration judges," or "limit[ing] immigration-judge review of denials of applications," and subsequently "lower[ing] [the] procedural bar to entry," would logically provide for such a result. ECF No. 105 at 24; ECF No. 121 at 3.

*Third*, Defendants further claim that they "provided undisputed evidence that the IFR's asylum-merits interview procedure has not increased the rate at which noncitizens are being found to have credible fear of persecution or torture or being granted asylum." ECF No. 102 at 13-14. This again fails to take into account that changes to asylum procedures or processing, paired with other immigration levers can cause "substantial changes" in relevant migration patterns. *Id.* at 6.

13

*Finally*, Defendants argue that Texas has failed to produce evidence that "increased migration allegedly due to the IFR would cause '[a]n increase in aliens' (1) applications for driver's licenses, (2) incarceration, (3) usage of public education, and (4) usage of social services,'" ECF No. 123 at 18 (citing 105 at 33). Defendants omit three key considerations: Texas has an interest in avoiding: (1) "substantial changes in migration behavior" (ECF No. 102-3 at 6) . . . (2) "the increase of unlawful immigration into Texas," (ECF No. 105 at 22), and (3) the "$2.926 billion" budget (ECF No. 105 at 21), incurred by the State of Texas to provide border security.

However, assuming *arguendo* that this showing was insufficient, Texas, and this Court, considered the "predictable effect of Government action on the decisions of third parties." *Dep't of Com. v. New York,* 139 S. Ct. 2251, 2566 (2019); ECF No. 121 at 6. "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Tucker v. Gaddis*, 40 F.4th 289, 292 (5th Cir. 2022) (citations and internal quotations omitted); *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 286 (5th Cir. 2012) (*Knox v. Serv. Emps. Int'l Union, Local 1000,* L.Ed.2d 281 (2012)) ("A case becomes moot only when it is impossible for a court to grant 'any effectual relief whatever' to the prevailing 'party.'").

Because an indirect injury could be the basis for standing, and because "large-scale" policies are "amenable to challenge using large-scale statistics and figures, rather than highly specific individualized documents," this case is not moot. *Biden v. Texas*, 597 U.S. 785, 797 (2022); *see also Florida v. Mayorkas*, --F.Supp.3d ----, 2023 WL 3398099, at *5 (N.D. Fla. May 11, 2023).

Nevertheless, assuming that this Court decides to accept Defendants' mootness arguments, Texas would nevertheless fit an exception to mootness—the capable-of-repetition-yet-evading-review doctrine—since the utilization of this program by Defendants would continue, and the future increased flow of immigration will certainly recur. *See Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215, 246 (5th Cir. 2006) (citing *Benavides v. Housing Authority of City of San Antonio, Tex.,* 238 F.3d 667, 670 (5th Cir.2001)) (noting that the doctrine applies when: "(1) the challenged action is too short to be fully litigated before it ceases and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.").

Ultimately, the immigration crisis continues[10] and Texas's financial burden increases. This case presents a clear controversy, in which Texas has a major stake in avoiding.

## IV. THIS COURT HAS ALREADY REJECTED DEFENDANTS' MOTION TO TRANSFER VENUE UNDER SECTION 1252(E) AND SHOULD NOT REOPEN THAT INQUIRY HERE.

Defendants' contentions regarding the applicability of 8 U.S.C. § 1252 fail for three reasons: (1) Texas has not waived any argument pertaining to 8 U.S.C. § 1252, (2) Defendants have re-raised the same arguments regarding venue that were presented in prior motions, and (3) the Court has already rejected Defendants' duplicative arguments.

### A. TEXAS HAS NOT WAIVED ANY ARGUMENT PERTAINING TO 8 U.S.C. § 1252.

Defendants argue that Texas failed to respond to their argument that 8 U.S.C. § 1252(e) strips this Court of jurisdiction. ECF No. 123 at 19. Texas observed that the Court has already addressed this matter in Texas's Response to Defendants' Motion to Dismiss (ECF No. 105 at 9, n. 1). Notably, Defendants even explicitly concede that this issue has already been addressed by this Court when they note that "this Court previously rejected the applicability of section 1252(e) when Defendants moved to transfer venue ECF Nos. 7, 68." ECF No. 123 at 19. Defendants have already raised this same argument in their Motion to Transfer (ECF No. 7 at 13-23) and Motion for Reconsideration (ECF No. 73 at 4-5). And the Court ruled against Defendants on both occasions. ECF No. 68, 78.

Furthermore, waiver has been reserved for extreme circumstances. *See e.g.*, *Arkansas v. Wilmington Tr. Nat'l Ass'n*, No. 3:18-CV-1481-L, 2020 WL 1249570, at *5 (N.D. Tex. Mar. 16, 2020) (Lindsay, J.) (finding waiver when the opposing party, with counsel, simply stated that the

---

[10] New Data Reveal Worsening Magnitude of the Biden Border Crisis and Lack of Interior Immigration Enforcement is subject to judicial notice because this information is publicly available online and can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b); United States House of Representatives, (Jan. 18, 2024), available at, https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/evo-media-document/2024-01-18-new-data-reveal-worsening-magnitude-of-the-biden-border-crisis-and-lack-of-interior-immigration-enforcement.pdf) (noting that the "U.S. Customs and Border Protection . . . encountered a record-breaking 269,735 illegal aliens along the southwest border in September 2023"; and in the "Fiscal Year 2023 Annual Report, ICE reported that it removed 23 percent fewer illegal aliens than in fiscal year 2020 and roughly 47 percent fewer than in fiscal year 2019.").

arguments were without merit); *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (concluding that the plaintiff's failure to defend a claim in response to a motion to dismiss constituted abandonment" of the specific claim) (citation omitted). Waiver is an extreme remedy and is to be applied where a party clearly fails to respond, not when Texas has repeatedly responded, and the Court has already made a final determination of the matter.  This is not *Matter of Dallas Roadster*, *Ltd.,* 846 F.3d 112, 126 (5th Cir. 2017), where an entire claim was abandoned in multiple motion responses. Nor is it *Bradley v. Target Corp.*, No. 3:23-CV-00193, 2023 WL 6166475, at *2-3 (N.D. Tex. Sept. 21, 2023), where "one-sentence general 'objection' to [the] motion to dismiss" was considered a waiver. Instead, it is simply a request for reconsideration of the Court's previous decision denying a transfer of venue.

### B. DEFENDANTS' ARGUMENT IS ESSENTIALLY THE SAME ONE THIS COURT REJECTED IN THE MOTION TO TRANSFER VENUE.

"Litigants are expected to advance their strongest arguments the first time a court considers the case." *Neaville v. Wells Fargo Bank, N.A.*, No. 3:11-CV-97-P, 2013 WL 12124590, at *2 (N.D. Tex. June 4, 2013). Motions that rehash old arguments are improper and "waste a court's resources." *Id.* Here, this Court has not committed a manifest error of law or fact, nor have Defendants presented newly discovered evidence or a change in controlling law. *Daniels v. Bowles*, No. CIV.A. 3:03-CV-1555, 2004 WL 1810658, at *2 (N.D. Tex. Aug. 9, 2004) (denying a party's motion for reconsideration where the party "sets forth no newly discovered evidence, alleges no intervening change in the law, and does not claim clear error or manifest injustice" only "attempt[ing] to distinguish the cases cited by this Court in a second attempt to argue the same points he has alleged in previous pleadings.").

Defendants attempt to rehash old arguments repeatedly raised in this matter. Defendants moved to transfer venue to the District of Columbia on April 29, 2022, on the basis of lack of subject-matter jurisdiction, utilizing the same arguments. (ECF No. 7). The Motion was summarily denied on July 8, 2022 (ECF No. 68). Then, on August 5, 2022, Defendants moved for

reconsideration of the Court's denial of the Motion (ECF No. 78). Then, on September 14, 2022, this Court denied the Motion to Reconsider Ruling on Defendants' Motion to Transfer Venue (ECF No. 73). Defendants should not be provided an additional attempt at the same argument.

**C. THIS COURT HAS JURISDICTION TO HEAR THE CASE.**

This Court has jurisdiction to hear this case. The Defendants incorrectly claim (ECF 123 at 13-14) that "Section 1252(e) independently precludes jurisdiction" because "regulations implementing § 1225(b)(1)" should be heard in the DDC and that two 2022 Supreme Court cases—*Biden v. Texas* ("*MPP II*"), 597 U.S. 785, 797 (2022), and *Patel v. Garland*, 142 S. Ct. 1614, 1626 (2022))—require this Court to revisit its prior determination that Section 1252(e)(3) "applies only to individual determinations" about asylum and not programmatic challenges to the asylum system. (ECF 68 at 7.)[11]

*MPP II* revolved around a subsection 1252(f) not at issue here. The Defendants argue that *MPP II* applies because "1252(f) falls under the same section title as Sections 1252(a)(2)(A) and (e)(3)." (ECF 102 at 36.) This is irrelevant. *MPP II* considered only the title to subsection 1252(f), "Limit on injunctive relief." However, this Court's decision focused on different titles: § 1252, "Judicial review of orders of removal"; § 1252(e), "Judicial review of orders under section

---

[11] Even Defendants' own cases, cited in their Motion to Transfer Venue, interpret 8 U.S.C. § 1252 the same way that the State Plaintiff and the Courts did—the statute applies to individuals' challenges. *See, e.g.*, *S.L.V. v. Rosen*, No. 5:21-cv-0017, 2021 WL 243442, at *1 (W.D. Tex. Jan. 25, 2021) ("each plaintiff has a final order of removal…."); *Reyes v. Nielsen*, No. 4:18-cv-3971, 2020 WL 1442349, at *1 (S.D. Tex. Feb. 6, 2020) ("seeking review of her expedited removal from the United States…."); *Shah v. Director*, No. 3:19-cv-1164, 2019 WL 4254139, at *1 (W.D. La. Sep. 6, 2019) (an individual that had been placed in "expedited removal proceedings" seeking a TRO, stating that there was no support for the finding that he did not have a credible fear of persecution); *Rodrigues v. DHS*, No. 3:20-cv-0139, 2020 WL 777278, at *1 (N.D. Tex. Feb. 18, 2020) (seeking a TRO that would "enjoin the United States Department of Homeland Security . . . from removing him to Angola, his native country[.]").

1225(b)(1)"; and § 1252(e)(3), "Challenges on validity of the system." ECF 68 at 5-7. These titles were never at issue in *MPP II* and never considered by the Supreme Court.

Similarly, *Patel*, 596 U.S. at 344-346, was about the meaning of Section 1252(a)(2)(B)(i), which is not at issue here. Furthermore, *Patel* involved an *individual* challenge about "factual determinations" in a removal proceeding, *Patel*, 596 U.S. at 344, and did not involve a programmatic challenge. Furthermore, it involved the operation of an entirely different INA section not relevant here—8 U.S.C. § 1255.

Even if the Defendants were correct that the penumbras and emanations of *MPP II* and *Patel* could be read as somehow limiting jurisdiction over programmatic challenges to determinations under Section 1225, this Court would still have jurisdiction because the IFR does not implement Section 1225, which states that asylum officers initially screen defensive asylum applicants, after which those with a "credible fear of persecution" are referred for "further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). The IFR claims this phrase—which does not define who conducts the "further consideration" or how—confers vast power to alter the nation's asylum system through regulation. This is flawed for four reasons.

*First*, the phrase is not ambiguous. Congress added it to the INA when it adopted the 1996 Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. 104–208, 110 Stat. 3009–546 (1996). Statutory language is read "in context," not in isolation, "with a view to [its] place in the overall statutory scheme." *Sturgeon v. Frost*, 577 U.S. 424, 438 (2016). Here, that context is IIRIRA, which spells out how an asylum application is "further consider[ed]": "Unless otherwise specified in this chapter," a removal proceeding conducted by an immigration judge is "the *sole and exclusive* procedure for determining whether an alien may be admitted to the United

States[.]" 8 U.S.C. § 1229a(a)(3) (emphasis added). "[T]his chapter" refers to Chapter 12 of Title 8 of the U.S. Code—that is, the Immigration and Nationality Act, as amended. Nothing in the INA specifies any other procedure (*i.e.*, nothing specifies otherwise). Certainly, the Defendants can point to nothing that does so. Therefore, the only method Congress has authorized for making asylum determinations for defensive asylum applications is through a removal proceeding conducted under Section 1229a, not Section 1225. Only an immigration judge may conduct a proceeding under Section 1229a. *See* 8 U.S.C. § 1229a(a)(1) ("[a]n immigration judge shall conduct proceedings" under § 1229a)).

*Second*, the IFR's reading renders much statutory language about asylum applications surplusage. *See Corley v. United States*, 556 U.S. 303, 314–15 (2009) (statute must be construed to give effect to all its provisions). To that end, the IFR would erase from language indicating a judicial or quasi-judicial proceeding:

- The applicant has the "burden of proof." 8 U.S.C. § 1158(b)(1)(B)(i).
- The "testimony" must satisfy "the trier of fact." *Id*. § 1158(b)(1)(B)(ii)
- "[T]rier of fact" weighs "credible testimony" and "other evidence of record." *Id.*
- If corroborating "evidence" is necessary, it "must be provided." *Id.*
- "[T]rier of fact may base a credibility determination" on facts from a "witness," such as "demeanor, candor, or responsiveness," "plausibility," "internal consistency," and "accuracy." *Id*. § 1158(b)(1)(B)(iii).

The IFR's non-adversarial interviews do not have "triers of fact," "testimony," or "evidence of record." "[M]ost people" reading those terms "would have understood" them to indicate a formal proceeding at least resembling a trial. *See New Prime, Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019).

*Third*, the Homeland Security Act (HSA) presupposed the same reading Texas puts forward here. If "further consideration of the application for asylum" was meant to confer

authority on the federal government to make up its own new form of asylum removal proceedings outside of EOIR, then Congress would not have included in the HSA specific language commanding that EOIR continue to exercise the same functions that it had been exercising before the HSA. (*See* ECF 105 at 4-5.)

Before Congress passed the HSA, Pub. L. No. 107-296 (2002), Asylum Officers' main role in the defensive asylum process was only to conduct the credible fear review of aliens' claims. 8 U.S.C. § 1225(b)(1)(B). Any aliens found to have a "credible fear" were placed into full removal proceedings before immigration judges in the EOIR.

When Congress created DHS by adopting the HSA, it stated explicitly that DOJ would continue to "have such authorities and functions under this chapter and all other laws relating to the immigration and naturalization of aliens as were exercised by the [EOIR] … on the day before the effective date." 8 U.S.C. § 1103(g)(1); *see Kaufman v. Mukasey*, 524 F.3d 1334, 1338 (D.C. Cir. 2008) (The HSA "expressly provides that the Attorney General has authority over certain immigration functions specifically relating to immigration courts"). In other words, authority that EOIR exercised when the HSA entered into force (on March 1, 2003) remains with EOIR.

In 451(b) of the HSA, Congress enumerated specific functions transferred from the Immigration and Naturalization Service ("INS") to USCIS within DHS, only allowing USCIS to perform those "adjudications performed by the INS immediately before those authorities were transferred from DOJ to DHS." Thus, the HSA conferred on Asylum Officers within USCIS only the authority to adjudicate those types of asylum claims they adjudicated on the HSA's effective date, March 1, 2003 and preserved EOIR's authority over all other adjudications. This provision reinforces the separation of authority in § 1103(g)(1)—DHS does not have authority over

adjudications EOIR performed on the HSA's effective date, when EOIR performed final asylum adjudications. Accordingly, Congress vested this power in EOIR alone, and it cannot be transferred except by another statute. *See Christensen v. Harris Cnty.*, 529 U.S. 576, 583 (2000) ("When a statute limits a thing to be done in a particular mode, it includes a negative of any other mode.") (cleaned up)).

The Defendants cannot ignore the INA's plain text and create a system for making final asylum determinations that facially conflicts with at least four statutory provisions. The Defendants' analysis of the term "further consideration" would sunder it from the statutory framework and authorize them to override the remainder of the INA—including Section 1229a, which mandates that immigration judges must make admissibility determinations, and the HSA, which mandates that EOIR must have final authority over whether to admit an alien who has received a positive credible-fear determination. When read together, the statutory regime is coherent and unambiguous: DHS Asylum Officers may make initial positive credible fear determinations, but an immigration judge of EOIR must conduct the "further consideration"—as they did when the HSA was enacted.

The IFR purports to strip authority from the officers in whom it is vested by statute because the Defendants believe they have hit upon a better solution. The Defendants' opinion of their regulation does not override Congress's command. Section 1225 does not confer on the Defendants the authority to adopt the IFR. The IFR, therefore, does not implement Section 1225. Thus, even if Section 1252(e)(3)'s jurisdictional limitations on "orders under section 1225(b)(1)" could be read as applying here, it would be of no consequence, since orders issued under the IFR are not "orders under Section 1225(b)(1)."

**CONCLUSION**

Texas respectfully requests that the Defendants' motion to reconsider be denied.

Dated: April 2, 2024

Respectfully submitted.

Gene P. Hamilton
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

James K Rogers
America First Legal Foundation
611 Pennsylvania Ave, SE #231
Washington, DC 20003
480-570-4988
james.rogers@aflegal.org
*PRO HAC VICE*

Ken Paxton
Attorney General

Brent Webster
First Assistant Attorney General

Grant Dorfman
Deputy First Assistant Attorney General

Ralph Molina
Deputy Attorney General for Legal Strategy

Ryan Walters
Chief, Special Litigation Division
Texas Bar No. 254105085

*/s/ Susanna Dokupil*
Susanna Dokupil
Attorney-in Charge
Special Counsel
Texas Bar No. 24034419

Jacob E. Przada
Special Counsel
Texas Bar No. 24125371

Ethan Quinn Szumanski
Special Counsel
Texas Bar No. 24123966

Office of the Attorney General
Special Litigation Division
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1700
Ryan.walters@oag.texas.gov
Susanna.dokupil@oag.texas.gov
Jacob.przada@oag.texas.gov
Ethan.szumanski@oag.texas.gov

*Counsel for the State of Texas*

**CERTIFICATE OF SERVICE**

On April 2, 2024, I filed this document through the Court's CM/ECF system, which automatically serves it upon all counsel of record as follows:

Brian C. Ward
Brian.c.ward@usdoj.gov

Erez Reuveni
Erez.r.reuveni@usdoj.gov

Elizabeth Tulis
Elizabeth.tulis@usdoj.gov

Erin Ryan
Erin.t.ryan@usdoj.gov

Joseph A. Darrow
Joseph.a.darrow@usdoj.gov

/s/ Susanna Dokupil
SUSANNA DOKUPIL