# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

|  |  |
|---|---|
| STATE OF TEXAS, | ) |
| *Plaintiff,* | ) ) ) |
| v. | ) Civil Action No. 2:22-cv-00094-Z ) |
| ALEJANDRO MAYORKAS, in his official capacity as Secretary of Homeland Security, *et al.*, | ) ) ) ) ) |
| *Defendants.* | ) ) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO RECONSIDER RULING
ON DEFENDANTS' MOTION TO DISMISS**

Defendants explained that the Court applied the incorrect legal standard in their motion. ECF No. 123. Texas's arguments to the contrary are not persuasive.

**I.   Texas Has the Burden of Proving Standing by a Preponderance of Evidence**

   A. <u>Defendants Raise a Factual Attack on Jurisdiction Not Dependent on Merits Arguments.</u>

Texas incorrectly argues it was not required to produce evidence to establish standing and could rest on the assumption its allegations are true because Defendants present a "factual merits defense." ECF No. 127 at 3-5. First, Texas's reliance on *General Land Office* is misplaced. ECF No. 157 at 3-5 (citing *General Land Office v. Biden*, 71 F.4th 264 (5th Cir. 2023) (*GLO*)). There, the Fifth Circuit had no occasion to address the evidentiary burden that applies in a factual attack because the government made a facial, not a factual, attack on Texas's standing. *GLO*, 71 F.4th at 272 (noting, unlike here, defendants only challenged standing based on the pleadings and thus allegations were taken as true); *see also Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) (stating burden in response to factual attack).

Second, Texas alleges it is harmed by the Interim Final Rule (IFR) it challenges because "Texas spends significant amounts of money providing services to illegal aliens" and the IFR allegedly will "release even more illegal aliens into our country." ECF No. 1 ¶¶ 1, 52; *accord* ECF No. 127 at 10 (arguing Texas demonstrated standing on basis that illegal immigration allegedly increased since "passage of the IFR" and that would cost Texas money). Hence, contrary to Texas's claim otherwise, ECF No. 127 at 3, evidence produced by Defendants directly rebutting these claims is relevant to Texas's standing argument because that evidence concerns whether the IFR has increased the number of noncitizens entering Texas—or was likely to as of the complaint's filing—and whether Texas is consequently spending money on noncitizens present due to the IFR. *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

Whether the IFR would apply to noncitizens destined for Texas is directly relevant to standing because it undermines Texas's speculation that the IFR would increase the number of noncitizens settling in Texas and increasing service costs. *See* ECF No. 123 at 8. Texas argues that the cities where the IFR has been applied are merely "applicable points of entry" and that "immigrants move around once they enter." ECF 127 at 4. But that argument misunderstands the IFR. The selected cities (all outside Texas) are where the noncitizens subject to the IFR will have their asylum merits interviews and where any related proceedings will be conducted; hence, they must be present in those cities to seek and obtain relief from removal. Texas has failed to "prov[e] concrete facts showing that" a procedure not being applied in Texas "has caused [a] substantial risk of harm," nor has it identified any non-speculative basis to conclude that noncitizens subject to the IFR will resettle in Texas. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 & n.5 (2013).

Even though Texas contends, contrary to the evidence, that the IFR actually increases immigration and asylum grants, it does not follow that evidence on these issues "should not be considered jurisdictional." ECF No. 127 at 5. That evidence bears directly on whether the IFR results in a net increase in state costs, which is Texas's theory of injury. Texas is not excused from producing evidence that such harm was "certainly impending," *Clapper*, 568 U.S. at 410, merely because it filed suit before the IFR went into effect. Texas had to "prov[e] concrete facts showing that the [IFR] has caused [a] substantial risk of harm," which it has failed to do. *Id.* at 414 n.5.

B. <u>Texas Failed to Rebut Defendants' Evidence Showing Lack of Standing Under the Correct Standard.</u>

Texas argues it proffered sufficient evidence to survive a factual attack and counter Defendants' evidence showing it failed to establish harm. ECF No. 127 at 5-9. But all Texas has done is offer a contrary characterization of Defendants' evidence, and its arguments lack merit.

Texas first takes out of context a statement from Defendants' expert that "changes to

2

asylum procedure or processing can be a necessary element of a larger bundle of policies that, together, are sufficient to cause substantial changes in migration behavior." ECF No. 127 at 6. However, Texas challenges the IFR, not "a larger bundle of [immigration] policies." Nor could Texas challenge the government's immigration policies wholesale. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 893 (1990); *Louisiana v. United States*, 948 F.3d 317, 321 (5th Cir. 2020). Defendants' expert, Professor Clemens, clearly stated there is no evidence of increased migration attributable to the IFR. ECF No. 123 at 9; ECF No. 102-3 at 6 (finding "no evidence" that the "IFR, by itself, was sufficient to substantially affect overall CBP encounters at the Southwest Border").

Texas next points to border encounter statistics and general reports on migration, but none show an increase in migration attributable to the IFR. Texas suggests an increase in immigration *prior* to the IFR taking effect on May 31, 2022, is attributable to the IFR. ECF No. 127 at 6-7. Not only does Texas have no evidence to support that argument, its logic also undermines its larger allegation: if the IFR made obtaining asylum easier, it would not incentivize noncitizens to enter the United States *before* they could benefit from an allegedly easier process. Texas argues that even if the IFR did not increase overall migration, there were increases in border encounters in certain sectors along the Texas border. ECF No. 127 at 7. But Texas has not shown that any increased encounters in Texas border sectors was attributable to the IFR. Further, evidence of apprehended migrants does not establish that they were released and settled in Texas and utilized emergency Medicaid, domestic violence victims' services, child health insurance, uncompensated health care, or law-enforcement services. ECF No. 1 ¶¶ 52-57. And Texas offers no evidence that noncitizens who received IFR merits interviews in other states would resettle in Texas.

Finally, Texas argues migration flows are based on many factors and it need not trace migration rates, asylum grants, or state expenditures to specific migrants processed under the IFR. ECF No. 127 at 7-9. However, the only precedent Texas cites, *Texas v. Biden*, 20 F.4th 928 (5th

3

Cir. 2021), undermines its standing here. While the Fifth Circuit held Texas did not have to establish standing using "highly specific individualized documents," it was because Texas presented sufficient "big picture evidence" that the challenged governmental action resulted in more noncitizens present and using services in the plaintiff states. *Id.* at 966, 971 (relying on findings "that MPP's termination has increased the number of aliens released on parole into the United States, including Texas and Missouri" leading to increased service costs). Here, Texas offers no such big picture evidence establishing that the IFR has or was substantially likely to result in an increased number of noncitizens in Texas.

II. **Texas Lacks Article III Standing to Challenge the IFR**

    A. Texas Failed to Demonstrate a Substantial Risk of Injury When it Filed Suit.

Evidence following the IFR's taking effect is relevant to Texas's burden of proving that harm from the IFR was certainly impending or at least presented a "substantial risk" of occurring when it filed the complaint, *Clapper*, 568 U.S. at 410 & n.5; *see* ECF No. 127 at 10 (acknowledging Texas's burden to "*present evidence* that it had a *substantial risk* of injury") (emphasis added), as it bears on how reasonably likely such harm would have appeared in advance. Regardless, evidence available prior to Texas filing suit also fails to demonstrate that injury was impending or substantially likely. ECF No. 123 at 7-10. Texas's three arguments that there was such a substantial likelihood, ECF No. 127 at 10-11, are not persuasive. First, Texas fails to rebut evidence that the IFR's asylum procedures, from inception, would not be applied to individuals with destinations in Texas. Second, Texas offers no evidence connecting the number of border encounters prior to the IFR to its announcement. Third, asylum grant rates pre-IFR have no logical bearing on asylum-grant rates under the IFR, which created the merits interview procedure. *See* ECF No. 123 at 12.

    B. Texas's Interpretation of the *Priorities* Case is Too Narrow.

Texas maintains that *United States v. Texas*, 599 U.S. 670 (2023) ("*Priorities*") does not

4

undermine its standing here because that case focused on a challenge to the Executive Branch's immigration arrest and prosecution decision-making. ECF No. 127 at 11. This overly narrow interpretation ignores broader, general principles stated in *Priorities*, including that an alleged Article III injury is only legally cognizable if there is a tradition and history of courts deeming it the type of injury redressable in federal court, and that a state's "claim for standing can become more attenuated" when it relies on "indirect effects on state revenues or state spending" to show Article III injury. 599 U.S. at 676-77, 680 n.3. Here, Texas has shown no history of states suing the federal government over asylum-processing procedures, and Texas relies only on alleged indirect financial costs for injury. Texas argues that *Dep't of Commerce v. New York*, 139 S. Ct. 2551 (2019), supports its bid for standing based on indirect financial injuries. However, the loss of federal funding at issue in *Department of Commerce* was directly caused by inclusion of a citizenship question on the Census because statistical evidence indicated it would lower response rates used to calculate federal funding. *See* 139 S. Ct. at 2565-66. There is no such direct correlation here; indeed, Texas merely conjectures, without support, that some noncitizens who obtain asylum in other states under the IFR could resettle in Texas and increase public service costs. Relying on many assumptions about the "unfettered choices [of] independent actors" in this way, *Clapper*, 568 U.S. at 414 n.5, is no different than the attenuated theory of injury *Priorities* called into question. 599 U.S. at 680 n.3.

### III. This Case is Moot

#### A. Jurisdictional Arguments May be Raised at Any Time.

Texas claims the Court should ignore mootness arguments "raised by Defendants for the first time in their Reply." ECF No. 127 at 12. Texas misunderstand that Defendants made the argument in their reply because Texas raised it in their opposition. ECF No. 105 at 15; ECF No. 114 at 9 n.2. More importantly, the question of mootness is a jurisdictional argument that may be

5

raised at any time during a case. "Jurisdictional bars … 'may be raised at any time' and courts have a duty to consider them *sua sponte*." *Wilkins v. United States*, 598 U.S. 152, 157 (2023). Even if Defendants had raised it for the first time in their motion for reconsideration, it would still be proper for the Court to consider. The cases Texas cites in response dealt with motions to compel and non-jurisdictional arguments, and have no bearing here. ECF No. 127 at 12 (citing *Brown v. Bridges*, No. 3:12-CV-4947-P, 2014 WL 2777373, at *2 (N.D. Tex. June 19, 2014); *Mid–Continent Cas. Co. v. Eland Energy, Inc.,* No. 3:06–cv–1576–D, 2008 WL 80760, at *3 n. 4 (N.D. Tex. 2008)).

      B.  <u>There is No Live Controversy Because Texas Has Not Been Harmed by the IFR.</u>

Texas tries to claim this case cannot be moot because there is a "live controversy," ECF No. 127 at 12-14, but those arguments fail for several reasons. ECF No. 127 at 12-14. First, although Texas does not dispute that grant rates have not increased under the IFR, ECF No. 102 at 13-16, it argues that "grant rates are only part of the issue" and that "any administrative rule that would make it easier for an illegal immigrant to enter the United States" will cause increased harm to Texas. ECF No. 127 at 13. The IFR, however, "does not change the substantive standard for asylum eligibility," 87 Fed. Reg. at 18192, so the IFR cannot be considered a rule that "make[s] it easier" for migrants to enter the country. Texas has not put forward any evidence that it has been harmed by the IFR. *See generally* ECF Nos. 102, 114, 123. In fact, the IFR has resulted in the same or lower asylum grant rates and makes it possible to remove noncitizens more quickly once it is determined that they have non-meritorious asylum claims. ECF No. 102 at 10-17. Removing unsuccessful asylum seekers faster should *reduce* any possible alleged indirect costs to Texas.

Second, Texas again takes Defendants' expert Professor Clemens out of context, arguing that immigration policy changes can affect migration. As noted, Professor Clemens clearly stated the IFR was not such a policy. *See supra* p. 3. Professor Clemens found, in the concrete circumstances present here, there is "no evidence" that the IFR "was sufficient to substantially

6

affect overall" border encounters. ECF 102-3 at 3; ECF No. 114 at 5.

Third, in response to Defendants' argument that the IFR has not increased the rates at which noncitizens are found to have credible fear or granted asylum, Texas instead discusses general "changes to asylum procedures or processing, *paired with other immigration levers*" and how they can cause change to migration patterns. ECF No. 127 at 13-14. This case is not about "other immigration levers"—it is only about the IFR and Texas has not, and cannot, show that it has been harmed by the IFR in any way.

Finally, although Texas argues it has an interest in avoiding substantial changes to migration behavior, increased unlawful immigration to Texas, and costs to provide border security, ECF No. 127 at 14, it has not shown the IFR affects any of these items. And Texas's argument that "indirect injuries" can support standing and "large-scale policies are amenable to challenge using large-scale statistics and figures, rather than highly specific individualized documents," *id.*, has no bearing where they have failed to identify any indirect injuries and have not shown any "large-scale" statistics or figures related to Texas, *see* ECF No. 127 at 14.

Nor does Texas qualify for the "capable-of-repetition-yet-evading-review" exception to mootness. *Id.* Texas argues this exception applies because "the utilization of [the IFR] by Defendants would continue, and the future increased flow of immigration will certainly recur." *Id.* The use of the word "recur" necessitates something occurring *again*. Here, there can be no reoccurrence where there was no increased flow of immigration to Texas in the first instance. ECF No. 102 at 9-20.

## IV. Section 1252(e) Independently Precludes Jurisdiction

### A. Texas Forfeited Any Argument in Opposition.

Defendants argued in their motion to dismiss that section 1252(e) bars this Court's jurisdiction over this case. ECF No. 102 at 35-38. Texas, however, failed to respond to this

7

argument, and the Court did not address it in its order. *See* ECF Nos. 105, 121. In its opposition to Defendants' motion to dismiss, Texas only acknowledged that Defendants made the argument and said: "*Texas has not responded to this argument* as this Court has already ruled on it." ECF No. 105 at 9 n. 1 (emphasis added). But the Court had not previously ruled on this iteration of the section 1252(e) argument. Defendants had previously argued that section 1252(e)'s jurisdictional provisions required this case to be transferred, ECF No. 7, and that is the argument that the Court had previously addressed. But section 1252(e) is also a jurisdictional bar properly raised in a motion to dismiss even if previously argued in a venue motion. *See* Fed. R. Civ. P. 12(b)(1).

Because Texas failed to respond to a properly raised jurisdictional argument, it forfeited any counterargument that it has to Defendants' section 1252(e) argument. *Int'l Longshore & Warehouse Union v. Nat'l Lab. Rels. Bd.*, 971 F.3d 356, 363 (D.C. Cir. 2020) ("'Although a party cannot forfeit a claim that we lack jurisdiction, it can forfeit a claim that we possess jurisdiction.'") (quoting *Scenic Am., Inc. v. DOT*, 836 F.3d 42, 53 n.4 (D.C. Cir. 2016)). None of the cases cited by Texas in their opposition show otherwise. ECF No. 127 at 15-16. Rather, those cases hold that "[f]ailure of a party to respond to arguments raised in a motion to dismiss constitutes waiver or abandonment of that issue at the district court level." *Arkansas v. Wilmington Tr. Nat'l Ass'n*, No. 3:18-CV-1481-L, 2020 WL 1249570, at *5 (N.D. Tex. Mar. 16, 2020) (citing *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)). Texas admits that waiver occurs where "the opposing party, with counsel, simply stated that the arguments were without merit," ECF No. 127 at 15-16 (citing *id.*), and Texas did not state even that much here.

B. <u>Texas' Arguments on Section 1252(e) Have No Merit.</u>

Finally, Texas argues that section 1252(e) does not apply because the IFR does not implement section 1225. ECF No. 127 at 17-21. As Defendants have repeatedly explained, however, the IFR does implement section 1225. *See* ECF Nos. 102, 123. By its own terms, the IFR

8

implements section 1225(b)(1)(B)(ii), which "provides that if an asylum officer determines that a noncitizen subject to expedited removal has a credible fear of persecution, the noncitizen shall receive 'further consideration of the application for asylum.'" 87 Fed. Reg. at 18080 (quoting 8 U.S.C. 1225(b)(1)(B)(ii)).

This Court has already concluded the IFR implements § 1225(b)(1). *See* ECF No. 68 at 2 ("The IFR relates to Section 235 of the [INA]."); *see also* 87 Fed. Reg. at 18,080 (explaining that "[t]his IFR addresses how" "further consideration of the application for asylum" under "8 U.S.C. 1225(b)(1)(B)(ii)" "will occur"). This Court concluded, however, that sections 1252(a)(2)(A) and (e)(3) do not apply in this case because "Section 1252 is titled 'Judicial review of orders of removal,'" and that this title "indicates the section applies to individual aliens (who are subject to orders of removal) rather than programmatic decisions," ECF No. 78 at 5, a point Texas repeats in its response, ECF No. 127 at 17-18. However, Supreme Court decisions foreclose this reading. ECF No. 102 at 36-38. While *MPP II* addressed section 1252(f), as opposed to 1252(e), if section 1252's title was dispositive, it would have necessarily barred section 1252(f) from applying in *MPP II*, which it did not. *Biden v. Texas*, 597 U.S. 785, 797-98 (2022) ("*MPP II*"); ECF No. 102 at 36-38 (also explaining relevance of *Patel v. Garland*, 142 S. Ct. 1614, 1626 (2022)).

Texas responds that the Court still retains jurisdiction because "the IFR does not implement Section 1225." ECF No. 127 at 18. That argument is incorrect. First, Texas claims "the only method Congress has authorized for making asylum determinations for defensive asylum applications is through a removal proceeding conducted under Section 1229a, not Section 1225." ECF No. 127 at 19. This argument ignores the separate mechanism of expedited removal under section 1225, the text of which says nothing about requiring an immigration judge proceeding. 8 U.S.C. § 1225.

Second, Texas argues the IFR would erase "language indicating a judicial or quasi-judicial proceeding" from section 1158. ECF No. 127 at 19. Texas again cherry-picks statutory language

9

out of context. Section 1158(a) says a noncitizen "may apply for asylum in accordance with this section *or, where applicable, section 1225(b) of this title*." 8 U.S.C. § 1158(a) (emphasis added). The statute's reference to section 1225(b) recognizes that section 1158 has provisions that apply in certain contexts but that noncitizens may also separately seek asylum through the procedures under section 1225, foreclosing Texas's theory that the IFR would make section 1158 surplusage.

Finally, Texas contends the IFR runs afoul of the Homeland Security Act ("HSA"). ECF No. 127 at 19-21. Texas argues that immigration judges exercised authority to consider asylum applications following a credible fear determination prior to the HSA, and thus the Departments may not now reallocate that responsibility to asylum officers within DHS under section 1225. *Id.* However, immigration judge consideration of asylum applications filed by noncitizens found to have a credible fear was not an "authorit[y]" or "function[]" mandated by the INA, but an administrative procedure put into place by regulation in the course of interpreting a general statutory provision that did not specify a governmental actor. *See* 62 Fed. Reg. 10312, 10320 (Mar. 6, 1997). Texas's interpretation of the scope of the HSA is contrary to the flexible provision Congress enacted in 1996, as well as basic principles of administrative law that contemplate agencies' authority to change policy based on shifting facts and priorities. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983) (explaining need for agencies to have authority to adapt policies to changing circumstances); *see also Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). There is no statutory requirement that only immigration judges may consider asylum claims, and the IFR does not impermissibly expand the scope of USCIS's authority in violation of the HSA. The IFR implements the asylum provisions of section 1225, and section 1252(e) bars this Court from hearing challenges to the IFR.

## CONCLUSION

The Court should reconsider its prior ruling and dismiss this case.

Dated: April 16, 2024          Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Counsel*

BRIAN C. WARD
*Senior Litigation Counsel*

/s/ *Joseph A. Darrow*
JOSEPH A. DARROW
ELISSA P. FUDIM
ERIN T. RYAN
*Trial Attorneys*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 598-7537
Email: joseph.a.darrow@usdoj,gov

CHRISTOPHER HALL
*Assistant Branch Director*

ELIZABETH TULIS
*Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch

*Counsel for Defendants*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on April 16, 2024, I electronically filed this motion with the Clerk of the Court for the United States District Court for the Northern District of Texas by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ *Joseph A. Darrow*
JOSEPH A. DARROW
U.S. Department of Justice