UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

STATE OF TEXAS,

    *Plaintiff,*

v.

ALEJANDRO MAYORKAS, *et al.;*

    *Defendants.*

Case 2:22-cv-00094-Z

**STATE OF TEXAS' RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY**

In *Arizona v. Garland*, No. 6:22-cv-1130, 2024 WL 1645417 (W.D. La. Apr. 16, 2024), the Western District of Louisiana made a merits determination that the Asylum IFR is contrary to law. Contrary to the Defendants' argument in their Notice of Supplemental Authority ("Notice"), ECF No. 129, *Arizona* has no bearing on this Court's standing determination here. Furthermore, because of issue preclusion, *Arizona* establishes that Texas should prevail on the merits here. Therefore, the only remaining issue for adjudication in *this* case is determining remedies.

    **I.**    ***Arizona*'s Standing Determination Is Inapplicable Here**

On standing, this Court has already found that "Plaintiff has demonstrated standing." ECF No. 121 at 2-8. In their Notice, the Defendants argue that the evidentiary record in *Arizona* and the court's factual findings in that case should control here. *E.g.* Notice at 1 (claiming, without evidence, that the *Arizona* "plaintiffs submitted far more evidence than Texas provided in this case"); *Id.* at 3 ("request[ing] that the Court reconsider its prior decision and, for the same reasons

as Judge Joseph, find Texas has not demonstrated Article III standing, and dismiss this case"). *Arizona*'s standing decision, however, has no bearing here.

        a. ***Arizona*'s factual findings are not controlling and were based on a different evidentiary record.**

Texas was not a party to *Arizona*, so that case is not controlling here. This Court has made its own factual findings on standing, and "a trial court's factual findings" are reviewed on appeal "for clear error." *Cooper v. Harris*, 581 U.S. 285, 298 (2017). There is "no exception for findings that diverge from those made in another court." *Id.* "[T]he very premise of clear error review is that there are often two permissible—because two plausible—views of the evidence." *Id.* at 299. This Court has no reason to revisit its well-supported findings on standing.

The *Arizona* decision is irrelevant here because it was based on a different factual record that is not before this Court. "Standing is a jurisdictional requirement that *focuses on the party seeking to get his complaint before a federal court*...." *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 869 (5th Cir. 2000) (emphasis added) (quoting *Cook v. Reno*, 74 F.3d 97, 98–99 (5th Cir.1996). '[S]tanding involves whether *this* plaintiff is a proper party to request an adjudication of the particular issue." *Hill v. City of Houston, Tex.*, 764 F.2d 1156, 1159 (5th Cir. 1985) (emphasis added).

The federal defendants, however, would have this court focus its standing analysis entirely on *other* parties that are not a part of this case. Texas is not a party to *Arizona* and presented no evidence in that case. It is entitled to present its own case here and have its case adjudicated on its own merits, not on the merits of another case over which Texas has no control and provided no input.

Standing is determined on a case-by-case basis according to the individual factual records, and the record here is not identical to the record in *Arizona*. Ultimately, standing remains "qualitative, not quantitative, in nature." *Ass'n of Cmty. Organizations for Reform Now v. Fowler*, 178 F.3d 350, 357–58 (5th Cir. 1999); *State of Utah v. Babbitt*, 137 F.3d 1193, 1203 (10th Cir. 1998) (noting that "[s]tanding jurisprudence is a highly case-specific endeavor, turning on the precise allegations of the parties seeking relief.") (internal quotation marks omitted); *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 81 (2d Cir. 2013), *as amended* (Mar. 21, 2013) (noting the same); *La Union del Pueblo Entero v. Abbott*, 604 F. Supp. 3d 512, 521 (W.D. Tex. 2022) ("Over time, the Supreme Court has evaluated Article III standing on a case-by-case basis, with due care for the facts and legal doctrines implicated in each case.").

Regardless of the facts present in *Arizona*, Texas alleged facts and presented supporting evidence that the Asylum IFR challenged here increased immigration to Texas. This Court was entitled to find that Texas had standing. The Motion to Dismiss in *Arizona* argued that the plaintiff States in that case "point only to materials addressing migration impacts allegedly stemming from other policies and border issues, not the IFR." *Arizona v. Garland*, No. 6:22-cv-01130, Defendant's Motion to Dismiss, ECF 214-1 at 20. Here, this Court observed that "Defendants' own expert report recognized that 'changes to asylum procedure or processing can be a necessary element of a larger bundle of policies that, together, *are sufficient to cause substantial changes in migration behavior.*'" ECF 121 at 3 (quoting ECF 102-3 at 6 (emphasis added)). This Court found it "eminently reasonable" to believe that Defendants' policy changes "would do exactly that" and increase unlawful migration. *Id.* If Texas did a better job of refuting Defendants' evidence than the States in *Arizona*, then it is also eminently reasonable for the Court to reach a different conclusion.

This case and *Arizona* were each decided on unique and different factual records. Thus, it does not matter that *Arizona* found that the plaintiff States in that case did not have standing because this Court's standing decision is based on a different record with different facts.

    b. ***Arizona* applied the wrong standing standard.**

*Arizona* does not apply the standard to standing that should be applied here, and as such, that case has little relevance to this one for four reasons.

*First,* regardless of whether the attack is facial or factual, the standard for standing is whether the plaintiff had a "substantial risk" of injury at the time of the complaint. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)). Texas was not required to show that it was "literally certain" that it would be injured in the future. *Clapper*, 568 U.S. at 414 n.5. It needed only to show a "substantial risk" that injury would occur. *Susan B. Anthony List*, 573 U.S. at 158. Moreover, that injury needed to be only an "identifiable trifle" to create standing, so if any additional unlawful migration causes a State government to allocate more resources to caring for that population, it is an injury. *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973). Texas has met that burden here.

*Second*, the factual attack standard applied in *Arizona* does not control here. *Arizona* found that the plaintiffs had not provided sufficient evidence to counter the evidence proffered on a factual attack to jurisdiction. ECF 129-1 at 25-36. It cited the key case on point, *Williamson v. Tucker*, for the proposition that the court could weigh evidence and decide jurisdictional facts. *Id.* at *4 (citing 645 F.2d 404, 413 (5th Cir. 1981)). But *Arizona* missed the critical point of *Williamson*, which is that a 12(b)(1) motion cannot be an indirect attack on the merits:

4

> The Supreme Court has made it clear that in that situation no purpose is served by indirectly arguing the merits in the context of federal jurisdiction. Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits. This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) (for failure to state a claim upon which relief can be granted) or Rule 56 (summary judgment)-both of which place greater restrictions on the district court's discretion.

*Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981). In the present case, for the reasons explained in the Motion to Reconsider, ECF 127, such an inextricably intertwined case of jurisdiction and merits is presented. Therefore, it was correct for this Court to reject, as did *Gen. Land Off. v. Biden* 71 F.4th 264 (5th Cir. 2023), Defendants' attempt to raise a "factual merits defense" in a motion to dismiss. In *GLO*, the Fifth Circuit found that when Defendants claimed that Texas had failed to demonstrate that the change in immigration policy at issue in that case would not lead to a net increase in immigrants to Texas, the Court found that this argument raised a "factual merits defense." *Id.* at 273.

"[T]here are limits to a district court's ability to resolve fact disputes on a Rule 12(b)(1) motion." *Pickett v. Texas Tech Univ. Health Sci. Ctr.*, 37 F.4th 1013, 1019 (5th Cir. 2022). If it is impossible to extricate jurisdiction from merits, the court should decline to resolve disputed factual issues. *Id*. A contrary holding would deprive plaintiffs of the protections provided by both Rule 12(b)(6) and Rule 56. *Williamson*, 645 F.2d at 412–13.

Defendants argue that Louisiana and Florida presented much more evidence in *Arizona* than Texas has presented here. Notice at 1. Regardless of how much evidence was presented, the evidence cannot be weighed at all if the factual attack is inextricably intertwined with the merits. Because *Arizona* entirely omitted the analysis of whether the disputed jurisdictional facts were intertwined with the merits, its persuasive power in the present case is limited. And, the Fifth Circuit's decision in *GLO* states that whether a change in immigration policy results in a net increase in immigrants

attributable to that particular rule is a merits argument, not a jurisdictional argument. Thus, this Court's decision is correct, and *Arizona* is largely irrelevant.

*Third*, this Court's decision correctly did not require Texas to trace individual asylum grants to specific migrants using specific services to demonstrate standing. As the Fifth Circuit has stated:

> The Government says that's not enough because Texas has not shown it has already issued any licenses to immigrants who became eligible because of MPP's termination. Tellingly, however, it offers no hint as to how Texas could make that showing—nor why we should require it to do so. Imagine Texas had produced copies of driver's license applications from paroled aliens. Would that have counted as evidence that Texas had, in the Government's words, "issued a single additional 'driver's license as a result" of 'MPP's termination? Of course not: There would always remain some possibility that *any given parolee* would have been paroled even under MPP. MPP is precisely the sort of large-scale policy that's amenable to challenge using large-scale statistics and figures, rather than highly specific individualized documents. And Texas's standing is robustly supported by just such big picture evidence. There is nothing "conjectural" or "hypothetical" about that.

*Texas v. Biden*, 20 F.4th 928, 971 (5th Cir. 2021) (*"MPP"*). Texas has provided the big-picture statistical evidence envisioned by the Fifth Circuit. Texas pled "[a]n increase in aliens' (1) applications for driver's licenses, (2) incarceration, (3) usage of public education, and (4) usage of social services." ECF No. 105 at 33. Those costs — all of which will be imposed on Texas — satisfy the burden at this stage. Further, traceability can be established, as this Court recognized, when causation "does not rest on mere speculation about the decision of third parties" but "on the predictable effect of Government action on the decisions of third parties." *Dep't of Com. v. New York,* 139 S. Ct. 2251, 2566 (2019); ECF No. 121 at 2-6.

Now, in response to *Arizona*, the Defendants claim that Texas cannot rely on its pleadings and must instead calculate both the specific costs for each affected category of spending and the number of illegal immigrants affected by the program and then proceed to compare the metrics

prior to and following implementation of the rule; the Defendants then argue Texas must identify the specific individuals affected. *See* Notice at 2-4. But this Court ruled against Defendants on this exact issue in its Memorandum Opinion and Order that denied the Motion to Dismiss ("ECF No. 121 at 6"), referring Defendants to *Dep't of Commerce*, 139 S. Ct. at 2556, and *Texas v. Biden*, 20 F.4th 928 (5th Cir. 2021), *as revised* (Dec. 21, 2021), *rev'd and remanded*, 142 S. Ct. 2528.

*Fourth*, this Court's ruling is correct and should not be reconsidered. In denying the Motion to Dismiss, this Court correctly applied the "alleged facts" pled by Texas that the Rule "will lead to an increase in unlawful and paroled immigrants in Texas, which . . . will cost Texas money on government programs" noting that Texas alleges: "[a]n increase in aliens' (1) applications for driver's licenses, (2) incarceration, (3) usage of public education, and (4) usage of social services," to find the burden had been satisfied. ECF No. 121 at 6 (citing ECF No. 105 at 31, 33) (internal quotation marks omitted) (emphasis added).

This Court accepted Texas's pleadings as sufficient since "Plaintiff, at this stage, is under no obligation to prove its injury actualized or to define and eliminate all possible factors contributing to it." *Id.* (citing *Davis*, 554 U.S. at 734) ("As noted above, the injury required for standing need not be actualized." Nor is it even required "to produce specific evidence to counter . . . Defendants' merit arguments.").

Texas needs only "to have alleged facts showing the Defendants' conduct is *a* cause-in-fact of the injury that the State asserts." *Id.* at 272 (emphasis added). And Texas has "alleged facts" — in addition to those discussed above — that the Asylum IFR "will lead to an increase in unlawful and paroled immigrants in Texas, which . . . will cost Texas money on government programs." ECF No. 105 at 31; *Adams v. City of Harahan*, 95 F.4th 908, 912 (5th Cir. 2024); *Dep't of Com.*, 139

S. Ct. at 2566 (noting that standing can be satisfied by "the predictable effect of Government action on the decisions of third parties.").

This Court should decline to follow the *Arizona* Court's analysis and instead stand on the Supreme Court, Fifth Circuit, and this Court's precedent, which provide a strong, well-supported approach to the standing inquiry.

## II.    *Arizona's* Merits Determination Against the Federal Defendants Has Preclusive Effect Here.

As here, the Federal Defendants in *Arizona* argued that the court did not have jurisdiction under 8 U.S.C. § 1252(e), which limits "[j]udicial review of orders under section 1225(b)(1)." The Asylum IFR claimed that it was issued under the authority of 8 USC 1225(b)(1). Therefore, the *Arizona* court had to "determine whether the Asylum IFR was properly issued under the Defendants' claimed authority" to determine whether Section 1252(e) stripped jurisdiction. ECF No. 129-1 at 12. The court found, in no uncertain terms, that it was not:

> Defendants have represented to the Court in this litigation that Congress intended for the phrase mandating that aliens "shall be detained for further consideration of the application for asylum," § 1225(b)(B)(ii), as granting the Executive Branch the authority to create out of whole cloth a new and alternate asylum procedure and requirements. *The Court finds this position disingenuous and completely unsupportable.* Congress did not grant the Executive Branch this authority in § 1225(b). Rather, Congress specifically and explicitly permitted the Executive Branch to issue asylum-related regulations in the Asylum Statute (§ 1158(b)(1)(A)), subject to the terms and limitations of that statute.

*Id.* at 15 (emphasis added).

Because the only claimed statutory authority for the Asylum IFR is Section 1225(b)(1), *Arizona* has already decided that it is contrary to law and violates the APA.

"Issue preclusion or collateral estoppel is appropriate when: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was

necessary to the decision." *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005). All three factors are present here. The issue adjudicated in *Arizona*—whether the Asylum IFR was issued under Section 1225(b)(1)—is identical to the central issue here. That issue was actually litigated in *Arizona*, and it was necessary to the decision.

In "federal courts exercising federal-question jurisdiction...., there is no requirement of strict mutuality for issue preclusion to apply. If a defendant loses an issue in a suit where the issue was actually litigated and necessary to the decision, *then a different plaintiff can sue the defendant, identify the defendant's prior loss, and then preclude the defendant from relitigating the issue.*" *In re Par.*, 81 F.4th 403, 414–15 (5th Cir. 2023). That is precisely the case here.

Therefore, post-*Arizona*, issue preclusion means that Texas is entitled to judgment in its favor, and the only remaining issue left for adjudication here is determining the proper remedy.

## Conclusion

Accordingly, this Court should not disturb its prior decision on the Defendants' Motion to Dismiss. Furthermore, because of issue preclusion, this Court should enter a judgment declaring that the Asylum IFR is contrary to law and order briefing and schedule a hearing to determine remedies.

Dated: May 7, 2024

GENE P. HAMILTON
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

JAMES K. ROGERS
America First Legal Foundation
611 Pennsylvania Ave, SE #231
Washington, DC 20003
480-570-4988
james.rogers@aflegal.org
*PRO HAC VICE*

Respectfully submitted.

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy Attorney General for Legal Strategy

RYAN WALTERS
Chief, Special Litigation Division
Texas Bar No. 254105085

/s/ *Susanna Dokupil*
SUSANNA DOKUPIL
Attorney-in Charge
Special Counsel
Texas Bar No. 24034419

JACOB E. PRZADA
Special Counsel
Texas Bar No. 24125371

ETHAN QUINN SZUMANSKI
Special Counsel
Texas Bar No. 24123966

Office of the Attorney General
Special Litigation Division
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1700
Ryan.walters@oag.texas.gov
Susanna.dokupil@oag.texas.gov
Jacob.przada@oag.texas.gov
Ethan.szumanski@oag.texas.gov

***Counsel for the State of Texas***

**CERTIFICATE OF SERVICE**

On May 7, 2024, I filed this document through the Court's CM/ECF system, which automatically serves it upon all counsel of record as follows:

Brian C. Ward
Brian.c.ward@usdoj.gov

Erez Reuveni
Erez.r.reuveni@usdoj.gov

Elizabeth Tulis
Elizabeth.tulis@usdoj.gov

Erin Ryan
Erin.t.ryan@usdoj.gov

Joseph A. Darrow
Joseph.a.darrow@usdoj.gov

/s/ Susanna Dokupil
SUSANNA DOKUPIL