IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| STATE OF TEXAS, | |
| Plaintiff, | |
| v. | 2:22-CV-094-Z |
| ALEJANDRO MAYORKAS, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion for Reconsideration ("Motion") (ECF No. 123), and Plaintiff's response and objection (ECF No. 127). Having reviewed the briefing and relevant law, the Court **DENIES** the Motion.

**BACKGROUND**

This case concerns an Interim Final Rule ("Rule") promulgated by the Department of Homeland Security ("DHS"). That Rule, per Plaintiff, "transfers significant authority from immigration judges to asylum officers," grants those officers "significant *additional* authority," limits "immigration-judge review to denials of applications," and "upends the entire adjudicatory system to the benefit of aliens." ECF No. 1 at 15–16. Defendants responded with a motion to dismiss — which the Court denied. *See* ECF No. 121. Defendants now move, pursuant to Federal Rules of Civil Procedure ("FRCP") 54(b) and 59(e), for reconsideration on the basis that (1) Texas's allegations are insufficient to withstand a factual jurisdictional attack; (2) even for prospective injury, Texas failed to provide sufficient evidence; (3) the evidence demonstrates the case is moot; and (4) jurisdiction is precluded by Section 1252(e). *See generally* ECF No. 123; 8 U.S.C. § 1252. Plaintiff responds that, *inter alia*, (1) Texas has standing; (2) its injury is ongoing; and (3) this Court has jurisdiction. *See generally* ECF No. 127.

**LEGAL STANDARDS**

FRCP 54(b) permits a court to revise certain orders "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b). "Although the precise standard for evaluating a motion to reconsider under Rule 54(b) is unclear, whether to grant such a motion rests within the broad discretion of the court." *Est. of Henson v. Wichita Cnty.*, 988 F. Supp. 2d 726, 729 (N.D. Tex. 2013), *aff'd sub nom. Est. of Henson v. Wichita Cty., Tex.*, 795 F.3d 456 (5th Cir. 2015).

FRCP 59(e) permits a party to file "[a] motion to alter or amend a judgment . . . no later than 28 days after the entry of the judgment." FED. R. CIV. P. 59(e). Such motions must: (1) establish either a manifest error of law or fact; (2) present evidence that is newly discovered; or (3) assert a change in controlling law. *Schiller v. Phys. Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). They are not "the proper vehicle[s] for rehashing evidence . . . or arguments that could have been offered" before entry of judgment. *Templet v. HydroChem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

**ANALYSIS**

**I.      Only FRCP 54(b) is relevant to this Motion.**

Defendants bring their Motion pursuant to FRCP 54(b) and 59(e) — but the latter applies "only to final judgments." *Barzelis v. Flagstar Bank, F.S.B.*, No. 4:12-CV-611-Y, 2013 WL 12126117, at *1 (N.D. Tex. May 31, 2013). And a denial of a motion to dismiss is not one. *Datiz v. Int'l Recovery Assocs., Inc.*, No. 15CV3549ADSAKT, 2017 WL 59085, at *2 (E.D.N.Y. Jan. 4, 2017); *see also* FED. R. CIV. P. 54(a) (defining a "judgment" as "a decree [or] any order from which an appeal lies"). "Because a denial of a motion to dismiss is an interlocutory order from which no appeal lies . . . a motion pursuant to 59(e) to modify [it] is procedurally improper." *In re Palermo*, No. 08 CV 7421 RPP, 2011 WL 446209, at *4 (S.D.N.Y. Feb. 7, 2011). Thus, this Court proceeds only pursuant to FRCP 54.

II.     **The Court applied the proper standard to the claims at issue.**

Defendants argue that the Court was wrong to hold "that Texas need only allege a plausible injury to survive a motion to dismiss." ECF No. 123 at 6. That is because "a factual attack on standing" places the burden on Plaintiff "to put forth actual evidence of harm to avoid dismissal for lack of *jurisdiction.*" *Id.* (emphasis added). In other words, the Court incorrectly attached "presumptive truthfulness" to Plaintiff's allegations. *Id.* at 8 (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). Defendants get the law right but its application wrong. True, factual and facial attacks differ:

> [Under] [t]he facial attack (on subject matter jurisdiction) . . . the court must consider the allegations of the complaint as true. The factual attack, however, differs greatly[.] [T]here[,] the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction — its very power to hear the case — there is substantial authority [for] the trial court . . . to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to [the] plaintiff's allegations . . . .

*Williamson*, 645 F.2d at 412–13.

And it is true that Defendants asserted factual arguments against jurisdiction in their motion to dismiss. *See* ECF No. 102 at 16 ("[T]he evidence has shown that the [Rule] is not being applied to noncitizens with destinations in Texas[.]"). But *Williamson* further clarified that not all factual attacks on jurisdiction are factual attacks on *jurisdiction*:

> Where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case. The Supreme Court has made it clear that in that situation no purpose is served by indirectly arguing the merits in the context of federal jurisdiction. . . . *This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim*[.]

*Williamson*, 645 F.2d at 415 (emphasis added).

3

In short, when factual attacks on jurisdiction are *really* attacks on the merits, they are treated as such. Here, Defendants' attacks were that the Rule (1) was not being applied to asylum-seekers traveling to Texas; (2) did not increase immigration; (3) did not increase the rate at which individuals are granted asylum; and (4) did not cost Texas any money. ECF No. 123 at 9–13. And those attacks mirror — almost perfectly — the core of Plaintiff's complaint: that the Rule increases immigration to Texas and thereby causes it to incur costs. *Compare* ECF No. 1 at 9 *with* ECF No. 123 at 9–13. The attacks are wholly intertwined and inseparable from the merits at issue. Accordingly, the Court applied the Rule 12(b)(6) standard and "accept[ed] well-pled facts as true and view[ed] them in the light most favorable to the [P]laintiff." ECF No. 121 at 2 (quoting *Vardeman v. City of Houston*, 55 F.4th 1045, 1050 (5th Cir. 2022)).

The Fifth Circuit supports this approach. In *Gen. Land Off. v. Biden*, the Fifth Circuit rejected the defendants' argument that "DHS's 2021 plan is at least as effective in reducing the relative amount of illegal immigration as building additional border barriers" because, *inter alia*, "the effectiveness of the . . . [d]efendants' 2021 border wall plan raises *a factual merits defense*, not a response cognizable on a motion to dismiss where allegations in Texas's complaint must be taken as true." 71 F.4th 264, 272–73 (5th Cir. 2023) (emphasis added). Defendants' motion to dismiss raised "factual merits defenses" and the Court treated them as such.

### III. Plaintiff's allegations withstand a factual jurisdictional attack.

Even interpreting Defendants' attacks as factual and jurisdictional, Plaintiff survives them. First, Defendants argue that the Rule's asylum merits-interview procedure "was not being applied to asylum-seekers traveling to Texas destinations" when Texas filed its suit. ECF No. 123 at 9. But this argument misunderstands Plaintiff's claim: namely, that the Rule "increases the *presence* of unlawful immigrants" in — and thereby harms — Texas. ECF No. 105 at 21 (emphasis added).

In other words, whether the Rule *names* Texas has little to do with whether it *injures* Texas. And Plaintiff cited abundant evidence illustrating that a rule making it "quicker and easier for aliens" to receive asylum in the United States "both increase[s] the number of aliens seeking asylum" and the number "who *end up in* Texas unlawfully." *Id.* at 22 (emphasis added); *see also* UNITED STATES DEPARTMENT OF STATE, *Report to Congress on Proposed Refugee Admissions for Fiscal Year 2023*, Sept. 8, 2022, at 42, Table VIII (indicating, per the State Department, that Texas is a top destination for refugee resettlement); MIGRATION POLICY INSTITUTE, *Refugees and Asylees in the United States*, June 15, 2023 (ranking Texas "number one" in 2023 for refugee settlement).

Next, Defendants rehash evidence — here, an expert report — purportedly demonstrating that the Rule did not increase immigration to Texas. ECF No. 123 at 17; ECF No. 102-3 ("Ex. C"). But the Court already addressed that report in its previous opinion:

> Defendants' own expert report recognized that "changes to asylum procedure or processing can be a necessary element of a larger bundle of policies that, together, *are sufficient to cause substantial changes in migration behavior*." ECF No. 102-3 at 6 (emphasis added). And it is eminently reasonable to believe that Defendants' changes — namely, "transfer[ring] significant authority [away] from immigration judges," "limit[ing] immigration-judge review of denials of applications," and ultimately "lower[ing] [the] procedural bar to entry" — would do exactly that.

ECF No. 121 at 3.

The report further acknowledges an increase in the number of border encounters between March 29, 2022, and May 31, 2022. *See* ECF Nos. 102-3 at 7; 105 at 24. Hence, the record contained quantitative evidence that migration had *risen* following the Rule — and that evidence, in turn, was further substantiated by the U.S. Customs and Border Protection's ("CBP") data. *See* U.S. CUSTOMS AND BORDER PROTECTION, *Southwest Land Border Patrol Encounters (by Component)*; *see also* ECF No. 105 at 26 (indicating, *inter alia*, that "El Paso's border encounter total is up 50.4 percent year-over-year"); *id.* at 24 ("In March of 2022, the total number

of border encounters in the Southwest was 211,181; . . . and in May of 2022, it was 224,370."); ECF No. 127 at 11–12.

Defendants' third objection — that the Rule did not increase the rate at which individuals are granted asylum — fails for reasons similar to Defendants' first: the Rule plausibly increases immigration, and many immigrants denied asylum will nevertheless remain in the U.S. because (1) "their removal has been withheld" or (2), as Defendants have recognized, the government "lacks the resources to remove more than a . . . fraction of the . . . population." ECF No. 105 at 28. And in any event, Plaintiff provided evidence that "there were more grants of asylum in 2022 than in any other year" and asylum cases "increased 166[%] from 124,939 in 2021 to 331,761 in 2022." *Id.* at 29; *see also* SUZANNE GAMBOA, *Biden Admin. Changes Have Led to Historic Number of Court-Granted Asylum Cases*, NBC News, Dec. 14, 2022; DEPARTMENT OF HOMELAND SECURITY, *Asylum Application Processing: FY 2022 Report to Congress*, July 17, 2023.

Lastly, Defendants aver that the Rule — whatever its effects — did not increase Texas's costs. ECF No. 123 at 16. But in light of the foregoing analysis, this argument is untenable. As the Court held in its previous opinion:

> Plaintiff needs only "to have alleged facts showing the Federal Defendants' conduct is a cause-in-fact of the injury that the State asserts." *Id.* at 272 (emphasis added). And Plaintiff has "alleged facts" — in addition to those *supra* — that the Rule "will lead to an increase in unlawful and paroled immigrants in Texas, which . . . will cost Texas money on government programs." ECF No. 105 at 31. Its argument "does not rest on mere speculation" but instead on "the predictable effect of Government action on the decisions of third parties." *Dep't of Commerce*, 139 S. Ct. at 2556. And the alleged effect of the foregoing will be "[a]n increase in aliens' (1) applications for driver's licenses, (2) incarceration, (3) usage of public education, and (4) usage of social services." ECF No. 105 at 33. Those costs — all of which will be imposed on Texas — satisfy Plaintiff's burden here.

ECF No. 121 at 6. The Court declines to disturb that holding.

### IV. Plaintiff has standing.

Defendants next argue that a factual challenge to jurisdiction requires Texas to demonstrate (1) standing by a preponderance of the evidence, not the mere plausibility of its allegations, and (2) that the claimed prospective injury was "certainly impending," or that there was — at the least — a "substantial risk" of it occurring. ECF No. 123 at 12 (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 n.2 (1992) (prospective injury must be "certainly impending"); *Whitmore v. Arkansas*, 495 U.S. 149, 158–59 (1990) (holding same). And they aver that "Texas failed to offer any, let a [sic] preponderance of, evidence demonstrating harm at any point in time from the [Rule]." ECF No. 123 at 15.

But as discussed *supra*, this Court did not — and does not — recognize Defendants' arguments as properly "factual," but instead as "factual merits defenses." Accordingly, the Court's previous opinion was correct to recognize that:

> "[T]he standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008); *Pluet v. Frasier*, 355 F.3d 381, 386 (5th Cir. 2004) ("A party must have standing at the time the complaint is filed."); *Roman Cath. Diocese of Dallas v. Sebelius*, 927 F. Supp. 2d 406, 416 (N.D. Tex. 2013). And Plaintiff filed its complaint in April of 2022. ECF No. 1. That means that any data subsequent to the Rule's enactment purporting to show a stasis or decrease in illegal immigration is irrelevant to the standing inquiry. *See Gen. Land Off. v. Biden*, 71 F.4th 264, 272 n.12 (5th Cir. 2023) ("As this action was filed in October 2021, developments since then . . . will not be considered" for the purposes of defeating standing.).
>
> What *is* relevant to the standing inquiry is whether Plaintiff pled a sufficient prospective injury. *Davis*, 554 U.S. at 734. To do that, Plaintiff need not "demonstrate that it is literally certain that the harms [it] identif[ies] will come about." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013). Nor must it prove that such harms are "clearly impending." *Id.* at n.6. On the contrary, "[a] party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct." *Davis*, 554 U.S. at 734; *Roman Cath. Diocese of Dallas*, 927 F. Supp. 2d at 416.

ECF No. 121 at 3.

Nevertheless, Plaintiff withstands these attacks too — even if they are properly "factual": hundreds of pages of declarations, memoranda, and data demonstrate that (1) immigration increased since the passage of the Rule, and that (2) illegal immigration injures Texas. *See generally* ECF Nos. 106, 106-1–4; *see also* ECF No. 127 at 15. As this Court's analysis *supra* makes clear, the preponderance of the evidence weighs in Plaintiff's favor. *See supra* Part III.

## V.     This case is not moot.

Defendants argue that the present case is moot "because Texas failed to establish any ongoing harm from the [Rule]." ECF No. 123 at 16. That is because — as before — Defendants presented evidence demonstrating that the Rule's asylum adjudication provisions: (1) have not been applied to migrants whose destination is Texas; (2) have not led to an increase in encounters; (3) have not resulted in a higher rate of positive credible fear determinations or asylum grants than before the Rule existed; and thus, (4) have not led to any increase in costs for Texas. Plaintiff responds that (1) Defendants' mootness argument was raised for the first time in a reply brief and therefore should not be considered, and (2) Texas has presented a live controversy, in which Texas holds a considerable stake. ECF No. 127 at 17.

An action is moot where the controversy is no longer live or the parties lack personal stakes in its outcome. *Nkenglefac v. Garland*, 34 F.4th 422, 428 (5th Cir. 2022). Neither are true here. This Court already addressed Defendants' arguments and found them lacking. *See supra* Part III. It recognized — by a preponderance of the evidence after considerable review — that immigration increased since the passage of the Rule and causes harm to Texas. *See supra* Part IV. And by all accounts, those facts have not changed.[1]

---

[1] *See* ECF No. 127 at 20 n.10 ("[T]he 'U.S. Customs and Border Protection . . . encountered a record-breaking 269,735 illegal aliens along the southwest border in September 2023'; and in the 'Fiscal Year 2023 Annual Report, ICE reported that it removed 23 percent fewer illegal aliens than in fiscal year 2020 and roughly 47 percent fewer than in fiscal year 2019.'").

8

## VI. The Court has jurisdiction to hear this case.

Next, Defendants argue that Section 1252(e) bars review of Texas's claims by this Court. ECF Nos. 123 at 18; 102 at 35–38; *see also* 8 U.S.C. § 1252. They recognize that "this Court previously rejected the applicability of Section 1252(e) when Defendants moved to transfer venue" but nevertheless aver that its decision contradicts two Supreme Court cases: *Biden v. Texas*, 597 U.S. 785, 797 (2022), and *Patel v. Garland*, 142 S. Ct. 1614, 1626 (2022). ECF No. 123 at 18; *see also* ECF No. 102 at 44–45.

However, *Biden v. Texas* reinforces — rather than undermines — this Court's reasoning. And this Court already explained why in its opinion from September 14, 2022:

> The text and structure of Section 1252 indicate it does not govern cases in which a State sues to challenge an interim final rule, but rather applies to actions involving individual aliens. Section 1252 is titled "Judicial review of orders of removal." That title "indicates the section applies to individual aliens (who are subject to orders of removal) rather than programmatic decisions." *Texas*, 20 F.4th at 977 n.11; *see also Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) ("[T]he title of a statute and the heading of a section are tools available for the resolution of doubt about the meaning of a statute." (internal marks omitted)); *House v. Commissioner*, 453 F.2d 982, 988 (5th Cir. 1972) (noting "meaning should be given to the section headings of a statute"). Section 1252 is broken into additional sections, each addressing various decisions, actions, and proceedings involving individual aliens.
>
> ***
>
> Section 1252(e)(3)(A) — the provision at issue here — states: "Judicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia." *Biden* involved Section 1225(b)(2)(C). Under Defendants' view, Section 1252(e)(3)(A)'s text — removed from statutory context — would require cases involving Section 1225(b)(2)(C), such as *Biden*, to be filed in the D.D.C. Yet the United States Supreme Court remanded *Biden* to this Court. *Biden*, 142 S. Ct. at 2548. The Court will not disregard all context the various titles and provisions of Section 1252 provide — whether they directly apply to Sections 1252(a)(2)(A)(iv) and (e)(3) or contextualize those provisions.

*See* ECF No. 78 at 2–3, 7.

9

Lastly, Defendants interpret *Patel v. Garland* as holding that Section 1252 "stripped district courts of jurisdiction over all challenges to factual findings made as part of discretionary judgment, even if those claims cannot be challenged in any court by any party." ECF No. 102 at 45. In their view, "there is no basis to read *Patel* as barring individual challenges under 1252(e)(3) but permitting challenges by States to proceed outside of the U.S. District Court for the District of Columbia." *Id.* at 46.

But Defendants misread and misapply *Patel*. That case involved Sections 1252(a) and 1255 and an *individual* challenge against "factual determinations" from a removal proceeding. *Patel*, 596 U.S. at 331. Neither those provisions nor those issues are before this Court. Accordingly, Defendants' arguments fall short.

CONCLUSION

Defendants' Motion is **DENIED**.

**SO ORDERED.**

June 25, 2024

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE