**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

|  |  |  |
|---|---|---|
| STATE OF TEXAS, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:22-cv-0094-Z |
| | ) | |
| Markwayne Mullin, | ) | |
| in his official capacity as | ) | |
| Secretary of Homeland Security, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**<u>DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................................1

BACKGROUND .................................................................................................................2

ARGUMENT.......................................................................................................................6

    I.      TEXAS LACKS ARTICLE III STANDING .............................................6

        A.  Plaintiff Has No Injury In Fact.....................................................6

        B.  Plaintiff Cannot Show Traceability................................................13

        C.  Plaintiff Cannot Show Redressability .............................................16

    II.    THIS COURT HAS NO JURISDICTION OVER THIS CASE ...........................18

    III.   THE IFR DOES NOT VIOLATE THE APPOINTMENTS CLAUSE ................19

    IV.   IF THE COURT GRANTS RELIEF, IT MUST BE SHARPLY LIMITED .......25

        A.  8 U.S.C. § 1252(f)(1) Bars Injunctive Relief.......................................25

        B.  Texas Has Not Proven Irreparable Injury And The Balance Of The Harms Weigh Against Injunctive Relief..........................................................28

        C.  Any Relief Must Be Limited To Texas...............................................29

CONCLUSION ...................................................................................................................31

**TABLE OF AUTHORITIES**

Cases

*Adams v. Vance*,
570 F. 2d 950 (D.C. Cir. 1978) ......................................................................................... 29

*Air Cargo v. U.S. Postal Serv.*,
674 F.3d 852 (D.C. Cir. 2012) .......................................................................................... 30

*Alzuraqi v. Grp. 1 Auto., Inc.*,
921 F. Supp. 2d 648 (N.D. Tex. 2013) ................................................................................ 8

*Arizona v. Garland*,
730 F.Supp.3d 258 (W.D. La. Apr. 16, 2024) ................................................... 11, 12, 31

*Arizona v. Biden*,
31 F.4th 469 (6th Cir. 2022) ............................................................................................. 30

*Biden v. Texas*,
597 U.S. 785 (2022) .......................................................................................................... 27

*Braidwood Mgmt., Inc. v. Becerra*,
104 F.4th 930 (5th Cir. 2024) ........................................................................................... 23

*Brown v. AT&T Servs. Inc.*,
236 F. Supp. 3d 1000 (S.D. Tex. 2017) .............................................................................. 7

*Buckley v. Valeo*,
424 U.S. 1 (1976) .............................................................................................................. 21

*Burgess v. FDIC*,
871 F.3d 297 (5th Cir. 2017) ............................................................................................ 22

*Califano v. Sanders*,
430 U.S. 99 (1977) ............................................................................................................ 27

*California v. Texas*,
593 U.S. 659 (2021) .......................................................................................................... 14

*Citizens to Preserve Overton Park v. Volpe*,
401 U.S. 402 (1971) ............................................................................................................ 8

*City of Los Angeles v. Patel*,
576 U.S. 409 (2015) ..................................................................................................... 24, 25

**Brief in Support of Defendants' Motion for Summary Judgment**

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013).............................................................................................. 7, 14

*Ctr. for Individual Freedom v. Carmouche*,
  449 F.3d 655 (5th Cir. 2006) .............................................................................. 23, 25

*Does #1-7 v. Abbott*,
  345 F. Supp. 3d 763 (N.D. Tex. 2018) *aff'd* 945 F.3d 307 (5th Cir. 2019) ............................. 19

*Duarte ex rel. Duarte v. City of Lewisville, Tex.*,
  759 F.3d 514 (5th Cir. 2014) .................................................................................. 6

*Edmond v. United States*,
  520 U.S. 651 (1997)............................................................................................ 22

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024)......................................................................................... 14, 16

*Feds for Med. Freedom v. Biden*,
  63 F.4th 366 (5th Cir. 2023) .............................................................................. 30, 31

*Florida v. Mellon*,
  273 U.S. 12 (1927)........................................................................................... 15, 18

*Garland v. Aleman Gonzalez*,
  596 U.S. 543 (2022)................................................................................ 17, 18, 26, 27

*Gen. Land Off. v. Biden*,
  71 F.4th 264 (5th Cir. 2023) .............................................................................. 15, 16

*Gill v. Whitford*,
  585 U.S. 48 (2018).............................................................................................. 29

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*,
  527 U.S. 308 (1999)............................................................................................ 29

*Louisiana v. Becerra*,
  20 F. 4th 260 (5th Cir. 2021) ................................................................................ 29

*Lucia v. SEC*,
  585 U.S. 237 (2018)...................................................................................... 19, 21, 22

*Lujan v. Defs. Of Wildlife*,
  504 U.S. 555 (1992)................................................................................ 6, 13, 14, 15

*Massachusetts v. EPA*,
  549 U.S. 497 (2007)............................................................................................ 18

**Brief in Support of Defendants' Motion for Summary Judgment**

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S.139 (2010)................................................................................................ 30

*Moore v. Tangipahoa Par. Sch. Bd.*,
  507 F. App'x 389 (5th Cir. 2013) ......................................................................... 28

*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*,
  366 F.3d 930 (D.C. Cir. 2004)............................................................................... 13

*DHS v. New York*,
  140 S. Ct. 599 (2020)............................................................................................. 29

*Nken v. Holder*,
  556 U.S. 418 (2009)............................................................................................... 28

*Okpalobi v. Foster*,
  190 F.3d 337 (5th Cir. 1999), *on reh'g en banc*, 244 F.3d 405 (5th Cir. 2001) ....................... 24

*Paterson v. Weinberger*,
  644 F.2d 521 (5th Cir. 1981) ..................................................................... 9, 10, 13

*Rodriguez v. SSA*,
  118 F.4th 1302 (11th Cir. 2024) ........................................................................... 23

*RooR Int'l BV v. Stinky's Smoke Shop, LLC*,
  No. 4:18-CV-00735-KPJ, 2020 WL 7646742 (E.D. Tex. Dec. 23, 2020) ............... 8

*Sampson v. Murray*,
  415 U.S. 61 (1974)................................................................................................. 28

*Shelak v. White Motor Co.*,
  581 F.2d 1155 (5th Cir. 1978) ................................................................................ 8

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)................................................................................................. 16

*Summers v. Earth Island Institute*,
  555 U.S. 488 (2009)............................................................................................... 29

*Sw. Elec. Power Co. v. EPA*,
  920 F.3d 999 (5th Cir. 2019) ................................................................................ 30

*Texas v. Biden*,
  No. 2:21-CV-067-Z, 2021 WL 4552547 (N.D. Tex. July 19, 2021)................... 8, 27

*Texas v. United States*,
  50 F.4th 498 (5th Cir. 2022) ................................................................................ 18

**Brief in Support of Defendants' Motion for Summary Judgment**

*Texas v. United States*,
  809 F.3d 134 (5th Cir. 2015) ................................................................................................. 18

*United States v. Texas* ("*Priorities*"),
  599 U.S. 670 (2023).............................................................................................. 14, 15, 16, 31

*Trump v. Casa, Inc.*,
  606 U.S. 831 (2025)................................................................................................... 2, 29, 30

*Trump v. Hawaii*,
  138 S. Ct. 2392 (2018)................................................................................................... 29, 31

*United States v. Arthrex*,
  594 U.S. 1 (2021) ........................................................................................................... 21, 23

*United States v. Salerno*,
  481 U.S. 739 (1987)............................................................................................................. 23

*United States v. Stevens*,
  559 U.S. 460 (2010)............................................................................................................. 24

*Virgin Islands Tel. Corp. v. F.CC,*
  444 F. 3d 666 (D.C. Cir. 2006)........................................................................................... 27

*Warth v. Seldin*,
  422 U.S. 490 (1975)............................................................................................................. 15

*Wash. State Grange v. Wash. State Republican Party*,
  552 U.S. 442 (2008)....................................................................................................... 19, 24

*Willy v. Admin. Review Bd.*,
  423 F.3d 483 (5th Cir. 2005) .............................................................................................. 20

Statutes

5 U.S.C. § 301 ........................................................................................................................ 20
5 U.S.C. § 702(1) .................................................................................................................... 28
5 U.S.C. § 706(2)(A)-(B) ....................................................................................................... 19
5 U.S.C. § 3105....................................................................................................................... 22
5 U.S.C. § 7521....................................................................................................................... 21
6 U.S.C. § 112......................................................................................................................... 20
8 U.S.C. § 1158......................................................................................................................... 2
8 U.S.C. § 1225.................................................................................................................. 17, 26
8 U.S.C. § 1225(b)(1) ........................................................................................................... 2, 3
8 U.S.C. § 1229a....................................................................................................................... 3
8 U.S.C. § 1231(a)(6)............................................................................................................. 26
8 U.S.C. § 1252....................................................................................................................... 26
8 U.S.C. § 1252(e)(3)............................................................................................................. 19

**Brief in Support of Defendants' Motion for Summary Judgment**

8 U.S.C. § 1252(f)(1) .............................................................................................. passim
8 U.S.C. §§ 1101(a)(18)................................................................................................ 21
8 U.S.C. §§ 1158(a)(1)................................................................................................... 2
8 U.S.C. §§ 1221-32 ........................................................................................... 2, 25, 26
U.S.C. § 1252.............................................................................................................. 2, 25

Rules

Fed. R. Civ P. 26(a) ........................................................................................................ 7
Fed. R. Evid. 802 ............................................................................................................ 8

Regulations

8 C.F.R. § 208.30(f) ........................................................................................................ 3
8 C.F.R. § 208.30(d) ....................................................................................................... 3
8 C.F.R. § 1003.42(f) ...................................................................................................... 3
8 C.F.R § 208.2(a)......................................................................................................... 11

**INTRODUCTION**

The Court should grant summary judgment to Defendants and reject Texas's challenges to the interim final rule ("IFR") jointly issued by the Departments of Justice and Homeland Security, entitled *Procedures for Credible Fear Screening and Consideration of Asylum, Withholding of Removal, and CAT Protection Claims by Asylum Officers*, 87 Fed. Reg. 18078 (Mar. 29, 2022)—a rule, which critically, is no longer operational, and which Defendants are actively working to repeal. This IFR made changes to facilitate, among other things, broader application of the expedited removal provisions to remove aliens with non-meritorious asylum claims more quickly. *Id.* at 18088.

Texas alleged the IFR would increase unlawful migration and would increase the number of aliens in Texas using social services at a cost to the State. Texas asks this Court to vacate the IFR and issue a nationwide injunction barring its provisions. The Court should deny that relief and grant summary judgment to Defendants.

Principally, Texas lacks standing. No one has received an asylum merits interview under the IFR in Texas, making any alleged injury speculative. Texas has failed to produce any evidence that its costs have increased, or imminently will increase (particularly as the IFR is not operational), as a result of the IFR and thus has not established it has suffered an actual injury.

The IFR is also not contrary to law. Critically, Texas's Appointments Clause claim fails because the IFR does not preclude the Secretary of Homeland Security from appointing asylum officers carrying out their duties under the IFR as if they were officers of the United States or from curing any deficiency in their appointments were they to be deemed officers of the United States. The undisputed facts confirm that the IFR was applied consistent with the Appointments Clause.

**Brief in Support of Defendants' Motion for Summary Judgment - 1**

Texas therefore has not met its burden to show that the IFR is unconstitutional in all its applications, and its facial challenge fails.

And even if the Court were to disagree, injunctive relief is simply not available. Section 8 U.S.C. § 1252(f)(1) provides that, except in a case brought by "an individual alien" in removal proceedings, and "[r]egardless of the nature of the action or claim or of the identity of the [plaintiff], no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of [8 U.S.C. §§ 1221-32]." 8 U.S.C. § 1252(f )(1). That remedial restriction plainly applies in this case because the IFR implements § 1225(b)(1), one of the covered provisions. Furthermore, even were that not the case, Texas still would not be entitled to the universal relief it seeks. *Trump v. Casa, Inc.*, 606 U.S. 831, 841 (2025).

## BACKGROUND

Expedited Removal. Congress has authorized the Department of Homeland Security ("DHS") to summarily remove from the United States certain aliens who either arrive at ports of entry or "certain other aliens" designated by the Secretary who recently entered the country. *See* 8 U.S.C. § 1225(b)(1). Under this summary-removal mechanism—known as expedited removal— an alien who is "arriving in the United States" or is otherwise covered by the provision and who an immigration officer determines lacks valid entry documentation or makes certain kinds of material misrepresentations, shall be "order[ed] ... removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under [8 U.S.C. § 1158] or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i); *see id.* § 1182(a)(6)(C), (a)(7).

Additional procedures apply if an alien indicates an "intention to apply for asylum ... or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(ii); *see also* 8 U.S.C. §§ 1158(a)(1), 1225(b)(1)(A)(ii). In that situation, he is provided a non-adversarial interview with an asylum

**Brief in Support of Defendants' Motion for Summary Judgment - 2**

officer, after which the officer determines whether the alien has a "credible fear of persecution" or torture and may then request de novo review of that determination by an immigration judge. 8 U.S.C. § 1225(b)(1)(A)(ii), (b)(1)(B)(iii)(II), (B)(1)(B)(iv), (v); *see* 8 C.F.R. §§ 208.30(d); 1003.42(d), 1208.30(g)(2). If the asylum officer or immigration judge determines that the alien has a credible fear of persecution or torture, the individual is "detained for further consideration of the application for asylum," 8 U.S.C. § 1225(b)(1)(B)(ii), unless that individual is eligible for release on parole. Although § 1225(b)(1)(B)(ii) does not specify how that "further consideration" should occur, the prior regulations provided that the alien is placed in removal proceedings under 8 U.S.C. § 1229a. *See* 8 C.F.R. § 208.30(f). If the officer and immigration judge find that the alien lacks a credible fear, the alien shall be "removed from the United States without further hearing or review." 8 U.S.C. §§ 1225(b)(1)(B)(iii)(I), (b)(1)(C); 1252(a)(2)(A)(iii), (e)(2); 8 C.F.R. §§ 1003.42(f), 1208.30(g)(2)(iv)(A).

The IFR. On August 20, 2021, the Departments of Homeland Security and Justice jointly published a notice of proposed rulemaking ("NPRM"). The NPRM proposed amending the regulations governing the procedures implementing "further consideration of the application for asylum," 8 U.S.C. § 1225(b)(1)(B)(ii), for individuals subject to expedited removal who are found to have a credible fear of persecution or torture under 8 U.S.C. § 1225(b)(1), and governing whether they may be released during the pendency of that application. *See Procedures for Credible Fear Screening and Consideration of Asylum, Withholding of Removal, and CAT Protection Claims by Asylum Officers*, 86 Fed. Reg. 46906 (Aug. 20, 2021); *see also* 87 Fed. Reg. at 18079 (explaining that the NPRM proposed "to amend the regulations governing the process for further consideration of asylum and related protection claims raised by individuals subject to expedited removal and found to have a credible fear of persecution or torture" under § 1225(b)(1)(B)(i)-(ii)).

**Brief in Support of Defendants' Motion for Summary Judgment - 3**

On March 29, 2022, after reviewing public comments submitted in response to the NPRM, the Departments issued the IFR at issue in this case. *See* 87 Fed. Reg. 18078. As the IFR indicated, the Departments issued the IFR to implement § 1225(b)(1) and the "further consideration of the application for asylum" that the statute provides "if an asylum officer determines that a [alien] subject to expedited removal has a credible fear of persecution." 87 Fed. Reg. at 18080. The "IFR addresses how that further consideration … will occur." *Id.* at 18080; *see also id.* at 18085.

The processes for asylum adjudication announced by the IFR only apply to "single adults who are non-rare language speakers and whose intended destination is one of nine destination cities," which are "Arlington[, Virginia], Boston, Chicago, Los Angeles, Miami, New Orleans, New York, Newark, and San Francisco." U.S. DHS, "Asylum Processing Rule Cohort Report – March 2024."[1] Beginning in October 2023, only certain non-detained family units were scheduled for Asylum Merits interviews if they resided in or near one of the nine destination cities.[2] The Rule did "not change the substantive standard for asylum eligibility," 87 Fed. Reg. at 18192, and during the initial phases of implementation, for cases that were identified at the time of the credible fear referral as potentially being amenable to being placed into the Asylum Merits interview process in the event they received a positive credible fear determination—credible fear was found in 45% of those cases, compared to a credible fear finding of 68% in 2021, before the IFR was applied. *Id;* U.S. DHS, "Credible Fear Cases Completed and Referrals for Credible Fear Interview."[3] Likewise, during the initial phases of implementation, USCIS granted in 22% of the cases processed under

---

[1]  https://www.dhs.gov/immigration-statistics/special-reports/asylum-processing-rule-report  (last visited Nov. 19, 2024).

[2] *See* https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/fact-sheet-implementation-of-the-credible-fear-and-asylum-processing-interim-final-rule (last visited Nov. 19, 2024).

[3]    https://www.dhs.gov/immigration-statistics/readingroom/RFA/credible-fear-cases-interview (last visited Nov. 19, 2024).

**Brief in Support of Defendants' Motion for Summary Judgment - 4**

the IFR, compared to 26-37% in Fiscal Years 2017 through 2021. U.S. DHS, "Asylum Processing Rule Cohort Report – March 2024," n.1.

As Defendants have reported to this Court, the IFR has not been operational since June 6, 2024, and Defendants are actively in the process of rescinding the IFR through the rulemaking process. *See* ECF Nos. 189-1.

This Case. On April 28, 2022, one month after the IFR was announced, Texas filed a complaint challenging the IFR. Complaint, ECF No. 1. The following day, Defendants moved to dismiss or transfer this case to the District of Columbia, which, under 8 U.S.C. § 1252(a)(2)(A)(iv) and (e)(3), is the only court with jurisdiction over claims challenging the IFR. ECF No. 7. The Court denied that motion on July 8, 2022. ECF No. 68. The parties then conducted jurisdictional discovery. ECF No. 72. Defendants moved to dismiss in October 2023, and the Court denied the motion in February 2024. ECF Nos. 102, 121. The parties then filed their sequential cross motions for summary judgment. ECF Nos. 154, 155, 159, 160, 161, 163, 164, 167. Those motions remained pending on the docket while this Court issued a series of stays based on Defendants' representations that they were first considering rescinding the IFR, and then taking steps to rescind it through the rulemaking process. ECF Nos. 173-179, 188-192. On July 2, 2026, this Court reopened this case, denied the prior pending summary judgment motions as moot, and instructed the parties to simultaneously refile any motions for summary judgment within thirty days, addressing any "potentially relevant legal and factual developments since this case was initially stayed." ECF No. 196.

**Brief in Support of Defendants' Motion for Summary Judgment - 5**

## ARGUMENT

### I.    TEXAS LACKS ARTICLE III STANDING

To establish standing, a plaintiff must show that it has suffered or will imminently suffer an "injury in fact" "caused" by the challenged government action that a favorable decision would "redress." *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–62 (1992). Texas does not meet this standard. On the contrary, the evidence shows that the asylum adjudication processes in the IFR never was applied to aliens with an intended destination of Texas, rendering Texas's alleged injury speculative.

### A.  Plaintiff Has No Injury in Fact

To satisfy the "injury-in-fact" requirement of Article III, Texas must identify an injury that is "concrete … particularized" and "actual or imminent"—not "conjectural" or "hypothetical." *Lujan*, 504 U.S. at 560; *Duarte ex rel. Duarte v. City of Lewisville, Tex.*, 759 F.3d 514, 517 (5th Cir. 2014). There must be a "high degree of immediacy" to the injury; alleging "an injury at some indefinite future time" is not sufficient. *Lujan*, 504 U.S. at 564, n.2 (citations omitted). In its Complaint, Texas alleges it "spends hundreds of millions of dollars each year" on various State services for illegal aliens. ECF No. 1 at ¶¶ 52-60. But Texas has no evidence that any of those alleged costs are a result of the IFR because the asylum adjudication process under the IFR has not been applied to aliens with destinations in Texas. Initially, the only aliens processed for an Asylum Merits Interview or decision under the IFR are single adults "whose intended destination is one of nine destination cities," "Arlington [Virginia], Boston, Chicago, Los Angeles, Miami, New Orleans, New York, Newark, and San Francisco." *Supra*, n.1. Beginning in October 2023, only certain non-detained family units were scheduled for Asylum Merits Interviews if they resided in or near one of the nine destination cities. *Supra*, n. 2. In fact, there is no evidence in the record that

**Brief in Support of Defendants' Motion for Summary Judgment - 6**

shows a single person who received an Asylum Merits Interview under the IFR currently resides in Texas and uses State services. Accordingly, none of Texas's alleged harms have occurred and there is no evidence they are likely to occur. Despite over a year of discovery, Texas failed to provide any evidence to the contrary and has not demonstrated any "actual" or "certainly impending" injury traceable to the IFR. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("We have repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." (quotation marks omitted)). Indeed, there can be no certainly impending harm, or even any reasonably likely harm, when Defendants are in the process of rescinding the IFR.

To support its claim that it sustained monetary injury from the IFR, Texas previously attached to its original summary judgment motion, an appendix containing five declarations. ECF No. 155-1. Should Texas do so again, the Court should decline to consider them because they were not produced to Defendants during discovery. The Rules require that a party disclose any documents or witnesses it may use to support its claims or defenses and provide that if a party does not, it "is not allowed to use that information or witness to supply evidence on a motion." Fed. R. Civ P. 26(a), 37(c)(1); *see also Brown v. AT&T Servs. Inc.*, 236 F. Supp. 3d 1000, 1005 (S.D. Tex. 2017) (holding that Plaintiff who failed to produce documents during discovery was prohibited from using those documents in support of summary judgment). Here, Texas did not disclose during the discovery period any of the declarations or exhibits attached to its original summary judgment motion, which Defendants suspect it will once again try to rely upon when it refiles its new motion for summary judgment. Defendants suspect Texas will again proffer agency employee declarations from Rebecca Walz, Amy Copeland, and Susan Bricker. Not only were these declarations never produced in discovery, Plaintiff never even disclosed Walz and Copeland as potential witnesses.

**Brief in Support of Defendants' Motion for Summary Judgment - 7**

Likewise, Defendants suspect Plaintiff will try to proffer an expert declaration of Andrew Arthur; this is wholly improper, as Texas never identified him as a witness either, let alone as an expert witness. Indeed, Texas did not make any of the necessary disclosures during the discovery period to use an expert witness in this case, and Defendants would be highly prejudiced if the Court were to consider any declaration by Mr. Arthur now without Defendants having the opportunity to conduct expert discovery. *See RooR Int'l BV v. Stinky's Smoke Shop, LLC*, No. 4:18-CV-00735-KPJ, 2020 WL 7646742, at *2 (E.D. Tex. Dec. 23, 2020) (holding there would be "significant prejudice" to Defendants where Plaintiffs did not designate their expert witness and were planning to disclose the expert report for the first time with their motion for summary judgment.); *Shelak v. White Motor Co.*, 581 F.2d 1155, 1159 (5th Cir. 1978). Finally, Texas previously unabashedly attached to the declaration of Mark Csoros—another undisclosed witness—various website printouts. ECF No. 155-1 at  Ex. 4. Not only were these documents never produced during discovery, they are also inadmissible hearsay under Fed. R. Evid. 802, which the Court cannot consider. *Alzuraqi v. Grp. 1 Auto., Inc.*, 921 F. Supp. 2d 648, 671 (N.D. Tex. 2013). As such, should Texas again try to rely upon such documents, the Court cannot consider them. Moreover, to the extent Texas tries to use such documents to support the merits of its claims, that would run afoul of the APA record rule and is not permitted. "Courts must generally limit their review to the administrative record before the agency at the time the decision was made." *Texas v. Biden*, No. 2:21-CV-067-Z, 2021 WL 4552547, at *1 (N.D. Tex. July 19, 2021) ("This principle is often referred to as the record rule.") (citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971)).

In short, Texas has never proffered, at any point in this litigation, evidence that the IFR would or did result in an increase in the number of individuals granted asylum, incentivize illegal

**Brief in Support of Defendants' Motion for Summary Judgment - 8**

immigration, or lead to more aliens residing in Texas or increased costs for education, law enforcement, healthcare, and other social services. *See* ECF No. 1 at ¶ 1. Not a single document supporting these costs were produced during the course of discovery in this case. Instead of providing evidence, Texas cited in its response to interrogatories, the "truism … that increasing the benefits of a success and reducing the costs of an attempt strengthen the incentives to attempt a potential action." Exhibit A at Interrogatory No. 14. But a party may not rely on truisms in a factual attack against its standing. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) ("If a defendant makes a 'factual attack' upon the court's subject matter jurisdiction … a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction.").

By contrast, Defendants put forward expert evidence that they produced in discovery, contradicting Texas's allegations and showing that the IFR did not cause an increase in immigration. Michael A. Clemens—a professor of economics who specializes in the cause and effects of international migration—specifically analyzed Texas's allegations that the IFR makes it easier for aliens with non-meritorious asylum claims to be released into the United States and will induce an increase of immigration to the United States. ECF No. 1 at ¶¶ 51, 58; Expert Report by Michael A. Clemens, Exhibit B at 2. Prof. Clemens found there was no evidence that the IFR, by itself, was sufficient to have an impact on overall encounters at the Southwest Border. Exhibit B at 3. In fact, Prof. Clemens concluded, the available data shows that encounters were *lower* in the months after the IFR took effect than before it and the post-Rule trends in encounters of aliens affected by the Rule were "indistinguishable" from trends in encounters of similar aliens who were not affected by the Rule. *Id.* Defendants' unrebutted expert evidence prevents Texas from meeting its burden to show standing. *See Paterson*, 644 F.2d at 523; *see also Arizona v. Garland*730

**Brief in Support of Defendants' Motion for Summary Judgment - 9**

F.Supp.3d 258 (W.D. La. Apr. 16, 2024) (holding States lack standing to challenge the IFR on this basis).

The undisputed record evidence also demonstrates that, where the IFR has in fact been applied, it has not resulted in a higher rate of positive credible fear findings or asylum grants by asylum officers. Since the IFR was put into place, during the initial phases of implementation when certain credible fear cases were identified at the time of the credible fear referral as potential cases that could be placed in the Asylum Merits interview process in the event an alien received a positive credible fear determination, from June 2022 through April 2023, there were a total of 5,860 credible fear cases flagged as potential Asylum Merits interview cases for aliens potentially heading to one of the destination cities where the IFR had been implemented. "Asylum Processing Rule Cohort Report – March 2024," Asylum Processing Rule Cohorts, *supra* n.1. Of those determinations, in 2,620 cases, there was a positive credible fear finding—meaning the individual could be placed in the Asylum Merits interview process or, in the event they were not placed in the Asylum Merits interview process, they would be placed in INA Section 240 proceedings. *Id.* There was a negative credible fear finding—meaning the individual would be ordered removed unless that determination was reversed by an immigration judge—in 2,890 cases. *Id.* This equates to asylum officers finding credible fear in 45% of cases that were identified as potentially amenable to being placed in the Asylum Merits interview process at the time of the credible fear referral. *See id.* By comparison, in 2021, the agency completed 43,963 credible fear cases, found credible fear in 29,891 of those and did not find credible fear in 11,681, for an overall credible fear finding rate of 68%. U.S. DHS, "Credible Fear Cases Completed and Referrals for Credible Fear Interview," *supra* n.3. Thus, even where cases were identified as potentially amenable to being placed in the Asylum Merits interview process at the time of the credible fear referral, there was no increase in

**Brief in Support of Defendants' Motion for Summary Judgment - 10**

the number of cases where aliens have been permitted to pursue asylum as opposed to facing immediate removal.

The same is true for the asylum grant rate by asylum officers under the IFR. For Fiscal Years 2017 through 2021, prior to the IFR, overall approval rates for asylum claims adjudicated by both asylum officers[4] and immigration judges were in the 26–37% range. 87 Fed. Reg. at 18116 n. 57. By comparison, of the 1,820 total Asylum Merits interview cases processed by USCIS under the Rule during the initial phases of implementation (including cases enrolled in the Asylum Merits interview process through April 2023), asylum was granted in 410 cases, yielding an approval rate of approximately 22%. "Asylum Processing Rule Cohort Report – March 2024," *supra* n.1. Thus, the undisputed evidence demonstrates that the IFR did not cause an increase in the asylum grant rate due to asylum officers making merits determinations. Therefore, the IFR has not led to an increase in the number of aliens in the United States either while seeking asylum or after being granted asylum.

In short, Texas's theory of standing depends on an argument that the IFR would increase the number of aliens obtaining asylum, or the number of those paroled pending consideration of their application for asylum, which would increase the number of aliens in the State and thus increase the State's costs. But the evidence in the record does not support that argument. There is no evidence in the record of any additional aliens in Texas as a result of the IFR.

Indeed, in a virtually identical case, in which nineteen states challenged the IFR, the district court for the Western District of Louisiana dismissed the case for lack of standing, even though in that case, asylum merits interviews were being conducted in two of the plaintiff states. *Arizona v.*

---

[4] Even before the IFR took effect, asylum officers decided asylum claims in some circumstances, such as in affirmative asylum claims. *See* 87 Fed. Reg. 18080, 18111; *see also* 8 C.F.R §§ 208.2(a), 208.9(a).

**Brief in Support of Defendants' Motion for Summary Judgment - 11**

*Garland*, 730 F.Supp.3d 258 (W.D. La. Apr. 16, 2024). *Arizona* rejected standing because it found that the States overall were unable to "demonstrate increased costs attributable to the implementation of the Asylum IFR relative to their costs before the Asylum IFR was implemented." 730 F. Supp. 3d at 282. Texas also cannot do so here, and its claim is even more attenuated because the Rule was never applied to any cities in Texas.

It is unsurprising that the Rule has not increased the rates of asylum being granted given what the IFR actually did. First, the IFR clearly states that it "does not change the substantive standard for asylum or related protection." 87 Fed. Reg. at 18115. As the IFR explains:

> The Departments do not expect this rule to encourage or cause an increase in the number of individuals seeking asylum in the United States. As explained above, this rule is not expected to create any significant new incentives that would drive increase irregular migration. To the contrary, by reducing the amount of time a noncitizen can expect to remain in the United States with a pending asylum claim that originated in credible fear screening, the rule dramatically reduces a critical incentive for noncitizens not in need of protection to exploit the system. […] This rule does not change the substantive standard for asylum eligibility[…].

87 Fed. Reg. at 18192. The IFR further states:

> However, to the extent that the significant delays in the adjudication of asylum claims today contribute to rates of irregular migration, the Departments believe that the efficiencies introduced by the rule will help to reduce any incentive to exploit the system and enhance the Government's efforts to address irregular migration. By limiting the amount of time a noncitizen may remain in the United States while a claim for relief or protection is pending, the rule stands to dramatically reduce potential incentives for noncitizens to make false claims for relief and protection.

87 Fed. Reg. at 18111. Indeed, Texas has conceded that "increasing the time a person expects to spend in the United States while an asylum claim is pending strengthens the incentive to file non-meritorious claims," therefore "decreasing the time weakens that incentive." Exhibit A at Resp. to Request for Admission No. 10.

Texas has also been unable to identify or produce any evidence in support of its other standing allegations. Defendants served Texas with numerous discovery requests asking that Texas

**Brief in Support of Defendants' Motion for Summary Judgment - 12**

provide all documents that show, *inter alia*, that the number of aliens will increase in Texas a result of this Rule, that Texas spends hundreds of millions of dollars on aliens subject to the Rule using its services each year, or that aliens paroled by DHS pending their application under this Rule will establish residence in Texas. Defendants' First Set of Requests to Plaintiff, Exhibit C at Request for Production Nos. 1, 5, 8. To each of these requests, Texas responded it does not track this information or data. Exhibit A at Resp. to Request for Production Nos. 1, 5, 8.

The undisputed evidence shows that the IFR's asylum adjudication provisions (1) have not been applied to aliens whose intended destination city is in Texas, (2) have not led to an increase in encounters, (3) have not resulted in more positive credible fear findings or asylum grants than before, (4) and have not injured Texas in any cognizable way. Texas cannot meet its burden to demonstrate by a preponderance of the evidence any actual or imminent injury, *see Paterson*, 644 F.2d at 523, and the Court should dismiss for lack of Article III standing.[5]

### B. Plaintiff Cannot Show Traceability.

Texas also cannot establish traceability. Even if Texas could show costs from aliens subject to the IFR—the costs of education, law enforcement, medical services, and social services—would not be fairly traceable to the IFR, but rather would be the consequence of the "unfettered choices made by independent actors." *Lujan*, 504 U.S. at 562. Where causation hinges upon the choices of third parties, a plaintiff must adduce facts to show that those choices "will be made in such a manner that will produce causation and permit redressability of the harm." *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 938 (D.C. Cir. 2004) (quoting *Lujan*, 504 U.S. at

---

[5] Even if Texas established standing at the outset of the case—which Defendants dispute—the clear evidence that the IFR has not harmed Texas means that the Court must, at a minimum, dismiss this case because any allegation of feared imminent harm has been proven moot by failing to materialize in the years since the IFR took effect.

**Brief in Support of Defendants' Motion for Summary Judgment - 13**

562). The Supreme Court has emphasized that standing is "substantially more difficult" to establish in those circumstances. *Lujan*, 504 U.S. at 562; *see Texas*, *United States v. Texas* ("*Priorities*"), 599 U.S. 670, 687 (2023) ("When 'a plaintiff's asserted injury arises from the government's allegedly unlawful regulation of someone else, much more is needed' to establish standing."); *see also, e.g.*, *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383-84 (2024); C*alifornia v. Texas*, 593 U.S. 659, 675 (2021); *Clapper*, 568 U.S. at 414.

The Supreme Court in *Priorities* emphasized that "federal policies frequently generate indirect effects on State revenues or State spending," and that when a State's bid for standing is based "only those kinds of indirect effects" from federal regulation, "the State's claim for standing can become more attenuated." *Priorities*, 599 U.S. at 680, n.3. In rejecting such indirect costs as sufficient to show standing, *Priorities* implicitly rejected some of the very same evidence that Plaintiff produced in discovery here: declarations from State officials addressing the same subject matter for the same period. Declarations, Bates TX_000282-84, TX_000238-42, Exhibit D; *see also* Exhibit A at Resp. to Request for Production Nos. 3, 4, 19, 30 (citing to Declarations in support of alleged injuries). Here, Texas produced in discovery the *exact declarations* that were insufficient to establish standing in *Priorities*. *Id.*

Like the guidance at issue in the *Priorities* case, the IFR does not direct States or State agencies to take any particular action with respect to law enforcement or social services costs, making any allegations of costs indirect. Texas's theory of standing is based entirely on these alleged indirect costs from aliens processed under the IFR, and those individuals are the only ones who can reasonably be considered the regulated entities. When a "suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be … proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is

**Brief in Support of Defendants' Motion for Summary Judgment - 14**

himself an object of the action." *Lujan*, 504 U.S. at 561. The Supreme Court has consistently held that "when the plaintiff is not himself the object of the government action or inaction he challenges"—in other words where the plaintiff is arguing standing based on indirect injuries— plaintiffs face a "substantially more difficult" burden to establish standing. *Id*.; *see also Warth v. Seldin*, 422 U.S. 490, 504-05 (1975) (noting that where "the harm to petitioners may have resulted indirectly" because they are "a third party" not directly regulated by the challenged policy "the indirectness of the injury" may "make it substantially more difficult to meet the minimum requirement of Art. III"). And as the Supreme Court long ago held, an indirect theory of harm based solely on the assertion that a change in federal policy will affect a State's population and in turn affect State revenue is insufficient to satisfy Article III. *See Florida v. Mellon*, 273 U.S. 12, 17-18 (1927) (rejecting standing where State argued change in federal policy would "have the result of inducing potential taxpayers to withdraw property from the State," negatively affecting State revenue). Such injuries are "at most, only remote and indirect" and insufficient to show the type of more "direct injury" required for standing. *Id*. at 18; *see also Priorities*, 599 U.S. at 680, n.3 (citing these same cases, *Mellon* and *Lujan*, in noting that standing arguments premised on "indirect effects" and "attenuated" harms may not satisfy "bedrock Article III constraints").

Following *Priorities*, it is no longer sufficient for a State simply to argue that some change in federal policy may cause a change in population that may in turn cause indirect changes in the State's expenditures on education, health care, law enforcement, or social services. 599 U.S. at 680, n.3. This is particularly true in cases such as this one, where the change in federal policy neither directly regulates State entities nor affects federal funding to States. While this theory of injury may have previously been plausible, *see Gen. Land Off. v. Biden*, 71 F.4th 264, 272 (5th

**Brief in Support of Defendants' Motion for Summary Judgment - 15**

Cir. 2023), that is no longer the case following the *Priorities* decision. *See generally, id.*; *see also Alliance*, 602 U.S. at 392.

In *Alliance*, the Supreme Court again rejected a theory of standing premised on attenuated, indirect injuries. In doing so, the Court compared the plaintiffs to firefighters challenging building codes that increase fires, police officers challenging legislation associated with increased crime, and "[t]eachers in border States" suing "to challenge allegedly lax immigration policies that lead to overcrowded classrooms." 602 U.S. at 393. The Court rejected standing in these scenarios. *Id*. A contrary holding would lead down a path where "every citizen had standing to challenge virtually every government action that they do not like," *Id.* at 392, and improperly draw courts into all sorts of generalized grievances.

### C. Plaintiff Cannot Show Redressability.

Even if Texas's claimed injury were likely to occur, the relief Texas seeks would not address it. The evidence shows that no one who was subject to the IFR's asylum merits interview process for the short time it was in place resided in Texas, so enjoining or vacating the IFR would have no impact on Texas. Moreover, even without the IFR, some federal officials, including immigration judges, would retain the authority and discretion to grant asylum to aliens, and because Texas has not shown that asylum officers grant asylum at a rate different than immigration judges, removing the IFR would not redress their alleged harm. Likewise, DHS would still retain the authority to parole aliens under Section 1182. Thus, an injunction of the Rule would not restrain the Executive's discretion to process migrants at the border in the most appropriate way. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 105-06 (1998) (finding no redressability where specific relief sought would not address the harms suffered); *Priorities*, 599 U.S. at 690 (Gorsuch,

**Brief in Support of Defendants' Motion for Summary Judgment - 16**

J., concurring) (plaintiff lacks standing because even if the challenged policy were enjoined, the government has prosecutorial discretion independent of the policy).

Finally, redressability is lacking because 8 U.S.C. § 1252(f)(1) bars courts other than the Supreme Court from enjoining or restraining the operation of section 1225(b)(1), which the IFR implements. That statute provides that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter," including 8 U.S.C. § 1225, "other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." 8 U.S.C. § 1252(f)(1). Section 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). Enjoining the government's chosen means of implementing the credible fear-screening procedures of section 1225(b)(1) would "order" Defendants "to refrain from taking actions to … implement" that section and therefore violate section 1252(f)(1). *See id.* Because this is the relief Texas seeks, and the Court is prohibited from granting it, Texas cannot obtain adequate redress and lacks standing.

Texas has previously argued, including in response to Defendants' motion to dismiss and in its previous summary judgment motion, that, under a lowered special solicitude standard, it meets its burden of showing redressability. But the Supreme Court's decision in *Priorities* confirmed that special solicitude has no application when a State asserts standing based on such indirect costs. Indeed, the majority clearly rejected the application of special solicitude in *Priorities*. As Justice Gorsuch explained: "Before *Massachusetts v. EPA*, the notion that States enjoy relaxed standing rules 'ha[d] no basis in our jurisprudence.' … Nor has 'special solicitude'

**Brief in Support of Defendants' Motion for Summary Judgment - 17**

played a meaningful role in this Court's decisions in the years since." *Id*. (citation omitted). Indeed, the Supreme Court has never afforded States special solicitude in any other case. Even if it applied, at most all it would do is lower the threshold for establishing redressability. *See Texas v. United States*, 50 F.4th 498, 514 (5th Cir. 2022). But a looser standard for redressability cannot help a plaintiff like Texas who has not established a concrete harm to begin with. *See Mellon*, 273 U.S. at 17-18. Special solicitude has no place in a case predicated on speculative, indirect costs.

Texas also does not have a procedural right like that asserted in *Massachusetts v. EPA*. *Massachusetts*, which involved a direct harm to a State, *Massachusetts*, 549 U.S. 497, 521 (2007), and which has long been treated as a distinct and legally cognizable harm by the Supreme Court. *See* Ann Woolhandler & Michael G. Collins, *State Standing*, 81 Va. L. Rev. 387, 415-16 (1995). The INA creates no similar procedural right for States to challenge the expedited removal system.

To invoke special solicitude, an agency action must also be "imposing substantial pressure on" the State's "quasi-sovereign" interests." *Texas v. United States*, 809 F.3d 134, 153 (5th Cir. 2015). In the *DAPA* case, the Fifth Circuit held that this requirement was satisfied where immigration policy placed substantial pressure on the State to change its laws related to driver's licenses. *Id*. Because a State seeking to invoke special solicitude "must" among other things "be exercising a procedural right created by Congress" and show that it is under substantial pressure to change State law with respect to some quasi-sovereign interest of the State, the Fifth Circuit has held that the "factors" necessary to invoke special solicitude "will seldom exist." *Id.* at 162. For all these reasons, Texas lacks standing to bring this case.

## II.    THE COURT HAS NO JURISDICTION OVER THIS CASE

Even if the Court were to find that Texas has sufficiently met its burden to establish standing, it still must dismiss this case because, as previously argued (ECF No. 7, 73, 102), under 8 U.S.C. § 1252(e)(3), the U.S. District Court for the District of Columbia is the sole federal court

**Brief in Support of Defendants' Motion for Summary Judgment - 18**

with jurisdiction to adjudicate challenges to rules implementing the expedited removal process. While Defendants acknowledge that the Court previously ruled on these arguments (ECF Nos. 68, 121), Defendants incorporate them again here in order to preserve their arguments for appeal.

### III.   THE IFR DOES NOT VIOLATE THE APPOINTMENTS CLAUSE

Texas seeks to set aside the IFR under the APA as "contrary to constitutional right, power, privilege, or immunity[,]" 5 U.S.C. § 706(2)(A)-(B), arguing that it facially violates the Appointments Clause. *See* ECF No. 1 at p. 18 & ¶¶ 65-69. Thus, the Court must determine the constitutionality of the IFR "as written." *Does #1-7 v. Abbott*, 345 F. Supp. 3d 763, 774 (N.D. Tex. 2018), *aff'd*, 945 F.3d 307 (5th Cir. 2019). To prevail, Texas must "establish[] that no set of circumstances exists under which the [IFR] would be valid, *i.e.*, that the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008). Texas has not made that showing, and the undisputed factual record demonstrates that it cannot make that showing.

The Appointments Clause sets forth the requirements related to the appointment of officers of the United States. *See* U.S. Const. art. II, § 2, cl. 2. Principal officers must be appointed by the President with the advice and consent of the Senate, but Congress has flexibility to vest the appointment of inferior officers "in the President alone, in the Courts of Law, or in the Heads of Departments." *Id.* By contrast, "the Appointments Clause cares not a whit about who name[s]" the "non-officer employees" who make up "the broad swath of lesser functionaries in the Government's workforce." *Lucia v. SEC*, 585 U.S. 237, 245 (2018) (cleaned up).

Against that constitutional backdrop, Texas has not shown there is no scenario in which the IFR would be valid under the Appointments Clause. Under the IFR, asylum officers are tasked with conducting non-adversarial asylum merits interviews and are authorized to grant asylum. *See*

**Brief in Support of Defendants' Motion for Summary Judgment - 19**

*supra.* Texas's claim rests on its contention that these actions may only be taken by "properly appointed officers of the United States." ECF No. 1 at ¶ 69. Even accepting that premise, Texas's claim fails because the undisputed facts demonstrate that the relevant actions under the IFR currently *are* being taken by "properly appointed officers of the United States," *id.*

The agency is applying the IFR consistent with the Appointments Clause because the asylum officers who make decisions to grant asylum are appointed by the Secretary of Homeland Security. Declaration of Bradley Shumaker, Exhibit E at ¶¶ 7-21 & Exs. 1, 3. Specifically, although line-level asylum officers conduct asylum merits interviews under the IFR and prepare proposed decisions and supporting assessments, they do not make final decisions on asylum applications. *Id.* ¶ 7. Rather, their proposed decisions must be reviewed and approved by first-line Supervisory Asylum Officers (SAO-2s) before they can be finalized. *Id.* No grant of asylum can issue under the IFR unless and until it has been reviewed and approved by an SAO-2. *Id.* ¶ 8. Per agency standard operating procedure, all SAO-2s who review and approve grants of asylum under the IFR, as well as individuals in their direct supervisory chain of command, are appointed by the Secretary. *Id.* ¶¶ 8, 10-11 & Ex. 1. Thus, any "quasi-judicial functions" performed by line-level asylum officers under the IFR, ECF No. 155 at 32, are subject to "oversight or review" by Secretarially appointed superiors. *Contra id.*; ECF No. 121 at 9.

And the Secretary is plainly authorized to make such appointments under the Department's organic statute. *See* 6 U.S.C. § 112 (vesting Secretary with broad authority over DHS operations as head of Department); 5 U.S.C. § 301 (authorizing head of Department to "prescribe regulations for the government of his department, the conduct of its employees, [and] the distribution and performance of its business"); *Willy v. Admin. Review Bd.*, 423 F.3d 483, 491-92 (5th Cir. 2005) ("broad language employed by Congress in the Reorganization Plan No. 6 of 1950 and in 5 U.S.C.

**Brief in Support of Defendants' Motion for Summary Judgment - 20**

§ 301 vests the Secretary [of Labor] with ample authority to" appoint inferior officers). These Secretarial appointments ensure that actions taken by asylum officers under the IFR comply with the Appointments Clause—whether those asylum officers are deemed inferior officers or employees. *See Lucia*, 585 U.S. at 251-52 (holding that SEC administrative law judges (ALJs) are officers, and that the constitutional infirmity of the adjudication at issue in that case could be cured by a new hearing before a "properly appointed" ALJ). Because the IFR not only can be applied, but—as the record demonstrates—*is* being applied consistent with the Appointments Clause, Texas's facial constitutional challenge fails.

Texas has previously argued in prior briefing that the IFR nonetheless facially violates the Appointments Clause for several reasons; each is unavailing. First, Texas has argued that asylum officers' career status means that they can only be "mere employees." But the fact that asylum officers are part of the career civil service, *see* 87 Fed. Reg. at 18110, is irrelevant. Career status is not incompatible with appointment as an inferior officer. *See, e.g.*, *United States v. Arthrex*, 594 U.S. 1, 25 (2021) (administrative patent judges on Patent Trial and Appeal Board were inferior officers but retain career civil service protections); *Lucia*, 585 U.S. at 251 (holding that SEC administrative law judges, who have career appointments, are officers of the United States); *cf.* 5 U.S.C. § 7521 (setting forth career civil service protections for administrative law judges). Nor does it matter that the U.S. Code refers to immigration officers (a category that includes asylum officers) as "employees." *Contra* ECF No. 155 at 33 (citing 8 U.S.C. §§ 1101(a)(18), 1225(b)(1)(E)); *see also id.* 36. As the Supreme Court and the Fifth Circuit have recognized, "employees" and "Officers of the United States" are not mutually exclusive categories. *See, e.g.*, *Buckley v. Valeo*, 424 U.S. 1, 126 n.162 (1976) (observing that the term "'Officers of the United States' does not include *all* employees of the United States" (emphasis added)); *Burgess v. FDIC*,

**Brief in Support of Defendants' Motion for Summary Judgment - 21**

871 F.3d 297, 300 (5th Cir. 2017) (distinguishing principal and inferior Officers from "non-Officer employees").

Relatedly, Texas has previously asserted that Asylum Officers do not "*occupy a continuing position established by law*" and "exercis[e] significant authority pursuant to the laws of the United States." *Lucia*, 585 U.S. at 245 (emphasis added). But this argument merely restates the flawed claim that "employees" and "officers" are mutually exclusive categories; as explained above, they are not. Moreover, the argument proves too much. If asylum officers do not "occupy a continuing position established by law," or if no statute confers "significant authority" on them, then they are not "officers" at all, and Texas has no Appointments Clause claim.

Second, Texas has previously argued, in various ways, that the IFR violates the Appointments Clause because neither it nor the Immigration and Nationality Act requires asylum officers to be appointed by the Secretary or requires the relevant decisions under the IFR to be subject to oversight by a properly appointed officer. This amounts to a contention that a statute or regulation must expressly require (and not merely allow for) appointments of the relevant decisionmakers by the Department Head to comply with the Appointments Clause. But Texas has never provided precedent for such a proposition, and the Supreme Court's decision in *Lucia* is to the contrary: there, the Court held that the violation of the Appointments Clause that "tainted" Lucia's adjudication could be remedied by a new hearing before an ALJ who was "properly appointed," despite the fact that the governing statute allows—but does not expressly require— that ALJs be appointed by the President, a court of law, or a head of department. *Lucia*, 585 U.S. at 251-52; *see* 5 U.S.C. § 3105 (authorizing each "agency" to appoint ALJs); *accord Edmond v. United States*, 520 U.S. 651, 655-58 (1997) (rejecting statutory construction that would have prohibited the Department Head from constitutionally appointing inferior officers).

**Brief in Support of Defendants' Motion for Summary Judgment - 22**

Third, Texas has argued that the supervisory asylum officers' appointments by the Secretary do not suffice for compliance with the Appointments Clause because the Secretary does not direct or supervise such officers. The Fifth Circuit has held that the "'power to render a final decision on behalf of the United States'" where statutes forbid "'review by a superior executive officer'" makes an official a principal officer. *Braidwood Mgmt., Inc. v. Becerra*, 104 F.4th 930, 942 (5th Cir. 2024) (quoting *United States v. Arthrex, Inc.*, 594 U.S. 1, 14 (2021)). But there is no such statutory limitation here. Thus, the SAO-2s are not principal officers. *Rodriguez v. SSA*, 118 F.4th 1302, 1312-13 (11th Cir. 2024) ("[R]egulatory restriction on further agency review … does not convert the [officials] into principal officers under the Constitution."). Moreover, under the agency's procedures, SAO-2s *are* "supervis[ed] and direct[ed]" by a principal officer—indeed, through their chain of command, they are ultimately supervised and directed by the Secretary himself. Exhibit E, ¶¶ 4-6.

Finally, tacitly acknowledging the futility of any attempt to argue that the IFR is unconstitutional in all its applications, Texas has previously suggested that it is instead bound by a different, less stringent standard. That argument, should Texas reprise it, is unavailing. As the Fifth Circuit and Supreme Court have recognized in cases cited by Texas itself, "[i]n general, to mount a successful facial attack, 'the challenger must establish that no set of circumstances exists under which the [statute or regulation] would be valid.'" *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 662 (5th Cir. 2006) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). There is an exception to this general rule "in the First Amendment context, where [courts] recognize the overbreadth doctrine," *id.*, and, in the due process context, the Fifth Circuit has noted that "[a] vague law that chills the exercise of a constitutional right will succumb to a facial challenge 'even when [the law] could have had some legitimate application,'" *Okpalobi v.*

**Brief in Support of Defendants' Motion for Summary Judgment - 23**

*Foster*, 190 F.3d 337, 358 (5th Cir. 1999), *on reh'g en banc*, 244 F.3d 405 (5th Cir. 2001) (alteration in original) (citation omitted). But Texas's cause of action does not arise under the First Amendment or the Due Process Clause, and it points to no Supreme Court or Fifth Circuit precedent holding that any such less stringent standard applies outside the First Amendment context and where there is no alleged chilling of a constitutional right. *Cf. United States v. Stevens*, 559 U.S. 460, 473 (2010) (applying standard specific to "the First Amendment context").

Nor can Texas concoct an alternative standard from the reasoning in *City of Los Angeles v. Patel*, which expressly applied the usual rule that, to prevail on a facial challenge, "a plaintiff must establish that a 'law is unconstitutional in all of its applications.'" 576 U.S. 409, 418 (2015) (quoting *Wash. State Grange*, 552 U.S. at 449). In prior briefing, Texas previously latched onto the *Patel* Court's opening rejection of the petitioner's contention that facial challenges to statutes authorizing warrantless searches must fail because such statutes "will never be unconstitutional in all applications," *id.* at 418. But the Supreme Court's dismissal of that contention is of no help to Texas, should Texas again invoke it. In *Patel*, the petitioner's logic proved too much because it would negate the Court's own prior holdings, which *had* deemed some statutes authorizing warrantless searches to facially violate the Fourth Amendment. *See Patel* 576 U.S. at 418 ("The Court's precedents demonstrate not only that facial challenges to statutes authorizing warrantless searches can be brought, but also that they can succeed."). Here, the government has not argued that facial Appointments Clause challenges must always fail, but that Texas's challenge fails because the IFR can be and has been applied consistent with the Appointments Clause.

To the extent Texas instead suggests that the IFR facially violates the Appointments Clause because constitutional application of the rule is unlikely, that argument is legally baseless and factually unsupported. In *Patel*, the Supreme Court rejected the city's defense of an ordinance not

**Brief in Support of Defendants' Motion for Summary Judgment - 24**

because a constitutional application of the law was unlikely, *contra id.*, but because the city's argument rested on scenarios involving conduct the law did not actually authorize or prohibit. 576 U.S. at 418-19. And in *Center for Individual Freedom v. Carmouche*, the Fifth Circuit addressed not the substance of a facial constitutional challenge, but whether the plaintiff had standing to raise its First Amendment claim, 449 F.3d 655, 659-60 (5th Cir. 2006)—it nowhere instructed that courts "should assess the constitutionality of new rules based on the likely set of circumstances," ECF No. 155 at 34. Regardless, neither case helps Texas. Here, as explained above, the IFR authorizes asylum officers to perform certain responsibilities, and the record demonstrates that this authorization can be—and was—applied consistent with the Appointments Clause because the asylum officers approving the relevant decisions under the IFR were appointed by the Secretary. Thus, the undisputed facts demonstrate that the IFR is facially constitutional under the actual standard applied by the Supreme Court in *Patel*, or under Texas's mistaken "likely set of circumstances" test, *id*.

## IV.    IF THE COURT GRANTS RELIEF, IT MUST BE SHARPLY LIMITED

### A.  8 U.S.C. § 1252(f)(1) Bars Injunctive Relief.

Section 1252(f)(1) provides that, except in a case brought by "an individual alien" in removal proceedings, and "[r]egardless of the nature of the action or claim or of the identity of the [plaintiff ], no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of [8 U.S.C. §§ 1221-32]." 8 U.S.C. § 1252(f )(1). That remedial restriction applies in this case by its plain terms: Plaintiff is not an individual alien in removal proceedings, and its suit seeks to enjoin or restrain the operation of 8 U.S.C. § 1225 by prohibiting Defendants from implementing § 1225(b)(1)(B)(ii)'s provision that aliens who have established a credible fear "shall be detained for further consideration of the application for

**Brief in Support of Defendants' Motion for Summary Judgment - 25**

asylum." All courts other than the Supreme Court thus lack jurisdiction to grant injunctive relief against the IFR.[6]

Section 1252(f)(1) provides that lower courts lack jurisdiction to "enjoin or restrain" the "operation of" the covered INA provisions "[r]egardless of the nature of the action or claim or of the identity of the party or parties bringing the action." 8 U.S.C. § 1252(f)(1). That language indicates that the jurisdictional bar encompasses injunctions prohibiting the Executive Branch's implementation of the covered provisions, including those injunctions premised on a conclusion that the agency action violates the covered provisions. As the Supreme Court explained, § 1252(f)(1)'s reference to "the 'operation of' the relevant statutes is best understood to refer to the Government's efforts to enforce or implement them." *Aleman Gonzalez*, 596 U.S. at 550.

In *Aleman Gonzalez*, the Supreme Court overturned injunctions entered by two district courts that had, as a matter of statutory interpretation, required the government to provide bond hearings for aliens detained under 8 U.S.C. § 1231(a)(6). *Id.* The Court held that "[t]hose orders 'enjoin or restrain the operation' of § 1231(a)(6) because they require officials to take actions that (in the Government's view) are not required by §1231(a)(6) and to refrain from actions that (again in the Government's view) are allowed by §1231(a)(6)." *Id.* Because "[t]hose injunctions thus interfere with the Government's efforts to operate §1231(a)(6)" in its chosen manner, they were barred by § 1252(f)(1). *Id.* The Court squarely held that § 1252(f)(1) applies even where a plaintiff alleges that "the Government [i]s misinterpreting and misapplying a covered statutory provision." *Id.* at *7. Shortly thereafter, in *Biden v. Texas*, the Supreme Court reaffirmed this holding. It held this court violated Section 1252(f) by issuing a nationwide injunction requiring DHS to

---

[6] Section 1252(f)(1) would not, however, bar properly crafted declaratory relief on final judgment, so long as it does not have the prohibited effect of compelling the government to alter its operation of the covered sections, 8 U.S.C. §§ 1221-32.

**Brief in Support of Defendants' Motion for Summary Judgment - 26**

reimplement the Migrant Protection Protocols. *Biden v. Texas*, 597 U.S. 785 (2022). *Texas* and *Aleman Gonzalez* dictate the same result here: Texas is not entitled to an injunction of the IFR because the IFR implements § 1225(b)(1), one of the expressly covered provisions of § 1252(f)(1). 87 Fed. Reg. at 18080.

In addition to seeking to "permanently enjoin" the IFR, Texas also asks the Court to "set it aside." ECF No. 1, Compl. Prayer for Relief. *Aleman Gonzalez* involved an injunction, but the Supreme Court's reasoning on § 1252(f)(1) applies equally to vacatur of a rule which is the only way to interpret Texas' request to "set [the rule] aside." *See Virgin Islands Tel. Corp. v. F.CC,* 444 F. 3d 666, 671 (D.C. Cir. 2006) ("'Set aside' usually means 'vacate.'") (citing BLACK'S LAW DICTIONARY 1404 (8th ed. 2004) (defining "set aside" as "to annul or vacate")). Because vacatur prohibits an agency from giving effect to the vacated rule, a court "enjoin[s] or restrain[s] the operation of" the covered statutory provisions when it vacates a rule implementing those provisions. 8 U.S.C. § 1252(f)(1); *Aleman Gonzalez*, 596 U.S. at 549.

And any argument that Section 1252(f)(1) is limited to injunctions alone is inconsistent with Congress's use of the broad phrase "enjoin or restrain." *See id*. The INA and the APA both make clear that the APA's remedial authorities give way to the specific remedial limitations in § 1252(f)(1). The INA makes those limitations applicable "[r]egardless of the nature of the action or claim or of the identity of the [plaintiff]," and it expressly withdraws "jurisdiction" to enter the prohibited remedies. 8 U.S.C. § 1252(f)(1). The APA is not "an independent grant of subject-matter jurisdiction." *Califano v. Sanders*, 430 U.S. 99, 105 (1977). And the APA itself reinforces remedial limitations like those in § 1252(f)(1) by expressly providing that "[n]othing" in the APA right of review "affects other limitations on judicial review" or the "duty of the court to . . . deny relief on any other appropriate legal or equitable ground." 5 U.S.C. § 702(1). Section 1252(f)(1)

**Brief in Support of Defendants' Motion for Summary Judgment - 27**

thus bars district courts from vacating rules that implement the statutory provisions covered by § 1252(f)(1). *See also* ECF No. 17, 64.

### B. Texas Has Not Proven Irreparable Injury And The Balance Of The Harms Weigh Against Injunctive Relief.

Even if injunctive relief were not barred, an injunction is unwarranted for at least two reasons. First, Texas cannot demonstrate that it will suffer immediate, irreparable harm absent entry of injunctive relief, or that the balance of equities favors Texas. As set forth above, the IFR's Asylum Merits Interviews were never implemented in Texas, the IFR has not been operational since June 6, 2024, Defendants are in the process of rescinding the IFR, and Texas has not shown that it led to more grants of non-meritorious asylum claims. Moreover, even if the IFR resulted in the parole of more aliens, Texas has not demonstrated that these aliens have or would imminently cause financial harm to the State. *See supra* I.A. Speculative and insubstantial costs cannot establish irreparable injury. *See Sampson v. Murray*, 415 U.S. 61, 91 (1974); *Moore v. Tangipahoa Par. Sch. Bd.*, 507 F. App'x 389, 397-98 (5th Cir. 2013) ("general financial information and speculation" that "cash-strapped school board would find itself with fewer resources" insufficient to establish irreparable harm).

Plaintiffs fail to show any injury at all, let alone one necessitating permanent relief. Moreover, the government's stated interest in expanding expedited removal, promoting efficiency, and reducing the backlog on EOIR, substantially outweighs Plaintiffs' speculative alleged injuries. The opposing party's interest and public-interest factors merge when the Government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Even if Texas's alleged harms were certain, they would not outweigh the harm imposed by "injunctive relief [that] deeply intrudes into the core concerns of the executive branch." *Adams v. Vance*, 570 F. 2d 950, 954 (D.C. Cir. 1978).

**Brief in Support of Defendants' Motion for Summary Judgment - 28**

### C.  Any Relief Must Be Limited To Texas.

Should the Court nevertheless determine that vacatur or an injunction is warranted, any such relief must be narrowly tailored. Article III requires that an equitable remedy be no broader than is necessary to remedy the Plaintiff's injury. *Gill v. Whitford,* 585 U.S. 48, 64 (2018). Granting Texas relief that would extend to circumstances "apart from any concrete application that threatens imminent harm to its interests" would "fly in the face of Article III's injury-in-fact requirement." *Summers v. Earth Island Institute*, 555 U.S. 488, 494 (2009). Thus, the Supreme Court recently held that the district courts' equitable powers do not include the authority to grand universal equitable relief. *Trump*, 606 U.S. at 841 (2025). The Fifth Circuit similarly held that any injunctive relief must be limited to the party that has demonstrated injury by a preponderance of the evidence. *See Louisiana v. Becerra*, 20 F. 4th 260, 264 (5th Cir. 2021) (limiting lower court's nationwide injunction to Plaintiff States who were injured by the challenged action)

The scope of a court's authority to enter such relief is circumscribed by the type of relief that was "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318-19 (1999). But the tradition of equity inherited from English law was premised on "providing equitable relief only to parties" because the fundamental role of a court was to "adjudicate the rights of individual[s]." *Trump v. Hawaii*, 138 S. Ct. 2392, 2427-28 (2018) (Thomas, J., concurring); *DHS v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring) (same). As a result, "a plaintiff could not sue to vindicate the private rights of someone else." *Hawaii*, 138 S. Ct. at 2428. Those principles require restricting any relief—whether an injunction or vacatur—in two primary ways.

*First*, relief should be, at most, limited to the portions of the IFR found insufficient as applied to Texas to the extent it has demonstrated injury, and not include injunctive relief for Texas

**Brief in Support of Defendants' Motion for Summary Judgment - 29**

or nationwide relief. The common remedy in an APA case where a rule or policy is found arbitrary or capricious, is to vacate the part of the rule or policy that is unlawful. *Sw. Elec. Power Co. v. EPA*, 920 F.3d 999, 1022 (5th Cir. 2019). Injunctive relief is inappropriate in such circumstances. *See Monsanto, Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010) (reversing injunction in APA case where vacatur provided sufficient relief). Here, vacatur as to Texas based on the specific claims found to have merit, would redress any injury Texas asserts.[7] *See, e.g.*, *N. Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 861 (D.C. Cir. 2012) ("It was quite anomalous [for the district court] to issue an injunction. When a district court reverses agency action and determines that the agency acted unlawfully, ordinarily the appropriate course is to identify a legal error and then remand to the agency, because the role of the district court in such situations is to act as an appellate tribunal.").

*Second*, any relief must be limited to Texas. *Casa*, 606 U.S. at 851 ("'Complete relief' is not synonymous with 'universal relief.' It is a narrower concept: The equitable tradition has long embraced the rule that courts generally may administer complete relief *between the parties*.") (internal citations omitted; emphasis in original); *Feds for Med. Freedom v. Biden*, 63 F.4th 366, 389 (5th Cir. 2023) (plaintiffs have the burden "to *prove* that whatever injunction they request" is "no broader" than necessary "to protect against their proven injuries") (emphasis in original); *see Arizona v. Biden*, 31 F.4th 469, 483 (6th Cir. 2022) (Sutton, C.J., concurring) ("A valid Article III remedy operates with respect to specific parties, not with respect to law in the abstract," which "is why courts generally grant relief in a party-specific and injury-focused manner." (cleaned up)). This is particularly important here, because a district court in Louisiana concluded that <u>nineteen</u>

---

[7] Though typically remand to the agency would be appropriate, here, where the agencies have already announced that they are actively rescinding the IFR, remand seems fairly meaningless.

**Brief in Support of Defendants' Motion for Summary Judgment - 30**

States who challenged the same IFR failed to show they had sustained any injury and thus lacked standing. *See Arizona*, 730 F.Supp.3d 258. Nationwide relief here, even if delivered in the form of a vacatur rather than injunction, would render meaningless the time and reasoned decision-making of the district court in the Eastern District of Louisiana.

Texas has not met its burden "to *prove*" that the relief it seeks is "no broader" than necessary "to protect against [its] proven injuries." *Feds for Med Freedom*, 63 F.4th at 389; *see generally*, ECF No. 100 at 58-64. Texas has previously argued in this case that universal relief is necessary because aliens can move freely within the United States. But Texas has never provided any evidence in support of the argument that aliens whose asylum applications were processed in other States pursuant to the IFR moved to Texas or are are likely to move to Texas.

The problems with universal injunctions apply equally to universal vacatur. *Priorities*, 599 U.S. at 701-704 (Gorsuch, J., concurring). Universal vacatur of a rule, if authorized at all, thus should be reserved for "truly extraordinary circumstances," *id.*, which do not exist here. *See Priorities*, 599 U.S. at 702-703 (Gorsuch, J., concurring); *see id.* at 703 ("And courts [] must do their part, too, asking whether party-specific relief can adequately protect the plaintiff's interests. If so, an appellate court should not hesitate to hold that broader relief is an abuse of discretion."); *Hawaii*, 585 U.S. at 714 (Thomas, J. concurring) ("No statute expressly grants district courts the power to issue universal injunctions.").

## CONCLUSION

For these reasons, the Court should dismiss Plaintiff's case in its entirety.

**Brief in Support of Defendants' Motion for Summary Judgment - 31**

Dated: August 3, 2026        Respectfully submitted,

        BRETT A. SHUMATE
        *Assistant Attorney General*

/s/ *Elissa Fudim*
ELISSA P. FUDIM

*Trial Attorney*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 451-7460
Elissa.p.fudim@usdoj.gov

/s/ *Michael Geradi*
MICHAEL GERARDI
*Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 598-7613
michael.gerardi@usdoj.gov

**Brief in Support of Defendants' Motion for Summary Judgment - 32**

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2026, I electronically filed this motion to dismiss with the Clerk of the Court for the United States District Court for the Northern District of Texas by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ *Elissa Fudim*
ELISSA FUDIM
U.S. Department of Justice

**Brief in Support of Defendants' Motion for Summary Judgment - 33**